**Fill in this information to identify the case:**

Debtor 1   Meathead Restaurants, LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **Northern District of Illinois**

Case number: **21–04731**

FILED

**U.S. Bankruptcy Court**
**Northern District of Illinois**

6/29/2021

Jeffrey P. Allsteadt, Clerk

## Official Form 410
## Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1:   Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | DTAT Enterprises, Inc., an Illinois Corporation |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |
| 2. Has this claim been acquired from someone else? | ☑ No  ☐ Yes. From whom? |

| 3. Where should notices and payments to the creditor be sent? | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|---|
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | DTAT Enterprises, Inc., an Illinois Corporation | Dr. Danish Thameen |
| | Name | Name |
| | Attorney Daniel Brown | 1606 English Oak Drive |
| | 819 Sherman | |
| | Danville, IL 61832 | |
| | | Champaign, IL 61822 |
| | Contact phone      2174464464 | Contact phone      2177142075 |
| | Contact email   dan.brown@danielbrownlaw.com | Contact email   danishtm@gmail.com |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |

| 4. Does this claim amend one already filed? | ☑ No  ☐ Yes. Claim number on court claims registry (if known) ____   Filed on ____ MM / DD / YYYY |
|---|---|
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No  ☐ Yes. Who made the earlier filing? ____ |

Official Form 410                                   Proof of Claim                                   page 1


EXHIBIT
1

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6. Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | |
|---|---|
| 7. How much is the claim? | $ 92464.00   **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>lease payments, including real estates and maintenance cost included in lease |

| | |
|---|---|
| 9. Is all or part of the claim secured? | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br>    **Nature of property:**<br>    ☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.<br>    ☐ Motor vehicle<br>    ☐ Other. Describe: _____<br><br>    **Basis for perfection:**<br><br>    Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>    **Value of property:** $ _____<br>    **Amount of the claim that is secured:** $ _____<br>    **Amount of the claim that is unsecured:** $ _____  (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>    **Amount necessary to cure any default as of the date of the petition.** $ _____<br><br>    **Annual Interest Rate** (when case was filed) _____ %<br>    ☐ Fixed<br>    ☐ Variable |

| | |
|---|---|
| 10. Is this claim based on a lease? | ☐ No<br>☑ Yes. **Amount necessary to cure any default as of the date of the petition.**   $ 92464.00 |

| | |
|---|---|
| 11. Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | Amount entitled to priority |
|---|---|---|---|
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $_____ |
| | | * Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    6/29/2021

MM / DD / YYYY

/s/ Daniel Brown

Signature

Print the name of the person who is completing and signing this claim:

| Name | Daniel Brown |
|---|---|
| | First name    Middle name    Last name |
| Title | Attorney for DTAT Enterprises, Inc. |
| Company | DTAT Enterprises, Inc., an Illinois Corporation |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | 819 Sherman |
| | Number   Street |
| | Danville, IL 61832 |
| | City   State   ZIP Code |
| Contact phone | 2174464464   Email   dan.brown@danielbrownlaw.com |

**LEASE**

**BETWEEN**

**CHAMPAIGN NEIL LLC,**

**AS LANDLORD,**

**AND**

**MEATHEADS CHAMPAIGN, LLC,**

**AS TENANT**

**PREMISES:**

**1305 S. Neil Street, Champaign, Illinois**

Dated as of _____ __, 2011

130305777v1 2715

LEASE

THIS LEASE (the "Lease") is made as of the ____ day of _____, 2011 ("Effective Date"), between CHAMPAIGN NEIL LLC, an Illinois limited liability company ("Landlord"), and MEATHEADS CHAMPAIGN, LLC, an Illinois limited liability company ("Tenant").

WITNESSETH:

It is hereby mutually covenanted and agreed by and between the parties hereto that this Lease (hereinafter defined) is made upon the terms, covenants and conditions hereinafter set forth.

## ARTICLE 1
## DEFINITIONS

The terms defined in this Article 1, for all purposes of this Lease, shall have the following meanings:

1.01.  "Additional Rent" shall have the meaning provided in Section 3.02.

1.02.  "Base Rent" shall have the meaning provided in Section 3.01.

1.03.  "Business Day" shall mean any day which is not a Saturday, Sunday or a day observed as a holiday by either the State of Illinois or the United States government.

1.04.  "Capital Improvement" shall have the meaning provided in Section 13.01.

1.05.  "Certificate of Occupancy" shall mean a certificate of occupancy (temporary or permanent) or other similar certificate issued by the appropriate governmental department or agency of the City (hereinafter defined).

1.06.  "City" shall mean the city, village or town in which the Premises (hereinafter defined) are located.

1.07.  "Claim" shall have the meaning provided in Section 28.01(a).

1.08.  "Commencement Date" shall mean the date of commencement of the Term (hereinafter defined) as set forth in Article 2.

1.09.  "Construction Agreements" shall mean agreements for construction, Capital Improvement, Restoration, Taking Restoration, rehabilitation, alteration, conversion, extension, repair or demolition performed pursuant to this Lease.

1.10.  "Default" shall mean any circumstance, event, condition or state of facts which, by the passage of time or the giving of notice, or both, could constitute or result in an Event of Default (hereinafter defined).

1.11.  "Deficiency" shall have the meaning provided in Section 24.04(c).

1.12.  Intentionally omitted.

1.13.    "Environmental Law" shall have the meaning provided in Section 28.01(b).

1.14.    "Equipment" shall mean any and all fixtures, equipment and machinery of every kind and nature whatsoever now or hereafter affixed or attached to the Improvements, or now or hereafter used or procured for use in connection with the operation, use or occupancy thereof, and the appurtenances thereof, but excluding therefrom all trade fixtures and articles of personal property title to which is vested in the tenants under any leases of space therein or in contractors engaged in maintaining the Premises.

1.15.    "Event of Default" shall have the meaning provided in Section 24.01.

1.16.    "Expiration Date" shall mean the date of the expiration of the Term as set forth in Article 2.

1.17.    "Fee Mortgage" shall mean any mortgage or trust deed which now or hereafter is a lien on the entire fee simple title to the Land or the Premises, or any part thereof, as the same may be renewed, modified, amended, extended, consolidated or coordinated from time to time.

1.18.    "Fee Mortgagee" shall mean the holder of a Fee Mortgage.

1.19.    "Governmental Authority (Authorities)" shall mean the United States of America, the State of Illinois, County of Cook and City, and any agency, authority, department, commission, board, bureau, instrumentality or political subdivision of any of the foregoing, now existing or hereafter created, having jurisdiction over the Premises or any portion thereof.

1.20.    "Hazardous Materials" shall have the meaning provided in Section 28.01(c).

1.21.    "Impositions" shall have the meaning provided in Section 4.01.

1.22.    "Improvements" shall mean all of the buildings to be constructed for Tenant on the Land, including, without limitation, the Building, the Equipment and other improvements and appurtenances of every kind and description now or hereafter erected, constructed or placed on or about the Land (hereinafter defined), including, but not limited to, any structures, parking lots, drive lanes or thrus, curbs, landscaping, utilities, and any other facilities, and any and all alterations and replacements thereof, additions thereto and substitutions therefor.

1.23.    "Indemnified Party" shall have the meaning provided in Section 19.01.

1.24.    "Institutional Lender" shall mean a savings bank, a savings and loan association, a commercial bank or trust company (whether acting individually or in a fiduciary capacity), a pension or retirement fund, an accredited college or university, an insurance company organized and existing under the laws of the United States or any state thereof, a real estate investment trust existing in compliance with Sections 856 through 860 of the Internal Revenue Code of 1986, as amended, or any combination of Institutional Lenders; provided, that each of the above entities shall qualify as an Institutional Lender within the provisions of this definition only if it shall be qualified to do business in the State of Illinois.

1.25.    "Insurance Policies" shall mean any and all insurance policies which Tenant is required to keep and maintain pursuant to this Lease.

130305777v1 2715

1.26.    "Land" shall mean the parcel of real estate legally described on Exhibit A attached hereto and made a part hereof.

1.27.    "Landlord," on the date as of which this Lease is made, shall mean Champaign Neil LLC, an Illinois limited liability company, but thereafter, "Landlord" shall mean only the holder of the landlord's interest in the Land and/or the Improvements at the time in question, so that if Champaign Neil LLC, an Illinois limited liability company or any successor to its interest hereunder ceases to have any interest in the Land and/or the Improvements as the result of a sale or sales or transfer or transfers of the landlord's interest in the Land and/or the Improvements, then the Landlord under this Lease at the time of such sale or sales or transfer or transfers shall be and hereby is entirely freed and relieved of all agreements, covenants and obligations of Landlord hereunder to be performed on or after the date of such sale or transfer, any remaining liability of such Landlord to be subject to the provisions of Section 41.06 and 41.24 hereof, and it shall be deemed and construed without further agreement between the parties or their successors in interest and the Person who then acquires or owns the landlord's interest in the Land and/or the Improvements, including, without limitation, the purchaser or transferee in any such sale or transfer, that such Person has assumed and agreed to carry out, subject to the provisions of Section 41.06 hereof, any and all agreements, covenants and obligations of Landlord hereunder accruing on or after the date of the aforesaid sale or transfer. Tenant agrees to attorn to the purchaser, grantee or assignee.

1.28.    "Late Charge Rate" shall have the meaning provided in Article 6.

1.29.    "Law" shall mean any and all applicable present and future laws, rules, orders, ordinances, directives, authorities regulations, statutes, requirements, codes, orders, permits and authorizations, extraordinary, as well as ordinary, of all federal, state, city, county or other Governmental Authorities now existing or hereafter created, of any and all of their departments, agencies, authorities and bureaus.

1.30.    "Lease" shall mean this Lease and all amendments, modifications, extensions and renewals hereof and exhibits attached hereto.

1.31.    "Lease Year" shall mean that period of twelve (12) full consecutive calendar months beginning with the first full calendar month of the Term and each subsequent period of twelve (12) consecutive calendar months during the Term, provided that if the Term commences on other than the first day of a calendar month, then the initial fractional month of the Term plus the next succeeding 12 full calendar months shall constitute the first Lease Year of the Term.

1.32.    "Leasehold Mortgage" shall mean a mortgage, including, without limitation, any modification, amendment, spreader, consolidation or renewal thereof, which constitutes a lien on Tenant's interest in this Lease and the leasehold interest created hereby, provided such mortgage is held by (i) an Institutional Lender or its assignee, or (ii) a Person formerly constituting Tenant, if such mortgage is made to such Person in connection with a permitted assignment by it of its interest in the Lease.

1.33.    "Leasehold Mortgagee" shall mean the mortgagee under a Leasehold Mortgage.

1.34.    "Liability Insurance" shall have the meaning provided in Section 7.01(a)(ii).

1.35.    "Manage" shall have the meaning provided in Section 28.01(d).

3

1.36. "Net Replacement Cost" shall mean the actual 100% replacement cost of the Improvements, Equipment, personal property, alterations, fixtures, and/or trade fixtures appurtenant to, located in or used in connection with the Premises without physical depreciation (including, without limitation, the cost of debris removal).

1.37. "Notice" shall have the meaning provided in Section 25.01.

1.38. "Permitted Encumbrances" shall mean the items set forth in Exhibit B attached hereto and made a part hereof.

1.39. "Person" shall mean and include an individual, corporation, partnership, limited liability company, joint venture, estate, trust, unincorporated association or any federal, state, county or municipal government or any bureau, department, authority or agency thereof.

1.40. "Premises" shall mean the Land and the Improvements.

1.41. The "Prime Rate" of interest shall be the "Prime Rate" as published in the "Money Rates" section of The Wall Street Journal from time to time. In the event The Wall Street Journal no longer publishes a Prime Rate of interest, Landlord shall select a comparable equivalent.

1.42. "Release" or "Released" shall have the meaning provided in Section 28.01(e).

1.43. "Rental" shall have the meaning provided in Section 3.03.

1.44. "Requirements" shall have the meaning provided in Section 14.01.

1.45. "Response" or "Respond" shall have the meaning provided in Section 28.01(f).

1.46. "Restoration" shall have the meaning provided in Section 8.01.

1.47. "Restoration Funds" shall have the meaning provided in Section 8.02.

1.48. "Restore" shall have the meaning provided in Section 8.01.

1.49. "Significant Portion" shall have the meaning provided in Section 9.01(e).

1.50. "Substantial Completion" shall mean the date upon which the City (or the applicable agency thereof) issues a permanent certificate of occupancy and all other Governmental Authorities issue final approvals for work Tenant conducts pursuant to this Lease. Notwithstanding anything contained herein to the contrary, the "substantial completion" (or "substantially completed") of any of the work conducted on the Premises by Landlord shall be determined by Landlord in the sole and absolute discretion of Landlord (or Landlord's architect or engineer if so provided herein).

1.51. "Tenant" shall mean Meatheads Champaign, LLC, an Illinois limited liability company, provided, however, that whenever this Lease and the leasehold estate hereby created shall be assigned or transferred in accordance with the terms of and in the manner specifically permitted by this Lease, then, from and after the date of such assignment or transfer and until the next permitted assignment or transfer, the term "Tenant" shall mean the permitted assignee or transferee, except that the assignor shall continue to remain liable with respect to any obligations or liabilities of Tenant under the Lease arising or accruing at any time (including liabilities and obligations of Tenant under

4

the Lease arising or accruing prior to the date of such assignment and liabilities and obligations of Tenant under the Lease arising or accruing from and after the date of such assignment).

    1.52.   "Term" shall mean the term of this Lease as set forth in Article 2 hereof.

    1.53.   "Unavoidable Delays" shall mean delays incurred by Tenant or Landlord due to strikes, lockouts, acts of God, enemy action, civil commotion, governmental restrictions or preemption, fire or other casualty or other causes beyond the reasonable control of Tenant or Landlord (not including Tenant's insolvency, bankruptcy or financial condition or financial difficulties or problems or any action by Tenant).

    1.54.   "Zoning Laws" shall mean the zoning laws of the applicable Governmental Authorities, as the same may be amended from time to time.

ARTICLE 2
PREMISES; TERM OF LEASE; OPTION TO EXTEND

    2.01.  Landlord does hereby demise and lease to Tenant, and Tenant does hereby lease, hire and take from Landlord the Premises, subject to the Permitted Encumbrances.

    2.02. The Lease shall be for a term of ten (10) years (the "Term") commencing on the date (the "Commencement Date") which is the earlier of: (a) the date which is ninety (90) days after the Possession Date (as defined herein); or (b) the date Tenant opens for business to the public at the Premises, and expiring on the day immediately preceding the tenth (10th) anniversary of the Commencement Date, plus, if such day is not the last day of a calendar month , the number of days as would extend such period through the last day of the calendar month, unless sooner terminated or extended as provided herein (the "Expiration Date").

    2.03. Subject to the terms of this Section 2.03, Tenant shall have and is hereby granted two (2) successive options (each an "Option" and together the "Options") to extend the term of this Lease for a period of five (5) years each (each an "Extension Period" and together the "Extension Periods"), upon the same terms, conditions and rental contained in this Lease, except that, in lieu of the Base Rent due and payable during the original Term, the Base Rent shall be payable in such amounts as are set forth in Exhibit C attached hereto and made a part hereof. The Options may be exercised only by Tenant giving Landlord irrevocable and unconditional written notice thereof no later than 365 days before the commencement of the applicable Extension Period. Said exercise shall, at Landlord's election, be null and void if: (a) Tenant has failed to faithfully, diligently and consistently comply with all obligations under the Lease during the Term, (b) an Event of Default shall exist at the date of said notice or at any time thereafter and prior to commencement of said Extension Period, or (c) a Default shall exist at the date of said notice or at any time thereafter and prior to commencement of said Extension Period. If Tenant shall fail to exercise the Options in accordance with the terms hereof, then the Options shall terminate and be null and void. Tenant's exercise of either of the Options shall not operate to cure any Event of Default or Default, nor to extinguish or impair any rights or remedies of Landlord arising by virtue of such Event of Default or Default. If the Lease or Tenant's right to possession of the Premises shall terminate in any manner whatsoever before Tenant shall exercise the applicable Option, or before the commencement of the applicable Extension Period, or if Tenant shall have assigned the Lease (by operation of law or otherwise) or subleased all or any portion of the Premises before Tenant shall have exercised the applicable Option, then immediately upon such termination, sublease or assignment, the Options shall simultaneously terminate and become null and void. If the term of the Lease shall terminate for any reason prior to the expiration of the initial Term, then the Options shall become null and void, whether or not they have been previously exercised. Time is of the essence of this provision.

5

2.04.    Notwithstanding anything contained in this Lease to the contrary, it is further understood and agreed that, as of 12:01 a.m. on the Effective Date, and continuing throughout the Term, Tenant shall comply with, and perform, on a timely basis, all of the obligations and liabilities imposed on Tenant under the terms of this Lease, whether of a monetary or a non-monetary nature; provided, however, that Tenant shall not be obligated to pay Base Rent for the period of time commencing on the Effective Date and continuing to, but not inclusive of, the Commencement Date.

ARTICLE 3
RENT

3.01.    Tenant shall pay to Landlord, without offset or deduction and without notice or demand, the annual sums set forth on Exhibit C (collectively, "Base Rent") payable in advance on the first (1st) day of each calendar month of the Term in equal monthly installments as specified therein (unless any such date is not a Business Day, in which case payment shall be due on the next succeeding Business Day), for the period commencing on the Commencement Date and continuing thereafter throughout the Term. The first installment of Base Rent shall be due and payable on the Commencement Date hereof. Base Rent shall be paid in lawful money of the United States to Landlord at the office of Landlord as set forth in Section 25.01(b) or at such other place as Landlord shall direct from time to time by written notice to Tenant.

3.02.    Tenant shall also pay and discharge as additional rent (the "Additional Rent") all other amounts, liabilities and obligations of whatsoever nature relating to the Premises, including, without limitation, any amounts arising under any operating easement, or other similar agreements affecting the Premises or any adjoining property thereto, and all interest and penalties that may accrue thereon in the event of Tenant's failure to pay such amounts when due, and all damages, costs and expenses which Landlord may incur by reason of any Event of Default of Tenant or failure on Tenant's part to comply with any of the terms of this Lease, all of which Tenant hereby agrees to pay upon demand. Upon any failure on the part of Tenant to pay any of the Additional Rent, Landlord shall have the same legal, equitable and contractual rights, powers and remedies provided either in this Lease or by statute or by common law or otherwise as are available to Landlord in the case of nonpayment of Base Rent.

3.03.    This Lease shall be deemed and construed to be a fully "net lease" and Tenant shall pay to Landlord, absolutely net throughout the Term, all Base Rent and Additional Rent (collectively, the "Rental"), free of any charges, assessments, impositions or deductions of any kind and without abatement, deduction or setoff whatsoever in the manner set out above for payment of Base Rent, and under no circumstances or conditions, whether now existing or hereafter arising, or whether beyond the present contemplation of the parties, shall Landlord be expected or required to make any payment of any kind whatsoever relating to the Premises or be under any other obligation or liability hereunder or otherwise, except as herein otherwise expressly set forth. Except for debt service on any indebtedness of Landlord, Tenant shall pay all costs, expenses and charges of every kind and nature relating to the Premises which may arise or become due or payable prior to, during or after (but attributable to a period falling within) the Term, including, but not limited to, the Impositions, all costs, expenses and charges related to all recorded or unrecorded agreements, easements, declarations, restrictions or other matters affecting the title to the Premises, and the Maintenance and Repair Costs, any and all impact fees and/or contributions, and Tenant hereby agrees to indemnify Landlord against and hold Landlord harmless from the same with counsel acceptable to Landlord in Landlord's sole discretion. Except as otherwise specifically provided in this Lease, Tenant's obligation to pay Rental, the Impositions, and all other sums payable under this Lease by Tenant, shall not terminate prior to the Expiration Date, notwithstanding the exercise by Landlord of any or all of its rights under Article 24

6

hereof or otherwise, and all the obligations of Tenant hereunder shall be absolute and shall not be affected for any reason whatsoever, including, without limitation, by any damage to or destruction of the Premises or any part thereof, any taking of the Premises or any part thereof or interest therein by condemnation or otherwise, any prohibition, limitation, restriction or prevention of Tenant's use, occupancy or enjoyment of the Premises or any part thereof, or any interference with such use, occupancy or enjoyment by any Person or for any reason, any matter affecting title to the Premises, any default by Landlord hereunder, the impossibility, impracticability or illegality of performance by Landlord, Tenant or both, any action of any Governmental Authority, Tenant's acquisition of ownership of all or part of the Premises (unless this Lease shall be terminated by a writing signed by all persons, including any Fee Mortgagee, having an interest in the Premises), any breach of warranty or misrepresentation, or any other cause whether similar to or dissimilar from the foregoing and whether or not Tenant shall have notice or knowledge thereof and whether or not such cause shall now be foreseeable. The parties intend that the obligations of Tenant under this Lease shall be separate and independent covenants and agreements and shall continue unaffected unless such obligations have been modified or terminated pursuant to an express provision of this Lease.

3.04.    Tenant shall remain obligated under this Lease in accordance with its terms and shall not take any action to terminate, rescind or avoid this Lease, notwithstanding any action for bankruptcy, insolvency, reorganization, liquidation, dissolution or other proceeding affecting Landlord or any assignee of Landlord or any action with respect to this Lease which may be taken by any trustee, receiver or liquidator or by any court. Tenant hereby waives all right (i) to terminate this Lease, or (ii) to surrender this Lease, or (iii) to any abatement, deferment, reduction, setoff, counterclaim or defense with respect to any Rental, Impositions, or any other sums payable hereunder by Tenant. Tenant shall remain obligated under this Lease in accordance with its terms, and Tenant hereby waives any and all rights now or hereafter conferred by statute or otherwise to modify or to avoid strict compliance with its obligations under this Lease. Notwithstanding any such statute or otherwise, Tenant shall be bound by all the terms and provisions contained in this Lease.

3.05.    It is the intention of the parties hereto that the obligations of Tenant hereunder shall be separate and independent covenants and agreements, and that any Base Rent, Impositions, and other items of Rental and all other sums payable by Tenant hereunder shall continue to be payable in all events, and that the obligations of Tenant hereunder shall continue unaffected. This is a Net Lease and Base Rent, Impositions, and all other items of Rental and all other sums payable hereunder by Tenant shall be paid without notice or demand, and without setoff, counterclaim, recoupment, abatement, suspension, deferment, diminution, deduction, reduction or defense. This Lease shall not terminate, and Tenant shall not have any right to terminate this Lease, during the Term. Landlord and Tenant agree that this Lease is a true lease and does not represent a financing agreement.

ARTICLE 4
IMPOSITIONS

4.01.    Tenant shall pay or cause to be paid, in a timely manner and as hereinafter provided, all of the following items, if any, (collectively, the "Impositions"): (a) real property taxes and assessments; (b) personal property taxes; (c) occupancy and rent taxes; (d) water, water meter and sewer rents, rates and charges; (e) all charges, costs and other obligations imposed on or with respect to any of the Permitted Encumbrances; (f) levies; (g) license and permit fees; (h) service charges, with respect to police protection, fire protection, street and highway maintenance, construction and lighting, sanitation and water supply, if any; (i) gross receipts, excise or similar taxes (i.e. taxes customarily based upon gross income or receipts which fail to take into account deductions relating to the Premises) imposed or levied upon, assessed against or measured by Base Rent, Rental or any other sums payable hereunder by Tenant, but only to the extent that such taxes would be payable if the

7

Premises were the only property of Landlord; (j) all excise, sales, value added, use and similar taxes; (k) charges for utilities, communications and other services rendered or used in or about the Premises; (l) payments in lieu of each of the foregoing, whether or not expressly so designated; (m) fines, penalties and other similar or like governmental charges applicable to any of the foregoing and any interest or costs with respect thereto; (n) tap-on or hook up fees, for utilities or otherwise; (o) recapture fees, and (p) any and all other federal, state, county and municipal governmental and quasi-governmental levies, fees, rents, assessments or taxes and charges, general and special, ordinary and extraordinary, foreseen and unforeseen, of every kind and nature whatsoever, and any interest or costs with respect thereto, which at any time during, prior to or after (but attributable to a period falling within) the Term are (1) assessed, levied, confirmed, imposed upon, or would grow or become due and payable out of or in respect of, or would be charged with respect to, the Premises, (2) assessed, levied, confirmed, imposed upon, or would grow or become due and payable out of or in respect of, or would be charged with respect to, any document to which Tenant is a party creating or transferring an interest or estate in the Premises, the use and occupancy thereof by Tenant, or this transaction, or (3) encumbrances or liens on (i) the Premises; (ii) any vault, passageway or space in or under the sidewalks or streets in front of or adjoining the Premises; (iii) any other appurtenances of the Premises; (iv) any personal property, Equipment or other facility used in the operation thereof; or (v) the Rental (or any portion thereof) payable by Tenant hereunder or any other sums payable hereunder by Tenant. Each such Imposition, or installment thereof, during the Term shall be paid before the last day the same may be paid without fine, penalty, interest or additional cost; provided, however, that if, by law, any Imposition may at the option of the taxpayer be paid in installments (whether or not interest shall accrue on the unpaid balance of such Imposition), Tenant may exercise the option to pay the same in such installments and shall be responsible for the payment of such installments only, provided that all such installment payments relating to periods prior to the date definitely fixed for the expiration of the Term are required to be made prior to the Expiration Date.

4.02.    Tenant shall, from time to time upon request of Landlord, furnish to Landlord, within the earlier of (i) thirty (30) days after the date when an Imposition is due and payable under this Lease, or (ii) thirty (30) days after the date when an official receipt of the appropriate imposing authority is received, such official receipt or, if no such receipt has been received by Tenant, other evidence reasonably satisfactory to Landlord evidencing the payment of the Imposition.

4.03.    (a) INTENTIONALLY OMITTED.

(b) If at any time during the Term, a tax or excise on Rental (or any other sums payable hereunder by Tenant) or the right to receive rents or other tax, however described, is levied or assessed against Landlord as a substitute in whole or in part for any Impositions theretofore payable by Tenant, Tenant shall pay and discharge such tax or excise on Rental (or any other sums payable hereunder by Tenant) or other tax before interest or penalties accrue, and the same shall be deemed to be an Imposition levied against the Premises.

4.04.    Any Imposition imposed against the Premises, relating to a fiscal period of the imposing authority, a part of which period is included within the Term and a part of which is included in a period of time after the date definitely fixed in Article 2 hereof for the expiration of the Term (whether or not such Imposition shall be assessed, levied, confirmed, imposed upon or in respect of or become a lien upon the Premises, or shall become payable, during the Term) shall be apportioned between Landlord and Tenant as of such date definitely fixed for the expiration of the Term, so that Tenant shall pay that portion of such Imposition which that part of such fiscal period included in the period of time before such date definitely fixed for the expiration of the Term bears to the entirety of such fiscal period, and Landlord shall pay the remainder thereof. The foregoing obligations shall survive expiration or termination of the Lease.

8

4.05.    Tenant shall not have the right to contest the amount or validity, in whole or in part, of any Imposition by appropriate proceedings diligently conducted in good faith, unless: (a) Tenant shall have received the prior written consent of Landlord for such contest which consent may be withheld, delayed or conditioned by Landlord in the absolute discretion of Landlord, and (b) after first paying such Imposition which Tenant wishes to contest, unless such payment would operate as a bar to such contest, in which event, notwithstanding the provisions of Section 4.01 hereof, payment of such Imposition shall be postponed if and only as long as:

(a)    neither the Premises nor any part thereof would, by reason of such postponement or deferment, be, in the reasonable judgment of Landlord, in danger of being forfeited, lost or adversely affected;

(b)    such contest shall not subject Landlord or any Fee Mortgagee to the risk of any criminal or civil liability;

(c)    such contest shall not cause Landlord to be in default under any Fee Mortgage;

(d)    such contest shall not, in the reasonable judgment of Landlord, result in any Imposition being increased; and

(e)    Tenant shall have deposited with Landlord simultaneously with such contest, cash or other security determined by Landlord in the amount so contested and unpaid, together with all interest and penalties in connection therewith and all charges that may be assessed against or become a charge on the Premises or any part thereof in such proceedings.

Upon the termination of such proceedings, it shall be the obligation of Tenant to pay the amount of such Imposition or part thereof as finally determined in such proceedings, the payment of which may have been deferred during the prosecution of such proceedings, together with any costs, fees (including attorneys' fees and disbursements), interest, penalties or other liabilities in connection therewith, and upon such payment, Landlord, as the case may be, shall return, with any interest accrued thereon, any amount deposited with it in respect of such Imposition as aforesaid, provided, however, that Landlord, as the case may be, if requested by Tenant, shall disburse said moneys on deposit with it directly to the imposing authority to whom such Imposition is payable. If, at any time during the continuance of such proceedings, Landlord shall reasonably deem the amount deposited as aforesaid insufficient, Tenant, upon demand, shall make an additional deposit of such additional sums or other acceptable security as Landlord may request, and upon failure of Tenant to do so, the amount theretofore deposited may, at the option of Landlord, be applied by Landlord, as the case may be, to the payment, removal and discharge of such Imposition and the interest and penalties in connection therewith and any costs, fees (including attorneys' fees and disbursements) or other liability accruing in any such proceedings, and the balance, if any, shall be returned to Tenant or the deficiency, if any, shall be paid by Tenant on demand. Nothing contained in this Section 4.05 or elsewhere in this Lease shall be deemed to limit Tenant's obligation to make the deposits provided for in Article 5 hereof.

4.06.    Subject to the provisions of Section 4.05, Tenant shall not have the right to seek a reduction in the assessed valuation of the Premises for real property tax purposes or to prosecute any action or proceeding in connection therewith without the prior written consent of Landlord which consent may be withheld, delayed or conditioned by Landlord in the absolute discretion of Landlord.

4.07.    Landlord shall not be required to join in any proceedings referred to in Sections 4.05 or 4.06 hereof unless the provisions of any Law, rule or regulation at the time in effect shall require that such proceedings be brought by and/or in the name of Landlord, in which event, Landlord shall

130305777v1 2715

join and cooperate in such proceedings or permit the same to be brought in its name but shall not be liable for the payment of any costs or expenses in connection with any such proceedings, and Tenant shall reimburse and indemnify Landlord for any and all costs or expenses which Landlord may sustain or incur in connection with any such proceedings.

4.08.    Any certificate, advice or bill of the appropriate official designated by Law to make or issue the same or to receive payment of any Imposition asserting nonpayment of such Imposition shall be prima facie evidence that such Imposition is due and unpaid at the time of the making or issuance of such certificate, advice or bill.

4.09.    Landlord shall have the right, but not the obligation, to contest the amount or validity, in whole or in part, of any Imposition and Tenant shall be immediately reimburse Landlord for all costs and expenses paid or incurred by Landlord in connection with such contest. Landlord shall have the right, but not the obligation, to right to seek a reduction in the assessed valuation of the Premises for real property tax purposes or to prosecute any action or proceeding in connection therewith, and Tenant shall be immediately reimburse Landlord for all costs and expenses paid or incurred by Landlord in connection with seeking such reduction in said assessed valuation.

## ARTICLE 5
## DEPOSITS FOR IMPOSITIONS

5.01.    Notwithstanding anything contained in this Lease to the contrary, Landlord may, if from time to time required by Landlord or its Fee Mortgagee, reasonably estimate in advance the amounts Tenant shall owe for any or all of the Impositions, including, without limitation real property taxes and assessments, and for Insurance Costs (as hereinafter defined) for any full or partial calendar year of the Term. In such event, Tenant shall pay to Landlord, or if so directed by Landlord, to Landlord's Fee Mortgagee, $1/12^{th}$ of such estimated amounts, on a monthly basis, on or before the first (1st) day of each calendar month. Tenant shall pay such estimated amounts to the Landlord (or the Fee Mortgagee) at the time Tenant pays its monthly installments of Base Rent to Landlord. Such estimate may be reasonably adjusted from time to time by Landlord. If Landlord shall have Tenant pay such Impositions and Insurance Costs on a monthly basis in accordance with this paragraph, the following shall apply:

(a)    Within one hundred twenty (120) days after the end of each calendar year, or as soon thereafter as practicable, Landlord shall provide a statement (the "Statement") to Tenant showing: (1) the amount of actual Impositions and Insurance Costs for such calendar year, (2) any amount paid by Tenant towards Impositions and Insurance Costs during such calendar year on an estimated basis, and (3) any revised estimate of Tenant's obligations for Impositions and Insurance Costs for the current calendar year.

(b)    If the Statement shows that Tenant's estimated payments were less than Tenant's actual obligations for Impositions and Insurance Costs for such year, Tenant shall pay the difference. If the Statement shows an increase in Tenant's estimated payments for the current calendar year, Tenant shall pay the difference between the new and former estimates, for the period from January 1 of the current calendar year through the month in which the Statement is sent. Tenant shall make such payments within thirty (30) days after Landlord sends the Statement. Tenant's obligations to make the foregoing payments shall survive the expiration or earlier termination of this Lease.

(c)    If the Statement shows that Tenant's estimated payments exceeded Tenant's actual obligations for Impositions and Insurance Costs, Tenant shall receive a credit for the difference against payments of Impositions next due. If the Term shall have expired and no further Impositions and

10

Insurance Costs shall be due, Tenant shall receive a refund of such difference, within thirty (30) days after Landlord sends the Statement.

(d)     Landlord reserves the right to reasonably change, from time to time, the manner or timing of the foregoing payments. In lieu of providing one Statement covering Impositions and Insurance Costs, Landlord may provide separate statements, at the same or different times. No delay by Landlord in providing the Statement (or separate statements) shall be deemed a default by Landlord or a waiver of Landlord's right to require payment of Tenant's obligations for actual or estimated Impositions and Insurance Costs. As used herein, "Insurance Costs" means all premiums, charges and costs due and payable to procure and maintain the insurance coverages required pursuant to Article 7 hereof.

ARTICLE 6
LATE CHARGES

If payment of Base Rent, Additional Rent, the Impositions, Rental or any other amounts payable by Tenant hereunder shall become overdue beyond the due date thereof pursuant to this Lease (or if no such due date is set forth in this Lease, then such due date for purposes of this Article 6 shall be deemed to be the date upon which demand therefor is made), a late charge on the sums so overdue equal to the Prime Rate plus ten percent (10%) per annum ("Late Charge Rate"), for the period from the due date to the date of actual payment plus a late charge equal to ten percent (10%) of such overdue amount, plus any attorneys' fees incurred by Landlord by reason of Tenant's failure to pay such overdue amount when due hereunder, shall become due and payable to Landlord as liquidated damages for the administrative costs and expenses incurred by Landlord by reason of Tenant's failure to make prompt payment, and the late charges shall be payable by Tenant on demand. No failure by Landlord to insist upon the strict performance by Tenant of its obligations to pay late charges shall constitute a waiver by Landlord of its right to enforce the provisions of this Article 6 in any instance thereafter occurring. The provisions of this Article 6 shall not be construed in any way to extend the grace periods or notice periods provided for in Article 24 or elsewhere in this Lease. If, from any circumstances whatsoever, fulfillment of any provision hereof at the time performance of such provision shall be due, shall involve exceeding the highest lawful rate of interest permissible under applicable law, then the obligation to be fulfilled shall be reduced to the highest lawful rate of interest permissible under the applicable laws; and, if for any reason whatsoever, Landlord shall ever receive as interest an amount which would be deemed unlawful under such applicable law, at Landlord's option such excess shall be either credited against payments next due hereunder or refunded by Landlord, provided that a Default or Event of Default does not then exist hereunder.

ARTICLE 7
INSURANCE

7.01.    (a) Tenant shall:

(i)     keep the Improvements and the Premises insured against loss or damage by fire, windstorm, tornado and hail and all other hazards covered by the usual extended coverage and "all risk" endorsements of whatsoever kind ("Casualty Insurance"), including, without limitation, coverage for loss or damage by acts of terrorism, water, flood, sprinkler leakage, subsidence and earthquake, with such sublimits as are reasonably required by Landlord, and excluding from such coverage normal settling of the Improvements. Such coverage shall include losses from war when and to the extent obtainable from the United States government or an agency thereof. Such Casualty Insurance shall be in the amount set forth in the "agreed amount clause" endorsement to the policy in question, which endorsement shall be attached to the policy, provided that such amount, in all events, shall be (x)

11

sufficient to prevent Landlord and Tenant from becoming co-insurers under provisions of applicable policies of insurance, and (y) in the amount not less than one hundred percent (100%) of the Net Replacement Cost of the Premises, including, but not limited to, the Improvements, such Net Replacement Cost to be determined by the insurers from time to time, but not less frequently than required by the standard "agreed amount clause" endorsement, and (A) no omission on the part of Landlord to request any such determination shall relieve Tenant of its obligation to have such Net Replacement Cost determined as aforesaid, and (B) any such determination to the contrary notwithstanding, Landlord may require Tenant to furnish additional insurance of the nature specified in this paragraph at any time that Landlord reasonably deems such Casualty Insurance to be inadequate;

(ii)     provide and keep in full force "All Risk" property insurance on a 100% full Net Replacement Cost basis, covering all of the Tenant's personal property, merchandise, alterations, trade fixtures, furnishings and Equipment, and all leasehold improvements installed in the Premises by, or on behalf of, Tenant;

(iii)    provide and keep in force general comprehensive public liability insurance ("Liability Insurance") against liability for bodily injury and death and property damage, such Liability Insurance to be in such amount as may from time to time be reasonably required by Landlord, but not less than $3,000,000.00 combined single limit for liability for bodily injury, death and property damage, and not less than $5,000,000.00 excess liability coverage, and shall include the Premises and all sidewalks adjoining or appurtenant to the Premises, shall contain blanket contractual coverage and shall also provide coverage to indemnify and hold Landlord and all other Indemnified Parties harmless from and against all cost, expense and liability arising out of or based upon claims, accidents, injuries and damages mentioned in Article 19 hereof (and the policy or endorsement shall have Section 19.01 hereof printed thereon in its entirety);

(iv)     provide and keep in force automobile liability and property damage insurance for all owned, nonowned and hired vehicles insuring against liability for bodily injury and death and for property damage in an amount determined from time to time by Landlord, but not less than $3,000,000.00 combined single limit, such insurance to contain the so-called "occurrence clause";

(v)      provide and keep in force workers' compensation providing statutory benefits for all persons employed by Tenant at or in connection with the Premises;

(vi)     provide and keep in force rent insurance on an "All Risk of Physical Loss" basis in an amount not less than the sum of (a) the Base Rent then payable hereunder for a period of one year, (b) an amount equal to the Impositions for a like period, and (c) an amount equal to the insurance premiums payable under this Lease for a like period;

(vii)    if a sprinkler system shall be located in any portion of the Improvements, provide and keep in force sprinkler leakage insurance in amounts reasonably required by Landlord;

12

(viii)    provide and keep in force boiler, machinery and pressure vessel insurance in an amount determined from time to time by Landlord, per occurrence and on a combined basis covering direct property loss and loss of income and providing for all steam, mechanical and electrical equipment, including, without limitation, all boilers, unfired pressure vessels, piping and wiring;

(ix)    If, pursuant to the provisions of Article 23 of this Lease, Tenant is permitted to serve and/or sell alcoholic beverages or liquor, in packaged form or otherwise, including, without limitation, beer, wine and/or ale, then Tenant shall obtain and maintain, throughout the entire term of this Lease, liquor liability and dram shop insurance, in an amount of coverage equal to the greater of $2,000,000 or the minimum amount of coverage required by applicable Laws; and

(x)    provide and keep in force such other insurance and coverages and in such amounts as may from time to time be reasonably required by Landlord or any Fee Mortgagee against such other insurable hazards as at the time are commonly insured against in the case of prudent owners of like buildings and improvements.

(b)    Whenever, under the terms of this Lease, Tenant is required to maintain insurance, Landlord, and any other parties designated by Landlord, from time to time, including, but not limited to, any Fee Mortgagee, shall be additional named insureds and loss payees in all such insurance policies. If the Premises shall be subject to any Fee Mortgage, the public liability insurance shall, if required by such Fee Mortgage, name the Fee Mortgagee as an additional named insured, and all other insurance provided hereunder shall name the Fee Mortgagee as an additional named insured under a standard "noncontributory mortgagee" endorsement or its equivalent and permitting the Fee Mortgagee to collect all proceeds payable thereunder.

7.02.

(a)    The loss under all policies required by any provision of this Lease shall be payable to Landlord (or at the option of Landlord, to Landlord's lender, including, but not limited to the Fee Mortgagee). At Landlord's option, exercisable in Landlord's sole discretion, the loss under any or all of the policies required by any provision of this Lease insuring against damage to the Improvements by fire or other casualty may be payable to Tenant, as trustee. Tenant hereunder, (1) shall hold the insurance proceeds with respect to such loss in trust for the sole purpose of paying the cost of the Restoration, and (2) shall apply such proceeds solely to the payment in full of the cost of the Restoration. Tenant shall give Landlord notice of completion of the Restoration within ten (10) days thereafter. Notwithstanding the foregoing, at Landlord's option, exercisable in Landlord's sole discretion, Tenant shall pay or assign all insurance proceeds with respect to such loss back to Landlord.

(b)    All Insurance Policies shall be in such form and shall be issued by responsible companies licensed and authorized to do business in the State of Illinois as are acceptable to Landlord. All such companies shall have a Best Rating of not less than A/X(10) in the then current edition of Best's Insurance Guide. All Insurance Policies referred to in this Lease shall be procured, or caused to be procured, by Tenant, at no expense to Landlord, and for periods of not less than one (1) year. A copy of each of the Insurance Policies (together with insurance certificates), certified by the insurer to be a true copy thereof, shall be delivered to Landlord immediately upon receipt from the insurance company or companies (and Tenant shall use diligent efforts to procure such certified copies), but in no event later than ten (10) days after the Effective Date, together with paid receipts therefor. Certified copies of new or renewal policies replacing any policies expiring during the Term shall be delivered as aforesaid at least

13

thirty (30) days before the date of expiration, together with proof satisfactory to Landlord that the full premiums have been paid for at least the first year of the term of such policies. During the term of such policies, at least thirty (30) days before each anniversary of the effective date of the policy, Tenant shall deliver to Landlord proof satisfactory to Landlord that the full premiums have been paid for at least the next year of the term of the policy. Premiums on policies shall not be financed in any manner whereby the lender, on default or otherwise, shall have the right or privilege of surrendering or canceling or requesting the surrender or cancellation of the policies, provided, however, that premiums may be paid in such installments as are permitted pursuant to the provisions of the applicable policy so long as payment by installments will not allow the insurer thereunder to cancel said policy. If Tenant fails to submit such policies or certificates to Landlord within the specified time, or otherwise fails to obtain and maintain insurance coverages in accordance with this Article 7, then, Landlord, at Landlord's sole option, upon fifteen (15) days prior written notice to Tenant and Tenant's failure to cure within said period, may, but shall not be obligated to, procure such insurance on behalf of, and at the expense of, the Tenant, and if Landlord exercises such right and expends any funds to obtain such insurance, Tenant shall reimburse Landlord for such amounts upon demand, it being understood that any such sums for which Tenant is required to reimburse Landlord shall constitute additional rent under this Lease.

(c)    Tenant and Landlord shall cooperate in connection with the collection of any insurance moneys that may be due in the event of loss, and Tenant and Landlord shall execute and deliver such proofs of loss and other instruments which may be required for the purpose of obtaining the recovery of any such insurance moneys.

(d)    Tenant shall not carry separate insurance concurrent in form or contributing in the event of loss with that required by this Lease to be furnished by Tenant, unless Landlord and each Fee Mortgagee are included therein as additional named insureds with any loss payable as provided in this Lease. Tenant shall immediately notify Landlord of the carrying of any such separate insurance and shall cause the same to be delivered as required in this Lease.

(e)    Tenant shall not violate or permit to be violated any of the conditions or provisions of any of the Insurance Policies, and Tenant shall so perform and satisfy or cause to be performed and satisfied the requirements of the companies writing such policies so that at all times companies of good standing, satisfactory to Landlord (as provided in Section 7.02(b) hereof), shall be willing to write and continue such insurance.

(f)    Each Insurance Policy and each certificate or memorandum therefor issued by the insurer shall contain (i) a provision that no act or omission of Tenant shall affect or limit the obligation of the insurer to pay Landlord or any Fee Mortgagee the amount of any loss sustained, (ii) an agreement by the insurer that such policy shall not be cancelled or modified without at least thirty (30) days' prior written notice to Landlord and each Fee Mortgagee, and (iii) a waiver of subrogation by the insurer of any right to recover the amount of any loss resulting from the negligence of Landlord or its agents, employees or licensees.

(g)    Landlord shall not be limited in the proof of any damages which Landlord may claim against Tenant arising out of or by reason of Tenant's failure to provide and keep in force insurance, as aforesaid, to the amount of the insurance premium or premiums not paid or incurred by Tenant and which would have been payable under such insurance, but Landlord shall also be entitled to recover as damages for such breach the uninsured amount of any loss, to the extent of any deficiency in the insurance required by the provisions of this Lease, and damages, costs and expenses of suit suffered or incurred by reason of damage to, or destruction of, the Premises occurring during any period when Tenant shall have failed or neglected to provide insurance as aforesaid.

130305777v1  2715

(h)    Each of Landlord and Tenant hereby waives any and every claim for recovery from the other for any and all loss or damage to the Land or the Improvements or to the contents thereof, whether such loss or damage is due to the negligence of Landlord or Tenant or their respective agents or employees, which loss or damage is insured pursuant to this Lease by valid and collectible insurance policies and then only to the extent of the proceeds collected or collectible under such insurance policies; provided, however, that the foregoing waiver shall not be operative in any case where the effect thereof is to invalidate any insurance coverage of the waiving party or increase the cost of such insurance coverage; provided further, that Landlord and Tenant each agree to give written notice of the terms of this mutual waiver to each insurance company which has issued, or in the future may issue, policies of insurance to it, and to have said insurance policies properly endorsed to prevent the invalidation of said insurance coverage by reason of said waiver and provided further that such insurance company waives all rights of subrogation which it might have against Landlord or Tenant, as the case may be.

7.03.    All insurance provided for under Section 7.01 may contain loss deductible clauses in such maximum amounts as Landlord shall approve in Landlord's sole discretion; provided, to the extent insurance proceeds are to be paid to Landlord, all such deductible amounts shall be paid by Tenant to Landlord in addition to such insurance proceeds.

ARTICLE 8
USE OF CASUALTY INSURANCE PROCEEDS

8.01.    If all or any part of the Premises, including, but not limited to, the Improvements, shall be destroyed or damaged in whole or in part by fire or other casualty (whether or not insured) of any kind or nature, ordinary or extraordinary, foreseen or unforeseen, Tenant shall give Landlord immediate notice thereof (except with respect to partial damage the reasonably estimated cost of repair of which shall be less than $5,000), and Tenant, whether or not such damage or destruction shall have been insured or insurable, and whether or not insurance proceeds, if any, shall be sufficient for the purpose, with reasonable diligence shall repair, alter, restore, replace and rebuild (collectively, "Restore") the same, at least to the extent of the value and as nearly as practicable to the character of the Premises, including, but not limited to, the Improvements, existing immediately prior to such occurrence (collectively, "Restoration"), and Landlord, in no event, shall be called upon to Restore the Premises, including, but not limited to, the Improvements, as now or hereafter existing, or any portion thereof or to pay any of the costs or expenses thereof. If Tenant shall fail or neglect to Restore with reasonable diligence the Premises, including, but not limited to, the Improvements or the portion thereof damaged or destroyed, or, having so commenced such Restoration, shall fail to complete the same with reasonable diligence in accordance with the terms of this Lease, Landlord may (but shall not be obligated to) complete such Restoration at Tenant's expense or terminate the Lease. Upon Landlord's election to so complete the Restoration, Tenant immediately shall pay to Landlord all insurance proceeds which may have been received by Tenant (together with all deductibles), minus those amounts, if any, which Tenant shall have applied to the Restoration, and if such sums are insufficient to complete the Restoration, Tenant, on demand, shall immediately pay the deficiency to Landlord. Each Restoration shall be done in accordance with the provisions of this Lease, and shall be done in accordance with, and subject to, the provisions of Article 13, including, without limitation, the maintenance of the insurance coverage referred to in Article 13.01(e).   Prior to the making of any Restoration (except with respect to partial damage the reasonably estimated cost of Restoration of which shall be less than $5,000), Tenant shall furnish Landlord and any Fee Mortgagee with an estimate of the cost of such Restoration (the "Estimate"), prepared by a licensed professional engineer or registered architect approved by Landlord, which approval shall not be unreasonably withheld or delayed, and, upon Landlord's request, plans and specifications in connection with the Restoration for the Landlord's and Fee Mortgagee's review and approval, such approval not to be unreasonably withheld. Landlord shall have no duty to perform the Restoration. Landlord at all times shall be entitled to all insurance

15

proceeds and deductibles, provided that, at Landlord's option and in Landlord's sole discretion, Landlord's lender (or Fee Mortgagee) shall also be entitled to all insurance proceeds and deductibles.

8.02.    Landlord shall have the right, but not the obligation, in Landlord's sole and absolute discretion, to disburse to Tenant any of the insurance proceeds from the insurance provided by Tenant as required under this Lease (other than rent insurance) which are actually collected by Landlord (or the Fee Mortgagee) for payment of the costs related to the Restoration (collectively, the "Restoration Funds"). In the event Landlord elects to disburse the Restoration Funds to Tenant, then Tenant shall use the Restoration Funds solely for the purpose of the Restoration to be made by Tenant to Restore the Premises, including, but not limited to, the Improvements, to a value which shall be not less than the value prior to such fire or other casualty. Prior to the making of any Restoration (except with respect to partial damage the reasonably estimated cost of Restoration of which shall be less than $5,000), Tenant shall furnish Landlord with the Estimate. The Restoration Funds shall be paid to Tenant from time to time thereafter in installments as the Restoration progresses upon application to be submitted from time to time by Tenant to Landlord (or the Fee Mortgagee) showing the cost of work, labor, services, materials, fixtures and equipment incorporated in the Restoration, or incorporated therein since the last previous application, and paid for by Tenant or then due and owing. If any vendors', mechanics', laborers', or materialmen's lien is filed against the Premises or any part thereof, Tenant shall not be entitled to receive any further installment until such lien is satisfied or otherwise discharged. If the estimated cost of any Restoration exceeds the insurance proceeds received by Landlord, then, prior to the commencement of such Restoration or thereafter if at any time it is determined by Landlord that the cost to complete the Restoration exceeds the unapplied portion of such insurance proceeds, Tenant shall from time to time immediately deposit with Landlord a bond, cash, irrevocable letter of credit or other security reasonably satisfactory to Landlord in the amount of such excess, to be held and applied by Landlord in accordance with the provisions of Section 8.02, as security for the completion of the work, free of public improvement, vendors', mechanics', laborers' or materialmen's statutory or other similar liens. If Landlord makes the Restoration at Tenant's expense, as provided in Section 8.01, then Landlord shall be entitled to use the Restoration Funds for the Restoration in its sole discretion. Notwithstanding anything contained in this Lease to the contrary, Landlord shall be entitled to the Restoration Funds at all times, provided that, at Landlord's option and in Landlord's sole discretion, Landlord's lender (or Fee Mortgagee) shall also be entitled to the Restoration Funds.

8.03.    The following shall be conditions precedent to each payment made to Tenant as provided in Section 8.02 above:

(a)    There shall be submitted to Landlord the certificate of the engineer or architect referred to in Section 8.02 hereof stating: (i) that the sum then requested to be withdrawn either has been paid by Tenant or is justly due to contractors, subcontractors, materialmen, engineers, architects or other Persons (whose names and addresses shall be stated) who have rendered or furnished work, labor, services, materials, fixtures or equipment for the work and giving a brief description of such work, labor, services, materials, fixtures or equipment and the principal subdivisions or categories thereof and the several amounts so paid or due to each of said Persons in respect thereof, and stating in reasonable detail the progress of the Restoration up to the date of said certificate; (ii) that no part of such expenditures has been or is being made the basis, in any previous or then pending request, for the withdrawal of insurance money or has been made out of the proceeds of insurance received by Tenant; (iii) that the sum then requested does not exceed ninety percent (90%) of the cost of the work, labor, services, materials, fixtures and equipment described in the certificate; (iv) that the balance of the Restoration Funds held by Landlord will be sufficient, upon completion of the Restoration, to pay for the same in full, and stating in reasonable detail an estimate of the cost of such completion; and (v) appropriate sworn statements and lien waivers (which comply with the mechanics' lien laws of the State of Illinois) from all Persons receiving payment under such draws.

(b)     There shall be furnished to Landlord a date-down endorsement of Landlord's title insurance policy for the Premises and the Fee Mortgagee's loan title insurance policy for the Premises, or, at Landlord's option, a similar certificate of a title insurance company reasonably satisfactory to Landlord, showing that there are no vendors', mechanics', laborers' or materialmen's or other liens affecting the Premises or any part thereof in connection with work done, authorized or incurred at or relating to the Premises which had not been discharged of record, except such as will be discharged upon payment of the amount then requested to be withdrawn;

(c)     At the time of making such payment, there is no Default or Event of Default on the part of Tenant under this Lease;

(d)     With respect to the final draw, there shall be submitted to Landlord (i) an architect's certificate of final completion of the Restoration Work; (ii) copies of all necessary governmental permits, including, but not limited to, a certificate of occupancy; (iii) the sworn statement of the general contractor; and (iv) final lien waivers from all contractors, subcontractors and materialmen; and

(e)     There shall be submitted to Landlord, any other information or documentation reasonably requested by Landlord to evidence lien free completion of the Restoration and payment of all of the cost thereof and utilization of the Restoration Funds.

8.04.    This Lease shall not terminate, be forfeited or be affected in any manner, nor shall there be any reduction or abatement of the Rental, the Impositions, or any other sums payable hereunder by Tenant, by reason of damage to or total, substantial or partial destruction of the Improvements or Premises, or any part thereof or by reason of the untenantability of the same or any part thereof, for or due to any reason or cause whatsoever, and Tenant, notwithstanding any Law or statute present or future, waives any and all rights to quit or surrender the Premises or any part thereof; and Tenant's obligations hereunder, including, without limitation, the payment of Rental, the Impositions, and any other sums payable hereunder by Tenant, shall continue as though the Improvements or Premises had not been damaged or destroyed and without abatement, suspension, diminution or reduction of any kind.

## ARTICLE 9
## CONDEMNATION

9.01.    (a) If, at any time during the Term, the whole or any Significant Portion of the Premises shall be taken for any public or quasi-public purpose by any lawful power or authority by the exercise of the right of condemnation or eminent domain or by agreement among Landlord, Tenant and those authorized to exercise such right, at Tenant's option, this Lease and the Term shall terminate and expire on the date of taking and the Rental, the Impositions, and any other sums payable hereunder by Tenant, shall be apportioned as of the date of such taking. If Tenant chooses to exercise the option to cancel this Lease provided for herein, it shall notify Landlord within ten (10) days after the date that Tenant receives notice of such taking. The cancellation shall be effective as of the date of taking but, in all events, after Landlord receives the amounts set forth in Section 9.01(b).

(b)     In the event of any taking or appropriation whatsoever, Landlord shall be entitled to any and all awards, judgments or settlements which may be given and Tenant hereby assigns to Landlord all of its right, title and interest in any such award, judgment or settlement and Tenant shall have no claim against Landlord for the value of any unexpired portion of the Term. Landlord solely shall have the right to prosecute claims in any condemnation proceedings. Only after Landlord's award in connection with such condemnation has been finalized may Tenant seek an award relating to its moving expenses and

17

130305777v1 2715

personal property; provided, however, in no event shall Tenant be entitled to seek such awards if the granting of such award would serve to reduce Landlord's award.

(c)     Each of the parties shall execute and deliver any and all documents that may be reasonably required in order to facilitate collection by them of such awards in accordance with the provisions of this Article 9.

(d)     For purposes of this Article 9, the "date of taking" shall be deemed to be the earlier of (i) the date on which actual possession of the whole or substantially all of the Premises or a part thereof, as the case may be, is acquired by any lawful power or authority pursuant to the provisions of applicable federal or state law, or (ii) the date on which title to the Premises or the aforesaid portion thereof shall have vested in any lawful power or authority pursuant to the provisions of the applicable federal or state law.

(e)     For purposes of this Article 9 a "Significant Portion" of the Premises shall be deemed to mean a substantial portion of the Premises as, when so taken, would result, in Landlord's estimation to be determined in Landlord's sole discretion, in the remaining balance of the Premises not being able to be used for the same purpose and substantially the same utility as before the taking.

9.02.   If Tenant elects not to exercise the option to cancel this Lease pursuant to Section 9.01(a) hereof within the time period required therein, or if less than a Significant Portion of the Premises are so taken, this Lease and the Term shall continue without abatement of the Rental, the Impositions, or any other sums payable hereunder by Tenant, or diminution of any of Tenant's obligations hereunder. Tenant, whether or not the award shall be sufficient for such purpose, shall proceed, at Tenant's sole cost, with reasonable diligence, to restore any remaining part of the Premises not so taken to complete, rentable, self-contained architectural units in as good condition and repair and of at least the same value as prior to the taking ("Taking Restoration"). Landlord, at its option, and in its sole discretion, may make available the award to Tenant for such Taking Restoration provided that, if the award, is insufficient for the purpose of paying for said Taking Restoration, Tenant shall nevertheless be required to make the Taking Restoration and pay any additional sums required for the Taking Restoration. If the estimated cost of any Taking Restoration required by the terms of this Article 9 exceeds the net condemnation award received by Landlord, then, prior to the commencement of such Taking Restoration or thereafter if it is determined by Landlord that the cost to complete the Taking Restoration exceeds the unapplied portion of such award, Tenant shall from time to time immediately deposit with Landlord a bond, cash, irrevocable letter of credit or other security reasonably satisfactory to Landlord in the amount of such excess, to be held and applied by Landlord, as security for the completion of the work, free of public improvement, vendors', mechanics', laborers' or materialmen's statutory or other similar liens

9.03.   Notwithstanding anything to the contrary contained in this Lease, in case of any governmental action not resulting in the taking or condemnation of any portion of the Premises but creating a right to compensation therefor, including, without limitation, the changing of the grade of any street upon which the Premises abut, then this Lease shall continue in full force and effect without reduction, diminution or abatement of Rental, the Impositions, or any other sums payable hereunder by Tenant, and the entire award shall be paid to Landlord. .

## ARTICLE 10
## ASSIGNMENT, SUBLETTING AND MORTGAGES

10.01.  (a) Tenant shall not assign or otherwise transfer this Lease or any interest hereunder by operation of law or otherwise, nor shall Tenant sublet or permit the use or occupancy of the

18

Premises or any part thereof by anyone other than Tenant, without the express prior written consent of Landlord, which consent may be withheld, conditioned or delayed in the absolute discretion of Landlord. Notwithstanding anything contained herein to the contrary, any such transfer, assignment or subletting: (i) shall not relieve Tenant of its obligations hereunder, and Tenant shall continue to be liable as a principal and not as a guarantor or surety, to the same extent as though no transfer, assignment or sublease had been made; and (ii) shall not relieve Guarantor, if any hereunder, of the Guarantor's obligations pursuant to its Guaranty and Guarantor shall continue to be liable under such Guaranty, to the same extent as though no transfer, assignment or sublease had been made. Consent by Landlord pursuant to this Section shall not be deemed, construed or held to be consent to any additional transfer, assignment or subletting, but each successive act shall require similar consent of Landlord. Landlord shall be reimbursed by Tenant for reasonable out of pocket costs or expenses incurred pursuant to any request by Tenant for consent to any such transfer, assignment or subletting. Tenant shall provide Landlord with at least ninety (90) days prior written notice of any proposed assignment, sublease or other transfer together with (X) financial statements for the proposed assignee, sublessee or other transferee in accordance with generally accepted accounting principles and certified by an independent certified public accountant setting forth in detail the financials of the proposed assignee, sublessee or other transferee, including, but not limited to, the net worth of the proposed assignee, sublessee or other transferee, and (Y) a copy of the proposed instrument which shall effectuate the proposed transfer, assignment, or sublease ("Transfer Instrument") for Landlord's approval and comment, in Landlord's sole discretion, prior to the execution of the Transfer Instrument. The Transfer Instrument shall include an affirmative assumption of all of Tenant's obligations and liabilities hereunder (arising before or from and after the transfer) by the proposed transferee, assignee, or subtenant, including, but not limited to, the obligation to immediately cure any Defaults or Events of Default hereunder arising prior to or from and after said transfer, assignment or sublease. No proposed assignee, sublessee or other transferee shall have a net worth of less than $5,000,000.00 at the time of the proposed assignment, sublease or other transfer provided that, regardless of whether the proposed assignee, sublessee or other transferee meets this net worth threshold, it shall be in Landlord's sole discretion as to whether or not the net worth of the proposed assignee, sublease or other transferee is acceptable.

(b)     Tenant shall not allow or permit any transfer of this Lease, or any interest hereunder, by operation of law or otherwise, or by bankruptcy, without the express prior written consent of Landlord, which consent may be withheld, conditioned or delayed in the absolute discretion of Landlord. Tenant shall not convey, hypothecate, mortgage, pledge or encumber this Lease or any interest hereunder, including, but not limited to, any Leasehold Mortgage, without the express prior written consent of Landlord, which consent may be withheld, conditioned or delayed in the absolute discretion of Landlord.

(c)     If Tenant shall, with Landlord's prior written consent as herein required, transfer, sublet or assign the Premises, one hundred percent (100%) of the rental in excess of the Rental herein provided shall be paid by Tenant to Landlord promptly when due under any sublease or assignment as additional Rental due hereunder.

(d)     If Tenant is a corporation whose stock is not publicly traded, any transaction or series of transactions (including, without limitation, any dissolution, merger, consolidation or other reorganization of Tenant, or any issuance, sale, gift, transfer or redemption of any capital stock of Tenant, whether voluntary, involuntary or by operation of law, or any combination of any of the foregoing transactions) resulting in: (a) the transfer of control of Tenant, (b) the sale, assignment, transfer, mortgage, hypothecation or pledge of more than a cumulative aggregate of fifty percent (50%) of the shares of Tenant, or (c) the sale, transfer, assignment, mortgage, hypothecation or pledge of more than a cumulative aggregate of ten percent (10%) of the Tenant's net assets, shall be deemed to be a voluntary assignment of this Lease by Tenant subject to the provisions of this Lease, including, but not limited to, this Article 10.

19

If Tenant is a partnership or limited liability company, any transaction or series of transactions (including without limitation any withdrawal or admittance of a partner or member or a change in any partner's or member's interest in Tenant, whether voluntary, involuntary or by operation of law, or any combination of any of the foregoing transactions) resulting in: (i) the transfer of control of Tenant, (ii) the sale, transfer, assignment, mortgage, hypothecation or pledge of more than a cumulative aggregate of fifty percent (50%) of the partnership or membership interests in Tenant, or (iii) the sale, transfer, assignment, mortgage, hypothecation or pledge of more than a cumulative aggregate of ten percent (10%) of the Tenant's net assets, shall be deemed to be a voluntary assignment of this Lease by Tenant subject to the provisions of this Lease, including, but not limited to, this Article 10. As used in this Section 10.01(d), the term "control" means possession of the power to vote not less than a majority interest of any class of voting securities or partnership or limited liability company interests, as applicable, or to direct or cause the direction (directly or indirectly) of the management or policies of a corporation, or partnership or limited liability company through the ownership of voting securities, partnership interests or limited liability company interests, respectively.

10.02.  Any assignment, subletting, use, hypothecation, mortgage, occupancy, use, transfer or encumbrance of this Lease or the Premises without Landlord's prior written consent shall be of no effect and shall constitute an Event of Default hereunder.

10.03.  Notwithstanding anything to the contrary contained in this Article 10, Landlord shall have the option, by giving written notice to Tenant within thirty (30) days after receipt of Tenant's notice of any proposed transfer or assignment of this Lease or sublease of the entirety of the Premises, or any portion thereof, to recapture the Premises, or such portion, as the case may be. Such recapture notice shall cancel and terminate this Lease with respect to the Premises, at Landlord's option, either: (i) as of the date stated in Tenant's notice as the effective date of the proposed assignment or sublease, as the case may be; or (ii) as of the date set forth in the recapture notice as determined by Landlord (or at Landlord's option, shall cause the assignment or sublease to be made to Landlord or its agent, in which case the parties shall execute the assignment or sublease (as the case may be) documentation promptly thereafter). If this Lease shall be cancelled with respect to less than the entire Premises, the Rental, the Impositions, and any other sums payable hereunder by Tenant, shall be prorated on the basis of the number of rentable square feet retained by Tenant in proportion to the number of rentable square feet contained in the Premises (as conclusively determined by Landlord's architect). This Lease as so amended shall continue thereafter in full force and effect, and upon request of either party, the parties shall execute written confirmation of the same.

10.04.  If Landlord consents to a transfer or an assignment of this Lease or a sublease of the Premises or any portion thereof pursuant to the provisions of this Article 10 then:

(a)  the terms and conditions of this Lease, including among other things, the original named Tenant's liability for the Premises, the Rental, the Impositions, and any other sums payable hereunder by Tenant, and any of Tenant's other obligations under this Lease, shall in no way be deemed to have been released, waived or modified;

(b)  the terms and conditions of any Guaranty (if any), including all of the Guarantor's obligations and liabilities thereunder, shall in no way be deemed to have been released, waived or modified;

(c)  such consent shall not be deemed consent to any further transfer, assignment or sublease, as the case may be, by either Tenant or any transferee, assignee or subtenant, as the case may be;

20

130305777v1 2715

(d)      no transferee, assignee or subtenant, as the case may be, shall succeed to any rights provided in this Lease or any amendment hereto to extend or terminate the Term, expand the Premises, or lease additional space, any such rights being deemed personal to Tenant;

(e)      promptly after execution, an original fully executed copy of the Transfer Instrument shall be delivered to Landlord; and

(f)      Tenant shall furnish upon Landlord's request a complete statement, certified by an independent certified public accountant, or Tenant's chief financial officer, setting forth in detail the computation of any excess rental Tenant has derived and shall derive from such assignment or sublease, as the case may be. Landlord or its authorized representatives shall have the right at all reasonable times to audit the books, records and papers of Tenant relating to any assignment or sublease, and shall have the right to make copies thereof. Any sublease hereunder shall be subordinate and subject to the provisions of this Lease, and if this Lease shall be terminated during the term of any sublease, Landlord shall have the right to: (y) treat such sublease as cancelled and repossess the Premises by any lawful means; or (z) require that such subtenant attorn to and recognize Landlord as its landlord under any such sublease or require such subtenant to enter into a direct lease with Landlord upon identical terms with this Lease for the balance of the Term. If Tenant shall Default in the performance of any of its obligations under this Lease, and fail to cure within the time permitted for cure as provided hereunder, Landlord is hereby irrevocably authorized, as Tenant's agent and attorney-in-fact, to direct any subtenant to make all payments under or in connection with the sublease directly to Landlord (which Landlord shall apply towards Tenant's obligations under this Lease). Consent by Landlord to any transfer, assignment, subletting, mortgage, hypothecation, pledge, use, or encumbrance of this Lease, including, but not limited to a transfer pursuant to Section 10.01, shall not operate to relieve Tenant from any covenant or obligation hereunder or be deemed to be a consent to or relieve Tenant from obtaining Landlord's consent to any subsequent assignment, mortgage, hypothecation, pledge, subletting, use, occupancy, transfer or encumbrance by Tenant or anyone claiming by, through or under Tenant..

10.05.    Receipt by Landlord of Rental due under this Lease from any party other than Tenant shall not be deemed to be a consent to any transfer, assignment, or subletting, nor relieve Tenant of its obligation to pay Rental or other charges for the full Term. Tenant shall have no claim and hereby waives the right to any claim against Landlord for damages by reason of any refusal, withholding or delaying by Landlord of any consent, and in such event Tenant's only remedies therefor shall be an action for specific performance or injunction to enforce any such requirement of consent.

10.06.    To secure the prompt and full payment by Tenant of the Rental and the faithful performance by Tenant of all the other terms and conditions herein contained on its part to be kept and performed, Tenant hereby assigns, transfers and sets over unto Landlord all of Tenant's right, title and interest in and to all subleases, and hereby confers upon Landlord, its agents and representatives a right of entry in, and sufficient possession of, the Premises to permit and insure the collection by Landlord of the Rentals and other sums payable under the subleases, and the exercise of the right of entry and qualified possession by Landlord shall not constitute an eviction of Tenant from the Premises or any portion thereof; provided, however, that such assignment shall become operative and effective only if (a) an Event of Default shall occur; (b) this Lease and the Term shall be cancelled or terminated pursuant to the terms, covenants and conditions hereof; or (c) there occurs repossession under a sheriff's notice or other judgment, order or decree of a court of competent jurisdiction, and then only as to such of the subleases that Landlord may elect.

10.07.    Each and every assignee, whether as assignee or as successor in interest of any assignee of Tenant, including any purchaser of this Lease under foreclosure of any mortgage or other lien on this Lease, shall immediately be, and become and remain liable for the payment of the Rental,

21

the Impositions and other charges payable by Tenant under this Lease and for the due performance of all the covenants, agreements, terms and provisions of this Lease on Tenant's part to be performed to the full end of the Term and each and every provision of this Lease applicable to Tenant shall also apply to and bind every such assignee and purchaser with the same force and effect as though such assignee or purchaser were Tenant named in this Lease.

10.08. The making of any assignment, mortgage, pledge, encumbrance or subletting, in whole or in part, shall not operate to relieve Tenant from its obligations under this Lease and, notwithstanding any such assignment, mortgage, pledge, encumbrance or subletting, Tenant shall remain primarily liable for the payment of all Rental, Impositions, and other charges payable by Tenant under the Lease and for the due performance of all the covenants, agreements, terms and provisions of this Lease to the full end of the Term of this Lease.

10.09. No Leasehold Mortgage (which is consented to by Landlord in accordance with Section 10.01(b) above) or any extension, modification or amendment thereof made by Tenant shall be a lien or encumbrance upon the estate or interest of Landlord in and to the Premises or any part thereof.

10.10. No Leasehold Mortgage (which is consented to by Landlord in accordance with Section 10.01(b) above) shall be valid or of any force or effect unless and until (a) a true copy of the original of each instrument creating and effecting such Leasehold Mortgage, certified by the Leasehold Mortgagee to be a true copy of such instrument, and written notice containing the name and post office address of the Leasehold Mortgagee shall have been delivered to Landlord, and (b) the Leasehold Mortgage shall contain in substance the following provisions:

(i)     This mortgage is executed upon the condition that no purchaser at any foreclosure sale (or purchaser by deed-in-lieu of foreclosure) shall acquire any right, title or interest in or to the lease hereby mortgaged, unless the purchaser, or the person, firm or corporation to whom or to which such purchaser's right has been assigned, in the instrument transferring to such purchaser or to such assignee the interest of tenant under the lease hereby mortgaged, shall assume and agree to perform all of the terms, covenants and conditions of that lease thereafter to be observed or performed on the part of such tenant, that no further or additional mortgage or assignment of the lease hereby mortgaged shall be made except in accordance with the provisions contained in Article 10 of that lease, and that a duplicate original of said instrument containing such assumption agreement, duly executed and acknowledged by such purchaser or such assignee and in recordable form, is delivered to landlord under the hereby mortgaged lease immediately after the consummation of such sale, or, in any event, prior to taking possession of the premises demised thereby.

(ii)    The mortgagee waives all right and option to retain and apply the proceeds of any insurance or the proceeds of any condemnation award toward payment of the sum secured by this mortgage to the extent such proceeds are required for application pursuant to the terms of the Lease hereby mortgaged or otherwise governed by said Lease.

(iii)   In the event of foreclosure, the mortgagee shall not name, in such foreclosure action or otherwise, and in any event shall not disturb the possession or right to possession (except for Default or Event of Default) of, any subtenant of the

22

tenant under the Lease hereby mortgaged who are bona fide subtenants consented to by Landlord pursuant to such Lease.

(iv)  This mortgage and all rights of the mortgagee hereunder are, without the necessity for the execution of any further documents, subject and subordinate to the rights of the landlord under the lease hereby mortgaged, as said lease may have been previously modified, amended or renewed with the consent of the mortgagor or its predecessors in interest, or may hereafter be modified, amended or renewed with the consent of the mortgagee. Nevertheless, the holder of this mortgage agrees from time to time upon request and without charge to execute, acknowledge and deliver any instruments reasonably requested by the landlord under the lease to evidence the foregoing subordination.

## ARTICLE 11
## LANDLORD'S WORK AND TENANT'S WORK

11.01.  Subject to Unavoidable Delays, Landlord shall use reasonable efforts to substantially complete the work (the "Building Work") in connection with that certain existing building (the "Building") as set forth in, and in substantial accordance with, the site plan ("Site Plan"), the plans and the elevations attached hereto as Exhibit E (collectively, the "Landlord Plans") and the site work to the Land (the "Site Work") in substantial accordance with the Landlord Plans. The Site Work and the Building Work shall be collectively referred to herein as the "Landlord's Work". Landlord makes no representation or warranty to Tenant as to whether or not the Landlord's Work violates any Laws or the provisions of the Permitted Encumbrances or whether the Landlord's Work shall be approved, or consented to, by the applicable Governmental Authorities and/or any private association or declarant with private approval rights pursuant to the Permitted Encumbrances. Landlord shall have the right to modify Landlord's Work as required by the Governmental Authorities and/or any declarant or private association. Landlord shall deliver possession of the Building to Tenant upon the substantial completion of the Building Work and Landlord shall deliver possession of the Land to Tenant upon the substantial completion of the Site Work. Notwithstanding anything contained in this Lease to the contrary, Landlord shall be deemed to have delivered possession of the Building to Tenant on the date Landlord delivers written notice to Tenant informing Tenant that the Building Work has been substantially completed (the "Building Possession Date"). Notwithstanding anything contained in this Lease to the contrary, Landlord shall be deemed to have delivered possession of the Land to Tenant on the date Landlord delivers written notice to Tenant informing Tenant that the Site Work has been substantially completed (the "Land Possession Date"). The Building Possession Date and the Land Possession Date shall be collectively referred to herein as the "Possession Date". Landlord (or at Landlord's option, Landlord's architect or engineer, as applicable) shall have the sole authority for determining when the Building Work and the Site Work, have been substantially completed. In the event that, for any reason or cause whatsoever, Landlord shall delay in performing the Landlord's Work or delay in the delivery of possession of the Premises to Tenant, Landlord shall not be subject to any liability for such delay or failure. This Lease is contingent upon Landlord obtaining all Requirements, required approvals, both public and private, including, but not limited to, any special uses, variances and permits (collectively, the "Landlord Approvals") as deemed necessary by Landlord with respect to the Landlord's Work. Tenant will cooperate, at Tenant's sole cost, in all respects with Landlord's request, if any, in Landlord's pursuit of obtaining the Landlord Approvals. Landlord shall not have any liability hereunder for not obtaining the Landlord's Approvals. If Landlord has not so obtained the Landlord Approvals, Landlord may terminate this Lease by written notice to the Tenant, and upon such termination, this Lease shall be null and void. Tenant shall cooperate with Landlord, at Tenant's cost, and provide Landlord with such documents, site plans and drawings and execute all documents as needed for the Landlord Approvals when requested by Landlord.

130305777v1  2715

11.02.   Commencing on the Building Possession Date and upon Tenant's receipt of the Work Permits, Tenant shall expeditiously commence, perform and diligently complete, at its sole cost and expense, the construction work and obligations set forth on Exhibit F  ("Tenant's Work") in a first class and workmanlike manner, using only new materials in accordance with the all applicable Laws and the provisions of the Permitted Encumbrances.  Tenant shall substantially complete Tenant's Work and open to the public for business at the Premises not later than the _____th day following the Possession Date.  In the event Tenant fails to timely satisfy its obligations as described on Exhibit F and this paragraph, such failure shall be deemed to constitute an Event of Default under this Lease and, in addition to any and all other remedies available to Landlord under this Lease, Landlord shall have the right to immediately terminate this Lease.  Prior to the Commencement Date, Tenant shall furnish reasonably detailed evidence, satisfactory to Landlord, as to the cost of Tenant's Work; that Tenant's Work has been completed and paid for in full, including sworn statements and partial and final lien waivers; and that any and all liens for such work that have been or may be filed, have been released or satisfied of record.  In no event shall Tenant open for business until all of the evidence described in the immediately preceding sentence has been furnished to Landlord unless Landlord shall waive such obligation.

11.03.   Tenant shall apply for and obtain, at Tenant's sole cost and expense, any and all necessary Requirements, permits, licenses and any other approvals (including, but not limited to, all Requirements) needed for the Tenant's Work (the "Work Permits") and the operation of a Meatheads in the Premises solely for the purpose of the Permitted Use (as defined herein) (the "Operation Permits") immediately after the Effective Date (the Operation Permits and the Work Permits shall be collectively referred to herein as the "Permits") and Tenant shall diligently pursue the Permits thereafter.  Tenant shall immediately provide Landlord with copies of all applications and other materials filed with any Governmental Authority or private entities in connection with obtaining the Permits.  Tenant shall immediately deliver copies of the Permits to Landlord upon its receipt of the same. Notwithstanding anything contained herein to the contrary, Tenant shall not have the right to modify the existing zoning of the Premises, including but not limited to, any zoning map amendments, puds, variances, exceptions, or special use permits, without the prior written consent of Landlord which consent may be withheld, conditioned or delayed by Landlord in Landlord's sole and absolute discretion.

11.04.   (a) Prior to the commencement of Tenant's Work and until completion, and during any Tenant work to the Premises, including, but not limited to, any repairs, alterations, or Capital Improvements, Tenant shall provide, or cause to be provided, and thereafter shall keep in full force and effect, or cause to be kept in full force and effect, the following types of insurance at no cost or expense to Landlord:

    (i)      comprehensive general liability insurance, naming Tenant as the insured and Landlord and all Fee Mortgagees as additional named insureds, such insurance to insure against liability for bodily injury and death and for property damage in an amount as may from time to time be reasonably required by Landlord, but in an amount not less than $3,000,000.00 combined single limit, and not less than $5,000,000.00 excess liability coverage, such insurance to include operations/premises liability, contractor's protective liability on the operations of all subcontractors, completed operations, broad form contractual liability (designating the indemnity provisions of the Construction Agreements if such coverage is provided by a contractor), and if the contractor is undertaking foundation, excavation or demolition work, an endorsement that such operations are covered and that the "XCU Exclusions" have been deleted;

24

(ii) automobile liability and property damage insurance for all owned, nonowned and hired vehicles insuring against liability for bodily injury and death and for property damage in an amount not less than $3,000,000.00 combined single limit and naming Tenant as the insured and Landlord as additional insured;

(iii) workers' compensation providing statutory benefits for all Persons employed in connection with the construction on such portion of the Land;

(iv) builder's all-risk insurance written on an agreed value basis when completed, provided that such amount of coverage shall not be less than one hundred percent (100%) of the Net Replacement Cost of the Premises, including, but not limited to, the Improvements, and the Tenant's personal property, merchandise, Equipment, trade fixtures, furnishings, fixtures, and alterations, naming Tenant as the insured and Landlord as additional insured and loss payee, and naming any other parties designated by Landlord as additional insured and loss payee, including, without limitation, all Fee Mortgagees. In addition, such insurance: (x) shall contain an acknowledgment by the insurance company that its rights of subrogation have been waived and an endorsement stating that "permission is granted to complete and occupy," and (y) if any off-site storage location listed with Tenant's insurer is used, shall cover, for full insurable value, all materials and equipment which have been delivered to and are stored at any such off-site storage location and which are intended for use with respect to such portion of the Land.

(b) Any proceeds received pursuant to the insurance coverage required under Section 11.04(a)(iv) shall be paid to Landlord (or at the option of Landlord, to Landlord's lender, including, but not limited to, the Fee Mortgagee).

(c) Tenant acknowledges that:

(i) no construction shall be commenced or continued until Tenant shall have delivered to Landlord a certified copy or abstract of each policy required by this Section 11.04, as more fully provided in Section 7.02(b); and

(ii) Tenant shall comply with the provisions of Sections 7.01(b) and 7.02(f) with respect to the policies required by this Section 11.04.

(d) Tenant and Landlord shall cooperate in connection with the collection of any insurance moneys that may be due in the event of loss, and Tenant and Landlord shall execute and deliver such proofs of loss and other instruments which may be required for the purpose of obtaining the recovery of any such insurance moneys.

(e) Intentionally omitted.

11.05. The Premises and the assets of Landlord shall be free and clear of all liens arising out of or connected with the Tenant's Work as provided in Article 16.

11.06. If necessary to promote labor harmony or to prevent a work stoppage, Tenant shall use (and shall ensure that all other occupants of the Land use) union labor at the Premises.

25

11.07.   All insurance provided for under Section 11.04 may contain loss deductible clauses in such maximum amounts as Landlord shall approve in Landlord's sole discretion; provided, to the extent insurance proceeds are to be paid to Landlord, all such deductible amounts shall be paid by Tenant to Landlord in addition to such insurance proceeds.

### ARTICLE 12
### REPAIRS; SERVICES; PARKING LOT CONTROL; UTILITIES

12.01.   Tenant, at Tenant's sole cost and expense, shall maintain, repair, replace and take good care of the Premises, including, without limiting the generality of the foregoing, the Improvements, all Equipment, roofs, foundations, walls and appurtenances thereto, all sidewalks, vaults, sidewalk hoists and curbs in front of or adjacent to the Premises, and all water, sewer and gas connections, pipes and mains which service the Premises and which neither City nor a utility company is obligated to repair and maintain, and shall put, keep, repair, replace and maintain the Premises in good and safe order, repair and working condition, including, without limitation, completion of the maintenance items set forth on Exhibit D attached hereto and made a part hereof, and make all repairs, maintenance and replacements within, under, above and upon the Premises, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, necessary to keep the same in good and safe order, repair and working condition and to comply with all applicable Requirements, howsoever the necessity or desirability therefor may occur, and whether or not necessitated by wear and tear, obsolescence or defects, latent or otherwise. The necessity and adequacy of repairs, maintenance, and replacements made shall be measured by standards which are appropriate for City buildings of similar age, construction and use. Tenant shall not commit or suffer, and shall use all reasonable precaution to prevent, waste, damage or injury to the Premises. When used in this Lease, the term "repairs" shall include all alterations, additions, installations, replacements, removals, renewals, restorations, painting, and parking area paving, sealing and restriping. All repairs made by Tenant shall be at least equal in quality and class to the original work and shall be made in compliance with all Requirements, as then in force.  Tenant assumes the full and sole responsibility for the condition, operation, repair, alteration, improvement, replacement, and maintenance of the Premises except as otherwise set forth in this Lease.  All costs, fees and charges related to the repairs, replacements and maintenance which Tenant is obligated to complete hereunder shall be collectively referred to in this Lease as the "Maintenance and Repair Costs".

12.02.   Notwithstanding anything contained in this Lease to the contrary, Tenant shall provide Landlord with five (5) days prior written notice of any non-structural maintenance, replacement or repair to the  Premises, as provided above, whose cost shall exceed $5,000 and Tenant shall not perform said work without the prior written consent of Landlord which consent may be withheld, conditioned or delayed in Landlord's absolute discretion. Notwithstanding anything contained herein to the contrary, Tenant shall not perform any structural repair, replacement or maintenance to the Premises, including, without limitation, any repair, replacement, or maintenance to the roof, foundation, the mechanical, electrical or plumbing systems or HVAC Systems, or the exterior walls, without the prior written consent of Landlord which consent may be withheld, conditioned or delayed in Landlord's absolute discretion.  No repairs, replacement, maintenance or work by Tenant pursuant to Section 12.01 for which Landlord's consent is required shall be commenced by Tenant until Tenant has furnished Landlord with final plans and specifications for Landlord's approval and  satisfactory insurance certificates evidencing the insurance coverage required pursuant to Section 11.04 and Article 7. Any repairs or other work performed by Tenant pursuant to Section 12.01 shall be (i) in a lien free, good and workmanlike manner by licensed and bonded contractors, (ii) in compliance with all Laws and the Permitted Encumbrances and (iii) in a manner which does not (a) weaken or impair the value of the Improvements or the Premises or (b) void any warranty applying to the Premises or the Improvements. Notwithstanding anything contained herein to the contrary, Landlord shall have the

130305777v1 2715

right, but not the obligation, to perform any repairs, maintenance or replacements to the Premises which Landlord deems necessary in Landlord's sole discretion provided that such replacements, repairs and maintenance shall be at Tenant's sole cost and Tenant shall immediately reimburse Landlord for such costs, or at Landlord's direction, pay such costs.  Notwithstanding anything contained in this Lease to the contrary, Landlord shall have the right, but not the obligation, in Landlord's sole and absolute discretion, at Tenant's sole cost and expense, to perform any of the repairs, replacements, maintenance or work which is required to be performed by Tenant pursuant to Section 12.01, including, but not limited to, any structural repair, replacement or maintenance to the Premises, including, without limitation, any repair, replacement, or maintenance to the roof, foundation, the mechanical, electrical or plumbing systems or HVAC Systems, or the exterior walls or any non-structural maintenance, replacement or repair to the Premises.  All sums paid by Landlord and all costs and expenses incurred by Landlord in connection with the performance of any such work shall be paid by Tenant to Landlord on demand as Rental.

12.03.  Landlord shall not be required to furnish any services, utilities or facilities whatsoever to the Premises, nor shall Landlord have any duty or obligation to make any alteration, change, improvement, replacement, restoration or repair to, or to demolish, the Improvements or any other improvement presently or hereafter located on the Land. Landlord shall not be responsible for providing meters or other devices for the measurement of utilities supplied to the Premises, and Tenant shall arrange for the furnishing to the Premises of such utility services as it may require, as well as for the installation of all such meters or other devices. Tenant shall be solely responsible for and shall promptly pay, as and when the same become due and payable, all charges for water, sewer, electricity, gas, telephone and any other utility used or consumed in the Premises and supplied by a public utility or public authority or any other person, firm or corporation.  Tenant shall not at any time overburden or exceed the capacity of the mains, feeders, ducts, conduits, or other facilities by which such utilities are supplied to, distributed in or serve the Premises. If Tenant desires to install any equipment which shall require additional utility facilities or utility facilities of a greater capacity, such installation shall be subject to Landlord's prior approval of Tenant's plans and specification therefore, which approval shall be in Landlord's discretion. If such installation is approved by Landlord and if Landlord provides such additional facilities to accommodate Tenant's installation, Tenant agrees to pay Landlord, on demand, the cost for providing such additional utility facilities or utility facilities of greater capacity.  Landlord shall not be liable to Tenant in damages or otherwise (a) if any utility shall become unavailable from any public utility company, public authority or any other Person supplying or distributing such utility, or (b) for any interruption in any utility services (including, without limitation, any heating, ventilation, air-conditioning or sprinkler), including, but not limited to, interruptions caused by the making of any necessary repairs or improvements, and the same shall not constitute a termination of this Lease or an eviction of Tenant.

ARTICLE 13
CHANGES, ALTERATIONS AND ADDITIONS

13.01.  Tenant shall not demolish, replace or alter the Premises or the Improvements, or any part thereof, or make any addition thereto, whether voluntarily or in connection with a repair, Restoration or Taking Restoration required by this Lease (collectively, "Capital Improvement"), unless Tenant shall comply with the following requirements:

(a)     Tenant shall have obtained the prior written consent of Landlord for such Capital Improvement, which consent may be delayed, conditioned or withheld by Landlord in Landlord's sole and absolute discretion.

130305777v1 2715

(b)    Each Capital Improvement, when completed, shall be of such a character as not to reduce the value of the Premises below its value immediately before construction of such Capital Improvement was commenced.

(c)    Each Capital Improvement shall be made by Tenant with licensed and bonded contractors and with reasonable diligence (subject to Unavoidable Delays) and in a good and workmanlike manner and in compliance with all applicable Laws, permits and authorizations and the Requirements and the Permitted Encumbrances. No Capital Improvement shall impair the safety or structural integrity of the Improvements or void any warranty held by Landlord relating to the Premises.

(d)    The cost of each Capital Improvement shall be paid in cash or its equivalent, so that the Premises and the assets of Landlord shall (subject to the provisions of Section 16.02) at all times be free of liens for work, services, labor and materials supplied or claimed to have been supplied to the Premises. No such Capital Improvement shall be commenced until Landlord, in its sole discretion, has determined that Tenant has the financial capability to cause said Capital Improvement to be completed in accordance with this Lease.

(e)    No Capital Improvement shall be undertaken until Tenant shall have delivered to Landlord insurance policies or abstracts thereof issued by responsible insurers, bearing notations evidencing the payment of premiums or accompanied by other evidence satisfactory to Landlord of such payments, for the insurance required by Section 11.04 and Article 7 hereof. If, under the provisions of any casualty, liability or other insurance policy or policies then covering the Premises, or any part thereof, any consent to such Capital Improvement is required by the insurance company or companies issuing such policy or policies, Tenant shall obtain such consents and pay any additional premiums or charges therefor that may be imposed by said insurance company or companies.

(f)    No Capital Improvement shall be undertaken until Tenant shall have procured and paid for, insofar as the same may be required from time to time, all permits and authorizations of all Governmental Authorities for such Capital Improvement. Copies of all required permits and authorizations, certified to be true copies thereof by Tenant, shall be delivered to Landlord prior to the commencement of any Capital Improvement.

(g)    Each Capital Improvement shall be deemed to have been substantially completed when Tenant shall furnish Landlord with (i) a certificate from a licensed professional engineer or registered architect certifying that such Capital Improvement has been completed substantially in accordance with the final plans therefor; (ii) a true copy, if available, of the Certificates of Occupancy for such Capital Improvement; and (iii) a complete set of as-built drawings and a survey (if applicable) of such Capital Improvement.

ARTICLE 14
REQUIREMENTS OF PUBLIC AUTHORITIES AND
OF INSURANCE UNDERWRITERS AND POLICIES

14.01.    Tenant shall promptly comply with all Laws (including, but not limited to, Environmental Laws) and all applicable present and future, laws, rules, orders, ordinances, directives, authorities regulations, statutes, requirements, codes, orders, permits and authorizations, without regard to the nature of the work required to be done, extraordinary, as well as ordinary, of all federal, state, city, county or other Governmental Authorities now existing or hereafter created, of any and all of their departments, agencies, authorities and bureaus and of any applicable fire-rating bureau or other body exercising similar functions (collectively, "Requirements") affecting the Premises or any sidewalk comprising a part or in front thereof and/or any vault in or under the same, or requiring the

28

removal of any encroachment, or affecting the maintenance, use or occupation of the Premises, whether or not the same involve or require any structural changes or additions in or to the Premises, and without regard to whether or not such changes or additions are required on account of any particular use to which the Premises or any part thereof may be put. Tenant also shall comply with any and all provisions and requirements of any document of record or casualty, liability or other insurance policy required to be carried by Tenant under the provisions of this Lease, which shall be included in the definition of "Requirements" if and when applicable.

14.02.   The Premises is subject to the Permitted Encumbrances.  Landlord shall have the right, in Landlord's sole and absolute discretion, to enter into new Permitted Encumbrances in the future and to record the same against the Premises or to amend the existing Permitted Encumbrances. Tenant shall be solely responsible for complying with all obligations imposed by the Permitted Encumbrances on any owner or occupant of the Premises, including, without limitation, all maintenance, insurance, indemnification, use and payment obligations.  Tenant shall not violate the Permitted Encumbrances nor cause Landlord to violate the Permitted Encumbrances. Tenant hereby agrees and acknowledges that this Lease is subject and subordinate to the Permitted Encumbrances and to all easements, rights, burdens and covenants which have been or will be created thereunder (whether prior to or subsequent to the Effective Date) and all documents of record, as are in effect from time to time.  Tenant agrees to accede to and comply with all requests of Landlord, or any other parcel subject to the Permitted Encumbrances, made pursuant to the Permitted Encumbrances.  Landlord shall not be liable for actions of the owner or owners of such other parcels, their customers, employees, agents, contractors, licensees or invitees.

## ARTICLE 15
## EQUIPMENT

15.01.   Tenant shall not have the right, power or authority to, and shall not, remove any Equipment from the Premises without the prior written consent of Landlord, which consent shall not be unreasonably withheld or delayed, unless such Equipment is promptly replaced by Equipment of at least equal utility and value without regard for depreciation. Tenant, however, without Landlord's consent, may remove Equipment at any time and from time to time for repairs, cleaning or other servicing, provided that Tenant shall return or reinstall same to or in the Premises with reasonable diligence.

15.02.   Tenant shall keep all Equipment in good order and repair and shall replace the same when necessary with items of at least equal utility and value as of the date such Equipment was originally installed at the Premises, and shall surrender such Equipment at the expiration of the Term.

## ARTICLE 16
## DISCHARGE OF LIENS; BONDS

16.01.   Except for any Leasehold Mortgage made in accordance with Article 10 hereof, Tenant shall not create or cause to be created any lien, encumbrance or charge upon Tenant's leasehold estate in the Premises or any part thereof or upon the income therefrom. Tenant shall not create or cause to be created any lien, encumbrance or charge upon any assets of Landlord or upon the estate, rights or interest of Landlord in the Premises or any part thereof.

16.02.   If any mechanics', laborers' or materialmen's or any other lien, charge or encumbrance at any time shall be filed against the Premises or any part thereof, or against any assets of Landlord, then Tenant, within thirty (30) days after actual notice of the filing thereof, or such shorter period as may be required by statute or by any Fee Mortgagee, shall cause the same to be discharged of record

29

by payment, deposit, bond, order of a court of competent jurisdiction or otherwise. If Tenant shall fail to cause such lien to be discharged of record within the period aforesaid, and if such lien shall continue for an additional ten (10) days after notice by Landlord to Tenant, then, in addition to any other right or remedy, Landlord may, but shall not be obligated to, discharge the same of record, or Landlord shall be entitled, if Landlord so elects, to compel the prosecution of an action for the foreclosure of such lien by the lienholder and to pay the amount of the judgment in favor of the lienholder with interest, costs and allowances. Any amount so paid by Landlord, including all costs and expenses incurred by Landlord in connection therewith, together with interest thereon at the Late Charge Rate, from the respective dates of Landlord's making of the payment or incurring of the costs and expenses, shall constitute Rental payable by Tenant under this Lease and shall be paid by Tenant to Landlord on demand.

16.03.  Nothing in this Lease contained shall be deemed or construed in any way as constituting the consent or request of Landlord, express or implied, by inference or otherwise, to any contractor, subcontractor, laborer or materialman for the performance of any labor or the furnishing of any materials for any specific improvement, alteration to or repair of the Premises or any part thereof, nor as giving Tenant any right, power or authority to contract for or permit the rendering of any services or the furnishing of materials that would give rise to the filing of any lien against the Premises or any part thereof or any assets of Landlord. Notice is hereby given, and Tenant shall cause all Construction Agreements to provide that, to the extent enforceable under applicable law, Landlord shall not be liable for any work performed or to be performed at the Premises for Tenant or any subtenant or for any materials furnished or to be furnished at the Premises for any of the foregoing, and that no mechanics' or other lien for such work or materials shall attach to or affect the estate or interest of Landlord in and to the Premises or any part thereof, or any assets of Landlord.

16.04.  Tenant shall have no power to do any act or make any contract which may create or be the foundation for any lien, charge, mortgage or other encumbrance upon the estate or assets of Landlord or of any interest of Landlord in the Premises.

### ARTICLE 17
### REPRESENTATIONS BY TENANT; AS-IS

17.01.  Tenant represents and warrants to Landlord that each of the following statements is presently true and accurate as of the Effective Date and shall be and remain true and correct from and after the Effective Date throughout the Term:

(a)  In case Tenant is a corporation, (i) this Lease has been duly authorized, executed and delivered by and on behalf of Tenant and constitutes the valid and binding agreement of Tenant in accordance with the terms hereof, (ii) Tenant's execution hereof will not violate or conflict with any other agreement, order or decree to which Tenant is a party or otherwise bound, and (iii) Tenant is validly existing, in good standing and qualified to do business in the state in which the Premises are located.

(b)  In case Tenant is a partnership or limited liability company, (i) all of the persons who are general or managing partners in said partnership or authorized members or managers in said limited liability company have executed this Lease on behalf of Tenant, or that this Lease has been executed and delivered pursuant to and in conformance with a valid and effective authorization therefor by all of the general or managing partners of such partnership or authorized members or managers in said limited liability company, as the case may be, and constitutes the valid and binding agreement of the partnership or limited liability company, as the case may be, in accordance with its terms, (ii) Tenant's execution hereof will not violate or conflict with any other agreement, order or decree to which

30

Tenant is a party or otherwise bound, and (iii) Tenant is validly existing, in good standing and qualified to do business in the state in which the Premises are located.

(c)     There are no pending, or to the knowledge of Tenant, threatened actions or proceedings before any court or administrative agency against Tenant, which question the validity of this Lease, or which are likely in any case, or in the aggregate, materially to affect adversely the consummation of the transactions contemplated hereunder or the financial condition of Tenant.

17.02.  If Tenant is a corporation and Landlord so requests, Tenant shall deliver to Landlord or its agent, concurrently with the delivery of this Lease executed by Tenant, certified resolutions of the board of directors (and shareholders, if required) authorizing Tenant's execution and delivery of this Lease and the performance of Tenant's obligations hereunder.  If Tenant is a limited liability company or partnership and Landlord so requests, Tenant shall deliver to Landlord or its agent, concurrently with the delivery of this Lease executed by Tenant, a certified consent of the managers and partners (and members, if required) authorizing Tenant's execution and delivery of this Lease and the performance of Tenant's obligations hereunder.  Also, it is agreed that in the case Tenant is a general partnership, each and every present and future partner in Tenant shall be and shall remain at all times jointly and severally liable hereunder and that the death, resignation or withdrawal of any partner shall not release the liability of such partner under the terms of this Lease unless and until Landlord has consented in writing to such release.

17.03.  Tenant acknowledges that Tenant is fully familiar with the Premises, the physical condition thereof and the Permitted Encumbrances. Tenant accepts the Premises in the existing condition and state of repair in an "AS-IS," "WHERE-IS" condition, with all faults, and no representations, statements or warranties, written or oral, express or implied, have been made by or on behalf of Landlord in respect of the Premises, the status of title thereof, the physical condition thereof, the zoning or other laws, regulations, rules and orders applicable thereto, any Impositions or the use that may be made of the Premises, that Tenant has relied on no such representations, statements or warranties, and that Landlord shall in no event whatsoever be liable for any latent or patent defects in the Premises.  Notwithstanding anything to the contrary contained in this Lease, no warranties or representations respecting the condition of the Premises have been made by Landlord to Tenant and Landlord's delivery of possession of the Premises to Tenant shall be on an "AS-IS" "WHERE-IS" basis. Tenant hereby accepts the Landlord's Work on an "AS-IS" "WHERE-IS" basis, with all faults, and no representations, statements or warranties, written or oral, express or implied, have been made by or on behalf of Landlord in respect of the Landlord's Work, the physical condition thereof, the zoning or other laws, regulations, rules and orders applicable thereto, that Tenant has relied on no such representations, statements or warranties, and that Landlord shall in no event whatsoever be liable for any latent or patent defects in the Landlord's Work.  The Landlord Plans (Exhibit E) are for informational purposes only, and is not a warranty, representation or agreement that the Premises or other areas will be as shown in the Landlord Plans. Landlord may make changes to the Premises. Landlord shall have the right to make changes, reductions and additions without restriction to the Premises in Landlord's sole discretion. Tenant hereby waives any implied warranties, including but not limited to fitness, suitability and habitability in connection with the Premises and the Landlord's Work. Landlord shall have the right at any time to redesignate, modify, alter, close, restrict, expand, reduce or change the Premises.  Tenant has independently investigated the potential for the success of its operations in the Premises.

## ARTICLE 18
## LANDLORD NOT LIABLE FOR INJURY OR DAMAGE, ETC.

18.01.    Landlord shall not in any event whatsoever be liable for any injury or damage to Tenant or to any other Person happening in, on or about the Premises and its appurtenances, nor for any injury or damage to the Premises or to any property belonging to Tenant or any other Person which may be caused by any fire or breakage or by any other cause whatsoever or by the use, misuse or abuse of the Improvements or the streets or sidewalk area within the Premises or which may arise from any other cause whatsoever, unless caused by the willful misconduct of Landlord, its officers, agents, employees or licensees.  Tenant hereby releases the Indemnified Parties (as defined herein) from all liability (including, but not limited to, attorneys' fees and court costs) arising from or as a result of:

(a)    any occurrence in, on, upon, or under the Premises,

(b)    Tenant's or Tenant's Agents use of the Premises, or from the conduct of Tenant's business, or from any activity, work, or other things done, permitted or suffered by the Tenant in or about the Premises;

(c)    any Event of Default, Default or any breach or default in the performance of any obligation on Tenant's part to be performed under the terms of this Lease or a breach of any representation or warranty made by Tenant hereunder;

(d)    any act or negligence of Tenant or Tenant's Agents;

(e)    damages to person or property sustained by Tenant or by any occupant of the Premises (including customers, guests and invitees), or by any other person, resulting directly or indirectly from any cause whatsoever (except for the intentional acts of Landlord) including, without limitation, fire or other casualty, any existing or future condition, defect, matter or thing in or about the Premises or any part of it, or from any equipment or appurtenance therein, or from any accident in or about the Premises, or from any act or neglect of any other Person, including, without limitation, Landlord, Landlord's agents, invitees, licensees, employees, contractors, subcontractors, and servants, at any time including periods of construction or otherwise. This Section shall apply especially, but not exclusively, to any damage or liability arising from Tenant's use or occupancy of the Premises, any Tenant Default or Event of Default hereunder, and any damage caused by water, snow, frost, steam, excessive heat or cold, sewerage, gas, odors or noise, or the bursting or leaking of pipes or plumbing fixtures, broken glass, sprinkling or air conditioning devices or equipment, or flooding of basements, and shall apply without distinction as to the person whose act or neglect was responsible for the damage and whether the damage was due to any of the acts specifically enumerated above, or from any other thing or circumstance, whether of a like nature or of a wholly different nature, the parties agreeing to look to insurance for coverage over said damages and losses.

18.02.  Tenant, as a material part of the consideration to Landlord, hereby assumes all risk of damage to property or injury to persons in, upon or about the Premises, from any cause other than Landlord's intentional acts, and Tenant hereby waives all other claims in respect thereof against Landlord.  Tenant shall give prompt notice to Landlord in case of casualty or accidents in or about the Premises.

18.03.  Landlord shall not be liable to Tenant or to any other Person for any failure of water supply, gas, telephone or electric current, nor for any injury or damage to any property of Tenant or of

32

130305777v1 2715

any other Person or to the Premises caused by or resulting from gasoline, oil, steam, gas or electricity or hurricane, tornado, flood, wind or similar storms or disturbances, or water, rain, sleet, ice or snow which may leak or flow from the street, sewer, gas mains or subsurface area or from any part of the Premises, or leakage of gasoline or oil from pipes, storage tanks, appliances, sewers or plumbing works therein, or from any other place or from any other cause, nor for interference with light or other incorporeal hereditaments by anybody, or caused by any public or quasi-public work, unless any of the foregoing results from the willful misconduct of Landlord, its officers, agents, employees or licensees.

ARTICLE 19
INDEMNIFICATION OF LANDLORD

19.01.   Tenant shall not do or permit any act or thing to be done upon the Premises which may subject Landlord to any liability or responsibility for injury, damage to Persons or property, or to any liability by reason of any violation of law or of any Requirement, and shall exercise such control over the Premises so as to fully protect Landlord against any such liability. Tenant shall indemnify, protect, defend, save, and hold Landlord and any manager, member, agent, beneficiary, contractor, director, employee, lessor, mortgagee, officer, parent, partner, shareholder and trustee of Landlord (all of the foregoing, including, but not limited to, Landlord, shall each be an "Indemnified Party" and collectively the "Indemnified Parties") harmless from and against any and all liabilities, suits, losses, causes of action, demands, obligations, fines, damages, penalties, claims, costs, charges and expenses, including, without limitation, engineers', architects' and attorneys' fees, court costs and disbursements, which may be imposed upon or incurred by or asserted against any Indemnified Party by reason of any of the following occurring:

(a)    any work or construction involving the Improvements or the Premises or any other work or thing done in, on or about the Premises or any part thereof;

(b)    any use, nonuse, possession, occupation, alteration, repair, condition, operation, maintenance or management of the Premises or any part thereof or of any sidewalk, curb or vault adjacent thereto;

(c)    any occurrence in or about the Premises;

(d)    any breach of any representation or warranty or any failure on the part of Tenant to perform or comply with any covenants, agreements, terms or conditions contained in this Lease;

(e)    any act or failure to act on the part of Tenant or any of its agents, beneficiaries, contractors, directors, lessees, subtenants, guests, partners, trustees, officers, managers, members, invitees, employees or licensees (collectively, "Tenant's Agents");

(f)    any accident, injury (including death at any time resulting therefrom) or damage to any Person or property occurring in, on or about the Premises or any part thereof or in, on or about any sidewalk, curb or vault adjacent thereto;

(g)    any lien or claim which may be alleged to have arisen against or on the Premises, or any lien or claim which may be alleged to have arisen out of this Lease and created or permitted to be created by Tenant against any assets of Landlord under the laws of the State of Illinois or of any other Governmental Authority, or any liability which may be asserted against Landlord with respect thereto; and

33

130305777v1 2715

(h)    any failure on the part of Tenant to keep, observe and perform any of the terms, covenants, agreements, provisions, conditions or limitations contained in the Construction Agreements, or other contracts and agreements affecting the Premises on Tenant's part to be kept, observed or performed.

19.02.    The obligations of Tenant under this Article 19 shall not be affected in any way by the absence in any case of covering insurance or by the failure or refusal of any insurance carrier to perform any obligation on its part under insurance policies affecting the Premises or any part thereof.

19.03.    If any claim, action or proceeding is made or brought against any Indemnified Party against which it is indemnified pursuant to Section 19.01 hereof, then, upon demand by Landlord, Tenant shall resist or defend such claim, action or proceedings in Landlord's name, if necessary, by the attorneys for Tenant's insurance carrier (if such claim, action or proceeding is covered by insurance), otherwise by such attorneys as Landlord shall approve, which approval shall not be unreasonably withheld or delayed. The foregoing notwithstanding, Landlord may engage its own attorneys to defend it or to assist in its defense, and Tenant shall pay the reasonable fees and disbursements of such attorneys.

19.04.    The provisions of this Article 19 shall survive the Expiration Date with respect to any liability, suit, obligation, fine, damage, penalty, claim, cost, charge or expense arising out of or in connection with any matter which is the subject of indemnification under this Article 19.  Tenant's indemnity obligations hereunder shall be limited to the extent required by applicable law.

## ARTICLE 20
## RIGHT OF INSPECTION

20.01.    Tenant shall permit Landlord and Landlord's agents or representatives to enter the Premises at all reasonable times for the purpose of (a) inspecting the Premises; (b) performing Landlord's obligations or enforcing Landlord's rights hereunder; (c) determining whether or not Tenant is in compliance with its obligations hereunder; and (d) in the case of an emergency (i.e., a condition presenting imminent danger to the health or safety of Persons or to property), or following an Event of Default, making any necessary repairs to the Premises and performing any work therein, provided that in the case of an emergency Landlord shall make a reasonable attempt to communicate with Tenant to alert Tenant to the necessary repair.

20.02.    Nothing in this Article 20 or elsewhere in this Lease shall imply any duty upon the part of Landlord to do any work, and performance of any work by Landlord shall not constitute a waiver of Tenant's Default (or Event of Default) in failing to perform the same. Landlord, during the progress of any such work, may keep and store at the Premises, all necessary materials, tools, supplies and equipment. Landlord shall not be liable for inconvenience, annoyance, disturbance, loss of business or other damage of Tenant or any subtenant by reason of making such repairs or the performance of any such work or on account of bringing materials, tools, supplies and equipment into the Premises during the course thereof and the obligations of Tenant under this Lease shall not be affected thereby. To the extent that Landlord undertakes such work or repairs, Landlord shall have absolutely no liability in connection with such work, including, but not limited to, any interference with Tenant's use or possession of the Premises caused by such work.

## ARTICLE 21
## LANDLORD'S RIGHT TO PERFORM TENANT'S COVENANTS

21.01.    If Tenant at any time shall fail to pay any Imposition in accordance with the provisions hereof, or to take out, pay any insurance premiums for, maintain or deliver any of the

130305777v1 2715

insurance policies in the manner provided for herein, or shall fail to pay any Rental, Impositions, or any other sums payable by Tenant hereunder as and when due, or perform any other act on its part required to be made or performed hereunder, then at any time after furnishing five (5) days prior notice to Tenant of any Event of Default, Landlord, without waiving or releasing Tenant from any obligation of Tenant contained in this Lease or waiving or releasing any rights of Landlord hereunder, at law or in equity, may (but shall be under no obligation to) pay any Imposition, insurance premium, item of Rental or any other sums, costs, expenses, charges, payments or deposits payable by Tenant hereunder, or perform any other act on Tenant's part required to be made or performed as provided in this Lease, and may enter upon the Premises for such purpose and take all such action thereon as may be necessary therefor.

21.02. All sums paid by Landlord and all costs and expenses incurred by Landlord in connection with the performance of any such obligation, together with interest thereon at the Late Charge Rate from the respective dates of Landlord's making of each such payment or incurring of each such sum, cost, liability, expense, charge, payment or deposit until the date of actual repayment to Landlord, shall be paid by Tenant to Landlord on demand as Rental. Any payment or performance by Landlord pursuant to the foregoing provisions of this Article 21 shall not be nor be deemed to be a waiver or release of breach or default of Tenant with respect thereto or of the right of Landlord to terminate this Lease, institute summary proceedings and/or take such other action as may be permissible hereunder, at law or in equity if an Event of Default by Tenant shall have occurred. Landlord shall not be limited in the proof of any damages which Landlord may claim against Tenant arising out of or by reason of Tenant's failure to provide and keep insurance in force as aforesaid to the amount of the insurance premium or premiums not paid, but Landlord also shall be entitled to recover, as damages for such breach, the uninsured amount of any loss and damage and the costs and expenses of suit, including, without limitation, reasonable attorneys' fees and disbursements, suffered or incurred by reason of damage to or destruction of the Premises or any part thereof, which damage or destruction was required to be insured against hereunder.

ARTICLE 22
NO ABATEMENT OF RENTAL

Notwithstanding anything contained in this Lease to the contrary, there shall be no abatement, setoff, diminution or reduction of Rental, the Impositions, or any other sums payable by Tenant hereunder, or of the other obligations of Tenant hereunder under any circumstances. The parties intend that the obligations of Tenant hereunder shall be separate and independent covenants and agreements and shall continue unaffected unless such obligations shall have been modified or terminated pursuant to an express provision of this Lease.

ARTICLE 23
PERMITTED USE: NO UNLAWFUL OCCUPANCY;
OPERATION OF THE PREMISES

23.01. Tenant shall only use the Premises as a restaurant operated under the name "Meatheads", for preparation and sale (with eat-in and take-out service) of hamburgers, french fries, milkshakes and ice cream, custom juice drinks (commonly known as "smoothies"), salads, beverages (but not beer, wine, liquor or other alcoholic beverages), brewed coffee, breakfast sandwiches and other breakfast items and the ancillary sale of branded t-shirts, hats, mugs and other accessories which are solely branded as "Meatheads", and for no other use whatsoever (the "Permitted Use") provided that the foregoing Permitted Use shall in no event violate the Permitted Encumbrances, any Laws or the Requirements. Notwithstanding anything contained in this Lease to the contrary, Tenant shall not do or permit anything to be done in or about the Premises which will (a) increase the existing rate of,

35

130305777v1 2715

or affect, any fire or other insurance policy for the Premises or any of its contents, or cause a cancellation of any insurance policy covering the Premises, or any part thereof, or any of its contents, (b) obstruct or interfere with the rights of other tenants or occupants of parcels adjacent to the Premises, or parcels affected by the Permitted Encumbrances, or injure or annoy them, (c) allow the Premises to be used for any improper, immoral, unlawful or objectionable purpose, (d) cause, maintain or permit any nuisance in, on or about the Premises, (e) violate, or cause Landlord to violate, a then existing or future exclusive, restricted, or prohibited use of any other tenant, or the rights of any other tenant, of the parcels adjacent to the Premises, or parcels affected by the Permitted Encumbrances, (f) constitute waste in or upon the Premises, (g) violate, or cause Landlord to violate, any terms or provisions of this Lease, the Permitted Encumbrances, the Laws or the Requirements; or (h) compete with or be inconsistent with the current or future uses within the parcels adjacent to the Premises or parcels affected by the Permitted Encumbrances, or violate any then existing or future use or be inconsistent with the operation of any other tenants or prospective tenants or occupants of the parcels adjacent to the Premises, or parcels affected by the Permitted Encumbrances. Without limiting the generality of the foregoing, it is specifically acknowledged and agreed by Tenant that the following uses by Tenant shall be prohibited at the Premises: (i) drug store; (ii) prescription pharmacy; (iii) sale of alcoholic beverages or liquor in any form (packaged or otherwise), including without limitation, beer, wine or ale; (iv) grocery store; (v) supermarket; (vi) supercenter; (vii) combination food and general merchandise store; (viii) discount retail facility; (ix) department store; (x) warehouse club; (xi) wholesale club; (xii) gas station; (xiii) used car lot; (xiv) bar; (xv) tavern or an amusement or recreation establishment, including without limitation, a pool hall, bowling alley, massage parlor, game center, theater, play house, night club or movie theater; (xvi) adult book store or establishment featuring a male or female revue; (xvii) a use that is inconsistent with the operation of a first-class retail shopping center; (xviii) the installation and operation of an Automated Teller Machine; or (xix) any combination of, or parking to support, any or all of the uses listed in subparagraphs (i) through (xviii) above.

23.02.    Intentionally omitted.

23.03.    Tenant shall not use or occupy the Premises or any part thereof, or permit or suffer the Premises or any part thereof to be used or occupied for any unlawful business, use or purpose or in such manner as to constitute in law or in equity a nuisance of any kind (public or private), or for any use which might adversely affect the reputation of Landlord or for any dangerous or noxious trade or business or for any purpose or in any way in violation of the Certificates of Occupancy for the Premises in effect from time to time during the Term or of any Requirement, or which may make void or voidable any insurance then in force on the Premises. Tenant shall take, immediately upon the discovery of any such prohibited use, all necessary steps, legal, equitable and otherwise, to compel the discontinuance of such use, and Tenant shall exercise all of its rights and remedies against any subtenants guilty of such use.

23.04.    Tenant shall not suffer or permit the Premises or any portion thereof to be used by the public without restriction or in such manner as might reasonably tend to impair title to the Premises or any portion thereof, or in such manner as might reasonably make possible a claim or claims of adverse usage or adverse possession by the public, as such, or of implied dedication of the Premises or any portion thereof. Tenant shall comply and shall cause all occupants of the Premises to comply with all recorded use restrictions applicable to the Premises.

ARTICLE 24
EVENTS OF DEFAULT AND REMEDIES

24.01.    Each of the following events shall be an "Event of Default" hereunder:

130305777v1 2715

(a)    if Tenant shall fail to pay any installment of Base Rent on or before the date such Base Rent is due hereunder; provided that no Event of Default shall be deemed to have occurred hereunder for the first time during any twelve (12) consecutive month period that Tenant shall fail to pay Base Rent when due hereunder unless Tenant shall fail to pay said delinquent Base Rent within five (5) days after delivery of written notice to Tenant from Landlord of such delinquency in which event an Event of Default shall be deemed to have occurred;

(b)    if Tenant shall fail to make any other payment of Rental (other than Base Rent which is governed by Section 24.01(a)), the Impositions, or any other sums, monies or amounts payable by Tenant hereunder, on or before the date such Rental, Imposition, or other sum, money or amount is due hereunder;

(c)    if Tenant shall fail to observe or perform one or more of the other terms, conditions, covenants or agreements of this Lease and such failure shall not be cured by Tenant: (i) promptly in the event of a dangerous condition or release of a hazardous substance or environmental contamination; or (ii) within thirty (30) days after notice thereof by Landlord to Tenant specifying such failure;

(d)    to the extent permitted by Law, if Tenant shall admit, in writing, that it is unable to pay its debts as such debts become due;

(e)    if Tenant makes a general assignment for the benefit of creditors, or provides for an arrangement, composition, extension or adjustment with its creditors;

(f)    if Tenant files a voluntary petition for relief or if a petition against Tenant in a proceeding under the federal bankruptcy laws or other insolvency laws is filed and not withdrawn or dismissed within forty-five (45) days thereafter, or if under the provisions of any law providing for reorganization or winding up of corporations, limited liability companies or partnerships, any court of competent jurisdiction assumes jurisdiction, custody or control of Tenant or any substantial part of Tenant's property and such jurisdiction, custody or control remains in force unrelinquished, unstayed or unterminated for a period of forty-five (45) days;

(g)    if in any proceeding or action which Tenant is a party, a trustee, or receiver, agent or custodian is appointed to take charge of the Premises or Tenant's property (or has the authority to do so) for the purpose of enforcing a lien against the Premises or Tenant's property;

(h)    if a levy under execution or attachment shall be made against Tenant or its interest in the Premises or any part thereof and such execution or attachment shall not be vacated or removed by court order, bonding or otherwise within a period of sixty (60) days;

(i)    if Tenant is a limited liability company ("LLC"), partnership or consists of more than one (1) person or entity, and if any general partner, member or manager of the partnership or LLC, as the case may be, or other person or entity is involved in any of the acts or events described in subparagraphs (d) through (h) above with respect to the Tenant or with respect to themselves; or if there is a dissolution of the partnership or LLC

(j)    whether or not Rent is being paid, if Tenant shall abandon the Premises or any substantial portion thereof;

(k)    if this Lease or the estate or interest of Tenant hereunder or any portion thereof (whether by operation of law or otherwise) shall be assigned, subleased, transferred, mortgaged or encumbered without compliance with the provisions of this Lease applicable thereto;

37

(l)      if Tenant shall fail to open for business and continuously operate as required under this Lease; or

(m)      if Tenant fails to observe or perform any of the covenants contained in Section 27.02, Section 38.01, Section 30.01, Article 7, Article 10, Article 16, or Article 28 hereof.

24.02.   If an Event of Default occurs, Landlord shall have the rights and remedies hereinafter set forth, each of which shall be distinct, separate and cumulative with and in addition to any other right or remedy allowed under any Laws (including, without limitation, specific performance) or other provisions of this Lease, any and all of which may be exercised with or without further notice and with or without demand whatsoever, concurrently or successively, and at such time or times and in such order as Landlord may from time to time determine:

(a)      Terminate this Lease by giving Tenant written notice thereof, in which event Tenant shall pay to Landlord the sum of (i) all Rental, the Impositions, and all other amounts and sums payable by Tenant under this Lease, which have accrued hereunder through the date of termination, (ii) all amounts due under Section 24.04 hereof, and (iii) an amount equal to (1) the total Rental, Impositions, and all other sums payable by Tenant under the Lease, that Tenant would have been required to pay for the remainder of the Term discounted to present value at a per annum rate equal to the Prime Rate on the date this Lease is terminated minus one percent, minus (2) the then present fair rental value of the Premises for such period, similarly discounted.  For purposes of computing the amount of Rental herein (other than Base Rent which shall be as set forth in Exhibit C to the Lease) that would have accrued after the time of award, Additional Rent, the Impositions and all other sums payable by Tenant under the Lease shall be projected based upon the average rate of increase, if any, in such items from the Commencement Date through the time of award.

(b)      Terminate Tenant's right to possess the Premises without terminating this Lease by giving written notice thereof to Tenant, in which event Tenant shall pay to Landlord (i) all Rental, the Impositions, and all other amounts and sums payable by Tenant under this Lease, which have accrued hereunder through the date of termination of possession, (ii) all amounts due from time to time under Section 24.04 hereof, and (iii) all Rental, Impositions, and other sums required hereunder to be paid by Tenant during the remainder of the Term, diminished by any sums thereafter received by Landlord through reletting the Premises during such period, after deducting all costs incurred by Landlord in reletting the Premises.  If Landlord elects to proceed under this Section 24.02(b), Landlord may remove all of Tenant's property from the Premises and store the same in a public warehouse or elsewhere at the cost of, and for the account of, Tenant, without becoming liable for any loss or damage which may be occasioned thereby.  Landlord shall use reasonable efforts to relet the Premises on such terms as Landlord in its sole discretion may determine (including a term different from the Term, rental concessions, and alterations to, and improvement of, the Premises); however, Landlord shall not be obligated to accept any prospective tenant proposed by Tenant unless such proposed tenant meets all of Landlord's leasing criteria.  Landlord shall not be liable for, nor shall Tenant's obligations hereunder be diminished because of, Landlord's failure to relet the Premises or to collect rent due for such reletting.  Tenant shall not be entitled to the excess of any consideration obtained by reletting over the Rental due hereunder.  Reentry by Landlord in the Premises shall not affect Tenant's obligations hereunder for the unexpired Term; rather, Landlord may, from time to time, bring an action against Tenant to collect amounts due by Tenant, without the necessity of Landlord's waiting until the expiration of the Term.  Unless Landlord delivers written notice to Tenant expressly stating that it has elected to terminate this Lease, all actions taken by Landlord to dispossess or exclude Tenant from the Premises shall be deemed to be taken under this Section 24.02(b).  If Landlord elects to proceed under this Section 24.02(b), it may at any time elect to terminate this Lease under Section 24.02(a).

130305777v1 2715

24.03.   If Landlord terminates this Lease or Tenant's right to possession of all or any part of the Premises, Landlord shall use reasonable efforts to mitigate Landlord's damages to the extent required by any applicable Laws.

24.04.   Upon any Event of Default, Tenant shall pay to Landlord all costs incurred by Landlord (including court costs and reasonable attorneys' fees and expenses) in (a) obtaining possession of the Premises, (b) removing and storing Tenant's or any other occupant's property, (c) repairing, restoring, or otherwise putting the Premises into a vanilla box condition suitable for lease, (d) if Tenant is dispossessed of the Premises and this Lease is not terminated, reletting all or any part of the Premises (including brokerage commissions and other costs incidental to such reletting), (e) performing Tenant's obligations which Tenant failed to perform, and (f) enforcing or advising Landlord of its rights, remedies, and recourses arising out of the Event of Default.

24.05.   No act or omission by Landlord shall be construed as an election by Landlord to terminate this Lease or Tenant's right to possession, or accept a surrender of the Premises, nor shall the same operate to release Tenant in whole or in part from any of Tenant's obligations hereunder, unless express written notice of such intention is sent by Landlord or its agent to Tenant.   Tenant hereby irrevocably waives any right otherwise available under any Laws to redeem or reinstate this Lease.

24.06.   In the event that, at any time during the Term, Tenant shall be in default under another lease (the "Other Lease") with Landlord, Landlord may, at Landlord's option, deem such default under the Other Lease as an Event of Default by Tenant under this Lease (and there shall exist an Event of Default under this Lease) and Landlord may exercise all rights and remedies pursuant to this Lease and at law or in equity which Landlord may have upon a default by Tenant under this Lease.   Without limiting the foregoing, Landlord shall be permitted to add to any amount owing by Tenant to Landlord hereunder to all amounts owing by the tenant to the Landlord the Other Lease.

24.07.   The following occurrence, condition or act by Landlord shall constitute an "Landlord Event of Default" by Landlord under this Lease:   Landlord's failure to perform any obligation of Landlord hereunder within one hundred twenty (120) days after receipt of written notice from Tenant to Landlord specifying such default and demanding that the same be cured; provided that, if such default cannot with due diligence be wholly cured within such one hundred twenty (120) day period, Landlord shall have such longer period as may be reasonably necessary to cure the default, so long as Landlord proceeds promptly to commence the cure of same within such one hundred twenty (120) day period and diligently prosecutes the cure to completion.   Upon the occurrence of a Landlord Event of Default by Landlord, Tenant's sole and exclusive remedy shall be to institute an action for Tenant's actual damages which directly result from the Landlord Event of Default.   In no event shall Tenant have any abatement or setoff rights with respect to Rental, any other amounts due Landlord under the Lease, the Impositions, or any other sums or amounts  payable by Tenant hereunder, nor shall Tenant have any rights of self-help or rights to terminate this Lease via claims of constructive eviction or otherwise.   In no event shall Landlord be liable to Tenant for punitive, exemplary or consequential damages, including, without limitation, lost profits, regardless of the nature of the breach by Landlord of its obligations under this Lease, and Tenant waives all claims for punitive, exemplary or consequential damages.

24.08.   Tenant hereby grants to Landlord a lien upon the interest of Tenant under this Lease and all personal property of Tenant located at the Premises to secure the payment of the Rental, the Impositions, and other sums payable by Tenant under this Lease.

130305777v1 2715

## ARTICLE 25
## NOTICES

25.01.   Whenever it is provided in this Lease that a notice, demand, request, consent, approval or other communication (each of which is herein referred to as a "Notice") shall or may be given to or served upon either of the parties by the other, and whenever either of the parties shall desire to give or serve upon the other any Notice with respect hereto or the Premises, each such Notice shall be in writing and, any law or statute to the contrary notwithstanding, shall not be effective for any purpose unless given or served as follows:

(a)     if given by Landlord, by a nationally recognized overnight courier service, personal delivery or by mailing the same to Tenant by certified or registered mail, postage prepaid, return receipt requested, addressed to Tenant at Meatheads Champaign, LLC, c/o Meathead Management LLC, 30 W. Monroe St., Suite 1000, Chicago, Illinois 60603 Attn: Thomas Jednorowicz with a copy to _____ and/or to such other address(es) and attorneys as Tenant may from time to time designate by Notice given to Landlord in the manner set forth below, except that at no time shall Landlord be required to give, in the aggregate, more than four Notices or copies thereof (not including the notice set forth in Section 25.03); and

(b)     if given by Tenant, by a nationally recognized overnight courier service, personal delivery or by mailing the same to Landlord by certified or registered mail, postage prepaid, return receipt requested, addressed to Landlord at Champaign Neil LLC, c/o Tartan Realty Group Inc., 30 W. Monroe St., Suite 1000, Chicago, Illinois 60603 Attn: Doug Reichl with a copy to Nicholas S. Legatos, Hinshaw & Culbertson LLP, 222 N. LaSalle St., Suite 300, Chicago, Illinois, 60601 (Landlord's attorney) and/or to such other address(es) and attorneys as Landlord may from time to time designate by Notice given to Tenant in the manner set forth above except that at no time shall Tenant be required to give, in the aggregate, more than four Notices or copies thereof (not including the notice set forth in Section 25.03).

25.02.   Every Notice shall be deemed to have been given or served upon receipt or refusal of receipt if delivered personally, if delivered by a nationally recognized overnight courier service, one (1) Business Day after deposit with same, or if mailed, on the third Business Day after the same shall have been deposited in the United States mails in the manner aforesaid.

25.03.   If requested in writing by the holder of any Fee Mortgage (which request shall be made in the manner provided in Section 25.01 and shall specify an address to which Notices shall be given), any Notice to a party shall also be given contemporaneously to such holder in the manner herein specified.

## ARTICLE 26
## STREET WIDENING

If at any time during the Term any proceedings are instituted or orders made by any Governmental Authority for the widening or other enlargement of any street contiguous to the Premises requiring removal of any projection or encroachment on, under or above any such street, or any changes or alterations upon the Premises or any part thereof, or the curbs and sidewalks adjacent thereto, Tenant promptly shall comply with such requirements, and, on Tenant's failure to do so, Landlord may comply with the same, and the amount expended therefor, and any interest, fines, penalties, reasonable engineers', architects' and attorneys' fees or other expenses incurred by Landlord in effecting such compliance or by reason of the failure of Tenant so to comply, shall be deemed to be Rental and shall be payable by Tenant on demand. In no event shall Tenant permit Landlord to become liable for any criminal and/or civil liability or penalty as a result of Tenant's failure to comply with reasonable diligence, subject to

130305777v1 2715

Unavoidable Delays, with any of the foregoing orders. Any taking (as such term is used in Article 9 hereof) by a Governmental Authority for a street widening or enlargement shall be deemed a partial condemnation and be subject to the provisions of Article 9 hereof.

## ARTICLE 27
## SUBORDINATION; ATTORNMENT

27.01. Landlord's interest in this Lease, as the same may be modified, amended or renewed, shall not be subject or subordinate to (a) any Leasehold Mortgage now or hereafter placed upon Tenant's interest in this Lease, or (b) any other liens or encumbrances hereafter affecting Tenant's interest in this Lease.

27.02. This Lease shall be subject and subordinate to each and every Fee Mortgage which may now or hereafter affect the Premises, or any portion thereof, and to all renewals, extensions, supplements, amendments, modifications, consolidations and replacements thereof or thereto, substitutions therefor, and advances made thereunder. In confirmation of such subordination, Tenant shall execute and deliver within ten (10) days of delivery of the same to Tenant, any certificate that Landlord may from time to time request ("Subordination Agreement") provided that the subordination of this Lease to any existing or future Fee Mortgage shall be self operative and no instrument shall be required or needed. Tenant shall not do or omit to do anything that Tenant is obligated to do under the terms of this Lease so as to cause Landlord to be in default under any Fee Mortgage. Landlord shall have absolutely no obligation to obtain any so called non-disturbance agreement from the Fee Mortgagee. Such Subordination Agreement shall, at the option of the Landlord or the Fee Mortgagee, also include any of the matters or terms set forth in this Article 27.

27.03. If any Fee Mortgagee, or any of its successors or assigns, or any other person claiming by or through any such Fee Mortgagee or by or through any foreclosure proceeding of any such Fee Mortgage, shall succeed to the rights of Landlord under this Lease, Tenant shall attorn to and recognize such successor as Tenant's landlord under this Lease, and Tenant shall promptly execute and deliver at any time any instrument that may be necessary to evidence such attornment. Upon such attornment, this Lease shall continue in full force and effect as a direct lease between Tenant and such successor Landlord, upon and subject to all of the then executory terms, covenants and conditions of this Lease. The provisions of this Section shall be self-operative, and no instrument of any such attornment shall be required or needed by the holders of any such Fee Mortgage. In confirmation of any such attornment Tenant shall, at Landlord's request or at the request of any such Fee Mortgagee, promptly execute and deliver such further instruments as may be reasonably required by any such Fee Mortgagee.

27.04. Neither the Fee Mortgagee, nor anyone claiming by, through or under such Fee Mortgagee (including, but not limited to, in the event any Fee Mortgagee, or any of its successors or assigns, or any other person claiming by or through any such Fee Mortgagee or by or through any foreclosure proceeding of any such Fee Mortgage, shall succeed to the rights of Landlord under this Lease), shall be:

(a)     liable for any act or omission of any prior Landlord (including, without limitation, the then defaulting Landlord);

(b)     subject to any defenses or offsets that Tenant may have against any prior Landlord (including, without limitation, the then defaulting Landlord);

41

(c)      bound by any payment of Rental which Tenant might have paid for more than the current month to any prior Landlord (including, without limitation, the then defaulting Landlord);

(d)      bound by any covenant to make any payment to Tenant which was required to be made prior to the time such Fee Mortgagee succeeded to any prior Landlord's interest;

(e)      bound by any obligation to perform any work or to make improvements to the Premises or any portion thereof; or

(f)      accountable for any moneys deposited with any prior Landlord, except to the extent such moneys are actually received by such Fee Mortgagee.

27.05.    Tenant promptly shall join in any Subordination Agreement to indicate its concurrence with the provisions thereof and its agreement, in the event of a foreclosure by a Fee Mortgage, to attorn to such Fee Mortgagee as Tenant's landlord hereunder. Tenant promptly shall accept, execute and deliver any Subordination Agreement proposed by any such Fee Mortgagee within ten (10) days of delivery of the same to Tenant.

27.06.    Tenant hereby agrees to give to any Fee Mortgagee copies of all notices of default by Landlord under this Lease at the same time and in the same manner as and whenever Tenant shall give any such notice of default to Landlord, and no such notice of default shall be deemed given to Landlord hereunder unless and until a copy of such notice shall have been so delivered to such Fee Mortgagee. Such Fee Mortgagee shall have the right to remedy any default of Landlord under this Lease, or to cause any default of Landlord under this Lease to be remedied, and, for such purpose, Tenant hereby grants such Fee Mortgagee such additional period of time as may be reasonable to enable such Fee Mortgagee to remedy, or cause to be remedied, any such default in addition to the period given to Landlord for remedying, or causing to be remedied, any such default. Tenant shall accept performance by such Fee Mortgagee of any term, covenant, condition or agreement to be performed by Landlord under this Lease with the same force and effect as though performed by Landlord. No default under this Lease shall exist or shall be deemed to exist (i) as long as such Fee Mortgagee, in good faith, shall have commenced to cure such default and shall be prosecuting the same to completion with reasonable diligence, subject to Unavoidable Delays, or (ii) if possession of the Premises is required in order to cure such default, or if such default is not susceptible of being cured by such Fee Mortgagee, as long as such Fee Mortgagee, in good faith, shall have notified Tenant that such Fee Mortgagee intends to institute proceedings under the Fee Mortgage to acquire possession of the Premises, and, thereafter, as long as such proceedings shall have been instituted and shall be prosecuted with reasonable diligence. In the event of the termination of this Lease by reason of Landlord's default hereunder, upon such Fee Mortgagee's written request, given within thirty (30) days after any such termination, Tenant, within fifteen (15) days after receipt of such request, shall execute and deliver to such Fee Mortgagee or its designee or nominee a new lease of the Premises for the remainder of the Term of the Lease upon all of the terms, covenants and conditions of this Lease. Neither such Fee Mortgagee nor its designee or nominee shall become liable under this Lease unless and until such Fee Mortgagee or its designee or nominee becomes, and then only for so long as such Fee Mortgagee or its designee or nominee remains, the fee owner of the Premises. Such Fee Mortgagee shall have the right, without Tenant's consent, to foreclose the Fee Mortgage or to accept a deed in lieu of foreclosure of such Fee Mortgage.

27.07.    If the estate of Landlord and the estate of Tenant in the Premises shall ever be held by the same person, the estate created by and pursuant to this Lease shall not be merged with any superior estate or other interest in the Premises.

130305777v1 2715

ARTICLE 28
HAZARDOUS SUBSTANCES

28.01.  (a) "Claim" shall mean and include any demand, cause of action, proceeding or suit for any one or more of the following: (i) damages (actual or punitive), losses, injuries to person or property, damages to natural resources, fines, penalties, expenses, liabilities, interest, contribution or settlement (including, without limitation, attorneys' fees, court costs and disbursements), (ii) the costs and expenses of site investigations, feasibility studies, information requests, health or risk assessments, or Response actions, and (iii) the costs and expenses for enforcing insurance, contribution, or indemnification agreements.

(b)     "Environmental Law" shall mean and include all federal, state and local statutes, ordinances, regulations and rules in effect and as amended from time to time relating to environmental quality, health, safety, contamination and clean-up, including, without limitation, the Clean Air Act, 42 U.S.C. Section 7401 et seq.; the Clean Water Act, 33 U.S.C. Section 1251 et seq., and the Water Quality Act of 1987; the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. Section 136 et seq.; the Marine Protection, Research, and Sanctuaries Act, 33 U.S.C. Section 1401 et seq.; the National Environmental Policy Act, 42 U.S.C. Section 4321 et seq.; the Noise Control Act, 42 U.S.C. Section 4901 et seq.; the Occupational Safety and Health Act, 29 U.S.C. Section 651 et seq.; the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. Section 6901 et seq., as amended by the Hazardous and Solid Waste Amendments of 1984; the Safe Drinking Water Act, 42 U.S.C. Section 300f et seq.; the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. Section 9601 et seq., as amended by the Superfund Amendments and Reauthorization Act, the Emergency Planning and Community Right-to-Know Act, and Radon Gas and Indoor Air Quality Research Act; the Toxic Substances Control Act ("TSCA"), 15 U.S.C. Section 2601 et seq.; the Atomic Energy Act, 42 U.S.C. Section 2011 et seq., and the Nuclear Waste Policy Act of 1982, 42 U.S.C. Section 10101 et seq.; and the Environmental Protection Act of Illinois ("IEPA"), Ill. Rev. Stat. ch. 111, para. 1001 et seq., and state and local superlien and environmental clean-up statutes and ordinances, with implementing regulations, rules and guidelines, as any of the foregoing may be amended from time to time. Environmental Laws shall also include all state, regional, county, municipal and other local laws, regulations and ordinances insofar as they are equivalent or similar to the federal laws recited above or purport to regulate Hazardous Materials.

(c)     "Hazardous Materials" shall mean and include the following, including mixtures thereof: any hazardous substance, pollutant, contaminant, waste, by-product, or constituent regulated under CERCLA; oil and petroleum products and natural gas, natural gas liquids, liquefied natural gas and synthetic gas usable for fuel; pesticides regulated under the FIFRA; asbestos and asbestos-containing materials, PCBs and other substances regulated under the TSCA; source material, special nuclear material, by-product material and any other radioactive materials or radioactive wastes, however produced, regulated under the Atomic Energy Act or the Nuclear Waste Policy Act; chemicals subject to the OSHA Hazard Communication Standard, 29 C.F.R. § 1910.1200 et seq.; and industrial process and pollution control wastes whether or not hazardous within the meaning of RCRA and any other hazardous substance, pollutant or contaminant regulated under any other Environmental Law.

(d)     "Manage", "Managed", or "Management" shall mean to generate, manufacture, process, treat, store, use, re-use, refine, recycle, reclaim, blend or burn for energy recovery, incinerate, accumulate speculatively, transport, transfer, dispose of or abandon Hazardous Materials.

(e)     "Release" or "Released" shall mean any actual or threatened spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, presence, dumping, migration

43

from adjacent property or disposing of Hazardous Materials into the environment, as "environment" is defined in CERCLA.

(f)     "Response" or "Respond" shall mean action taken in compliance with Environmental Laws to correct, remove, remediate, cleanup, prevent, mitigate, monitor, evaluate, investigate, assess or abate the Release of a Hazardous Material.

28.02.   Tenant covenants that (a) Tenant shall, at its sole cost and expense, comply with all Environmental Laws; (b) Tenant shall not Manage, or authorize Management of, any Hazardous Materials on the Premises, nor conduct nor authorize the same, including installation of any underground storage tanks, without prior written disclosure to and prior written approval by the Landlord; (c) Tenant shall not take any action that would subject the Premises to permit requirements under RCRA for storage, treatment or disposal of Hazardous Materials; (d) Tenant shall not dispose of Hazardous Materials; (e) Tenant shall not discharge Hazardous Materials into drains or sewers; (f) Tenant shall not suffer, cause or allow the Release of any Hazardous Materials on, to or from the Premises; (g) Tenant shall keep the Premises free from Hazardous Materials; and (h) Tenant shall at its own cost arrange for the lawful transportation and off-site disposal of all Hazardous Materials that it generates in accordance with all Environmental Laws.

28.03.   Tenant shall promptly provide Landlord with copies of all summons, citations, directives, information inquiries or requests, notices of potential responsibility, notices of violation or deficiency, orders or decrees, Claims, complaints, investigations, judgments, letters, notices of environmental liens or response actions in progress, and other communications, written or oral, actual or threatened, from the United States Environmental Protection Agency, Occupational Safety and Health Administration, Illinois Environmental Protection Agency or other federal, state or local agency or authority or any other entity or individual, concerning (a) any actual or alleged Release of a Hazardous Material on, to or from the Premises; (b) the imposition of any lien on the Premises; (c) any actual or alleged violation of or responsibility under Environmental Laws; or (d) any actual or alleged liability under any theory of common law tort or toxic tort, including, without limitation, negligence, trespass, nuisance, strict liability or ultrahazardous activity. Landlord and Landlord's employees shall have the right to enter the Premises and conduct appropriate inspections or tests in order to determine Tenant's compliance with Environmental Laws.

28.04.   Upon written request by Landlord, Tenant shall provide Landlord with the results of appropriate reports and tests, with transportation and disposal contracts for Hazardous Materials, with any permits issued under Environmental Laws and with any other applicable documents to demonstrate that Tenant complies with all Environmental Laws relating to the Premises and this Article 28. Landlord shall have the right from time to time, in its sole discretion, to require Tenant to perform (at Tenant's expense) an environmental audit and, if deemed necessary by Landlord, an environmental risk assessment (each of which must be satisfactory to Landlord) of the Premises, hazardous waste management practices and/or hazardous waste disposal sites used by Tenant. Said audit and/or risk assessment must be by an environmental consultant satisfactory to Landlord, in its reasonable discretion. Should Tenant fail to undertake and seek diligently to perform said environmental audit or risk assessment within thirty (30) days after Landlord's request, Landlord shall have the right but not the obligation to retain an environmental consultant to perform said environmental audit or risk assessment. All costs and expenses incurred by Landlord in the exercise of such rights shall be payable by Tenant upon demand.

28.05.   If Tenant's Management of Hazardous Materials at the Premises (a) gives rise to liability or to a Claim under any Environmental Law or any common law theory of tort or otherwise, (b) causes a significant public health effect, or (c) creates a nuisance or trespass, Tenant shall, at

130305777v1 2715

Tenant's sole cost and expense, promptly take all applicable action in Response in order to resolve and eliminate such liability (including any remediation), or Claim, remedy such health effect, abate such nuisance and to comply with all applicable Environmental Laws.

28.06.    Tenant shall indemnify, defend, protect and hold harmless Landlord, the Indemnified Parties, their beneficiaries, any Fee Mortgagee, any managing agents and leasing agents of the Premises, and their respective agents, partners, officers, directors and employees from all Claims alleged or asserted or any damages, losses, injuries to person or property, damages to natural resources, fines, penalties, expenses, liabilities, interest, contribution or settlement (including, without limitation, attorneys' fees, court costs and disbursements) suffered or incurred by any of the foregoing arising from or attributable to (a) any breach by Tenant of any of its warranties, representations, obligations, or covenants in this Article 28; (b) noncompliance of the Premises or Tenant with any Environmental Laws; (c) any actual or alleged illness, disability, injury, or death of any person in any manner arising out of or allegedly arisen out of exposure to Hazardous Materials or other substances or conditions present at the Premises, regardless of when any such illness, disability, injury, or death shall have occurred or been incurred or manifested itself; and (d) Hazardous Materials Managed or Released by Tenant or otherwise located or Released upon the Premises. In the event any Claims or other assertion of liability (including, without limitation, the requirement of remediation) shall be made against Landlord and/or an Indemnified Party, or in the event of any damages, losses, injuries to person or property, damages to natural resources, fines, penalties, expenses, liabilities, interest, contribution or settlement (including, without limitation, attorneys' fees, court costs and disbursements), for which Landlord and/or the Indemnified Party is entitled to defense or indemnity hereunder, Landlord and/or the Indemnified Party shall notify Tenant of such Claim, assertion of liability or cost or damage and thereupon Tenant shall, at its sole cost and expense, assume the defense of such Claim or assertion of liability and continue such defense at all times thereafter until completion and promptly reimburse Landlord for all such damages, losses, injuries to person or property, damages to natural resources, fines, penalties, expenses, liabilities, interest, contribution or settlement (including, without limitation, attorneys' fees, court costs and disbursements). Tenant's obligations hereunder shall survive the termination or expiration of this Lease.

28.07.    Tenant acknowledges that the Premises are being leased in their present "as is" condition. Tenant shall assume full responsibility for the cleanup of Hazardous Materials Managed or Released by Tenant or otherwise located or Released upon the Premises on or after the Effective Date. Tenant further acknowledges that Landlord has made no representation or warranty whatsoever regarding Hazardous Materials on or about the Premises.

28.08.    In the event that Tenant shall fail to comply with any of its obligations under this Article 28 as and when required hereunder, Landlord shall have the right (but not the obligation) to take such action as is required to be taken by Tenant hereunder and in such event, Tenant shall be liable and responsible to Landlord for all costs, expenses, liabilities, claims and other obligations paid, suffered, or incurred by Landlord in connection with such matters. Tenant shall reimburse Landlord immediately upon demand for all such amounts for which Tenant is liable.

## ARTICLE 29
### EXCAVATIONS AND SHORING

29.01.    If any excavation or other building operation shall be about to be made or shall be made on any adjoining premises or streets, or under the Land, Tenant shall permit the owner or lessee of such adjoining premises and their respective representatives to enter the Premises and to shore the foundations and walls thereof and to do any other act or thing necessary for the safety or preservation of the Premises. Landlord shall not be liable for any inconvenience, annoyance, disturbance, loss of

45

business or other damage arising therefrom and Tenant's obligations hereunder shall not be affected thereby.

29.02.   If any adjoining building or structure encroaches or shall at any time encroach upon the Premises, no claim or demand or objection of any kind shall be made by Tenant against Landlord by reason of any such encroachment; and no claim for abatement of Rental, the Impositions and of other charges which may become due under this Lease shall be made by reason of any such encroachment or acts of or in connection with the removal thereof, and the rights, liabilities and obligations of the parties hereto shall be the same as if there were no such encroachment, and in any legal proceedings relating thereto the Premises may properly and without prejudice be described according to the description hereinbefore contained without reference to any such encroachments. Landlord shall cooperate with Tenant in any proceedings brought by Tenant to remove any such encroachments, provided that the same shall be without cost, liability or expense to Landlord.

## ARTICLE 30
## CERTIFICATES BY TENANT

30.01.   At any time and from time to time upon not less than ten (10) days' prior written request by Landlord, Tenant shall execute, acknowledge and deliver to Landlord or any other party specified by Landlord a statement in writing certifying that this Lease is unmodified and in full force and effect (or if there have been modifications, that the same, as modified, is in full force and effect and stating the modifications) and the date to which each obligation constituting the Rental, the Impositions, and all other amounts payable by Tenant hereunder, have been paid, and stating: (a) whether or not: (i) there is a continuing default (or Landlord Event of Default) by Landlord in the performance or observance of any covenant, agreement or condition contained in this Lease to be performed or observed by Landlord, (ii) there shall have occurred any event which, with the giving of notice or passage of time or both, would become such a default (or Landlord Event of Default) and, if so, specifying each such default or occurrence of which Tenant may have knowledge, (iii) there is a Default or an Event of Default, (iv) the Premises have been completed in accordance with the terms hereof and Tenant is in occupancy and paying Rental and Impositions on a current basis with no rental offsets or claims, and (v) there has been prepayment of Rental other than that provided for in this Lease; and (b) any other matters which may be reasonably requested by Landlord or any Fee Mortgagee. Such statement may be relied upon by any Fee Mortgagee or prospective successor to Landlord's interest in this Lease.

## ARTICLE 31
## Intentionally Omitted

## ARTICLE 32
## SURRENDER AT END OF TERM

32.01.   Tenant shall, on the last day of the Term or upon the earlier termination of the Term, quit and surrender to Landlord the Premises vacant, free of all of the trade fixtures, equipment, furniture and other personal property and in good order and condition, reasonable wear and tear excepted, and free and clear of all lettings, occupancies, liens and encumbrances. On the last day of the Term or upon earlier termination of this Lease or upon reentry by Landlord upon the Premises, Tenant, at its sole cost and expense, shall remove from the Premises on or prior to such expiration, termination or reentry, all personal property situated thereon which is not owned by Landlord, and shall repair any damage caused by such removal. Tenant hereby waives any notice now or hereafter required by law with respect to vacating the Premises on any such termination date. Tenant's obligation to observe and perform this covenant shall survive the expiration or earlier termination of the Term. If any items

46

required to be removed by Tenant under this Section 32.01 are not removed by Tenant in accordance with Landlord's instructions, then such items shall be deemed abandoned by Tenant and Landlord shall have the right, in its sole discretion, to dispose of the items, sell the items (in which event Landlord shall be entitled to all proceeds from the sale thereof), use the items at no cost to Landlord, or to have the items placed in storage, all of which shall be at Tenant's expense.

32.02. Except as otherwise provided in Article 24 of this Lease, upon the expiration of the Term, all Rental, the Impositions and other items payable by Tenant under this Lease shall be apportioned to the date of termination.

32.03. Tenant acknowledges that possession of the Premises must be surrendered to Landlord at the expiration or earlier termination of the Term. Tenant agrees to indemnify Landlord and/or the Indemnified Parties against and save Landlord and/or the Indemnified Parties harmless from any and all costs, expenses, claims, loss or liability resulting from the failure or delay by Tenant in so surrendering the Premises, including, without limitation, any claims made by any succeeding tenant founded on such failure or delay. Tenant agrees that if possession of the Premises is not surrendered to Landlord upon the expiration or earlier termination of the Term, then Tenant shall pay to Landlord, for each month and for each portion of any month during which Tenant holds over at the Premises after the expiration or sooner termination of the Term, in addition to any sums payable pursuant to the foregoing indemnity, a sum equal to two (2) times the aggregate of the Base Rent and Additional Rent which was payable under this Lease with respect to the last month of the Term; and in addition thereto, Tenant shall pay all damages, consequential and/or direct, sustained by Landlord as a result of such holdover by Tenant. Nothing herein contained shall be deemed to permit Tenant to retain possession of the Premises after the expiration or earlier termination of the Term. If Tenant holds over in possession after the expiration or termination of the Term, such holding over shall not be deemed to extend the Term or renew this Lease, but the tenancy thereafter shall continue as a tenancy from month to month upon the terms and conditions of this Lease at the Base Rent and Additional Rent as herein increased. The provisions of this Section 32.03 shall not constitute a waiver of any re-entry rights of Landlord provided hereunder or by applicable Laws. This provision shall survive the expiration or earlier termination of this Lease.

32.04. Landlord shall retain fee simple ownership of the Premises and all portions and parts thereof, regardless of this Lease. On the last day of the Term or upon any earlier termination of the Lease or upon reentry by Landlord upon the Premises pursuant to Article 24 hereof, fee simple title to the Improvements and all fixtures and improvements therein, to the extent not theretofore vested in Landlord pursuant to the terms of this Lease, shall revert to Landlord without the necessity of any further action by either party hereunder, provided, however, that upon Landlord's request, Tenant shall execute and deliver to Landlord (in recordable form) all documents necessary to evidence such conveyance, including, without limitation, a quitclaim deed and bill of sale. Tenant shall deliver to Landlord Tenant's executed counterparts of all subleases, any service and maintenance contracts that are in Tenant's possession and are then affecting the Premises, true and complete maintenance records for the Premises, all original licenses and permits then pertaining to the Premises, permanent certificates of occupancy then in effect for the Improvements, and all assignable warranties and guarantees then in effect which Tenant has received in connection with any work or services performed or Equipment installed in the Improvements, together with a duly executed assignment of any of the foregoing to Landlord, all financial reports, documents, books and records whatsoever relating to the Premises. This covenant shall be construed as running with the Land to and against subsequent owners and successors in interest.

130305777v1  2715

## ARTICLE 33
## ENTIRE AGREEMENT

All understandings and agreements, oral or written, heretofore made between the parties hereto are merged in this Lease, which alone fully and completely expresses the agreement between Landlord (and its beneficiary, if any, and their agent(s)) and Tenant.

## ARTICLE 34
## QUIET ENJOYMENT

If and as long as Tenant shall faithfully perform the agreements, terms, covenants and conditions hereof, Tenant shall and may (subject, however, to the provisions, reservations, terms and conditions of this Lease and actions by any Governmental Authority), peaceably and quietly have, hold and enjoy the Premises for the Term hereby granted without molestation or disturbance by or from Landlord or any Person claiming through or under Landlord and free of any encumbrance created or suffered by Landlord, except from encumbrances created or suffered by Tenant and the Permitted Encumbrances.

## ARTICLE 35
Intentionally Omitted

## ARTICLE 36
## SEVERABILITY

The invalidity of any provision of this Lease shall not impair or affect in any manner the validity, enforceability or effect of the rest of this Lease.

## ARTICLE 37
## RECORDING OF MEMORANDUM

Landlord and Tenant, each upon the request of the other or any Fee Mortgagee, shall execute, acknowledge and deliver a memorandum of this Lease and of each modification of this Lease, in proper form for recordation. If an Event of Default occurs hereunder and, as a result thereof, this Lease is terminated, Landlord may execute a statement to be recorded in the appropriate land records terminating such memorandum. Tenant hereby appoints Landlord as its attorney-in-fact to execute such a termination statement on its behalf. This appointment shall be deemed to be coupled with an interest and irrevocable. No such memorandum shall modify or change the Lease. Tenant shall not record this Lease without the written consent of Landlord, which consent may be withheld by Landlord in its sole and absolute discretion.

## ARTICLE 38
## COVENANT TO OPERATE

38.01.    Tenant agrees to continuously operate and conduct the Permitted Use in one hundred percent (100%) of the Premises during the entire Term in a first-class, professional and businesslike manner consistent with reputable business standards and practices, and such that a high reputation of the Premises is developed and enhanced.    Tenant shall operate the Premises continuously, actively and diligently in a good faith manner designed to maximize gross sales. Tenant shall keep the Premises adequately staffed with well-trained personnel for efficient first class service, and adequately stocked including new "in season" merchandise, if applicable, in good condition and displayed in a professional and tasteful manner.    Tenant agrees that storage and office space in the

48

Premises shall be limited to that necessary for, and used in conjunction with, the business of the Permitted Use. The Permitted Use shall only be on a retail basis to the general public. In the event Tenant should cease operations, then Tenant shall continue to be responsible for all obligations and covenants contained herein including, without limitation, the obligation to provide security measures and lighting acceptable to Landlord and in accordance with all applicable Laws and the Permitted Encumbrances. Tenant shall operate during the "Required Hours" which shall mean those hours permitted by applicable Laws and the Permitted Encumbrances and subject to Landlord's reasonable approval.

38.03.   Intentionally omitted.

38.04.   In the event that at any time during the Term, Tenant fails to continuously conduct Tenant's business at the Premises for any reason other than a temporary closure due to: (a) a casualty as provided in this Lease, or (b) major remodeling, repairs or renovations which shall in no event exceed 45 days in any 60 day period and shall not occur more than once in any twenty four (24) consecutive month period, then Landlord shall have the right, but not the obligation, to terminate this Lease upon not less than thirty (30) days prior written notice (the "Recapture Notice"). In the event that Landlord elects, in Landlord's sole and absolute discretion, to deliver the Recapture Notice to Tenant, the Expiration Date shall be automatically accelerated to the date set forth in the Recapture Notice, and Tenant shall surrender possession of the Premises to Landlord, in accordance with the provisions of this Lease, on or before the accelerated Expiration Date. Tenant's obligations and covenants contained herein shall survive any such recapture. Landlord's recapture right shall be in addition to all other rights or remedies provided under this Lease or in equity or at law.

## ARTICLE 39
## SIGNAGE

39.01.   Tenant shall not erect or install any signage, of any nature or design, without Landlord's prior written consent, which consent may be withheld in Landlord's sole discretion. All such signage shall be erected at Tenant's sole cost and expense and shall comply with all applicable Laws and the Permitted Encumbrances. Landlord makes no representation or warranty to Tenant that Tenant's signage shall comply with, and not violate, any applicable Laws or the Permitted Encumbrances. All signage shall be installed by Tenant prior to the Commencement Date. Tenant may not, under any circumstances (a) place any signage on the building roof, canopy roofs extending above the building roof, penthouse walls or so as to project above the parapet, canopy or top of the wall upon which it is mounted or place any signage at any angle to the building, (b) paint any signs on the surface of the Premises, (c) install any flashing, moving or audible signs, (d) install any signs employing exposed raceways, neon tubes, ballast boxes or transformers, or (e) install any paper or cardboard signs, temporary signs, stickers or decals, whether in the windows of the interior or on the exterior of the Premises (provided, however, the foregoing shall not prohibit the placement at the entrance of the Premises of a small sticker or decal, indicating hours of business, emergency telephone numbers, acceptance of credit cards and other similar information). At no time may any signs or other advertising materials visible from outside of the Building occupy or obstruct more than twenty percent (20%) of the total window area of the Building. Tenant may not install any exterior sign that identifies leased departments and/or concessionaires operating under the Tenant's business or trade name, nor identify specific brands or products for sale or services offered within the Premises, unless such identification is used as part of Tenant's trade name. Tenant shall, at its expense, maintain its signs in good condition and repair. Landlord shall have the right to remove any unauthorized signs and to charge Tenant, as additional Rent under this Lease, for the cost of such removal.

130305777v1 2715

39.02.   Landlord shall have no obligation to construct a monument sign ("Monument") or a pylon sign ("Pylon") for the Premises or to make space on any such Monument or Pylon available to Tenant.  If a Monument or Pylon is constructed at the Premises, then Landlord, at its option and in its sole and absolute discretion, may provide space to Tenant on such Monument or Pylon.  Tenant shall be responsible, at its sole cost and expense, for the repair, maintenance, and replacement of any Monument or Pylon and any sign panels.  In no event shall Tenant erect a Pylon or Monument without the prior written approval of Landlord, which approval may be withheld or delayed in Landlord's sole discretion.

ARTICLE 40
FOOD SERVICE OPERATION COVENANTS

40.01.  Exhaust Systems; Cleaning and Degreasing.  Tenant shall, at its sole cost and expense, prior to opening the Premises for business and at all times thereafter during the Term, install and maintain such exhaust fans and systems, ductwork and venting as required by applicable Laws and the Permitted Encumbrances and to ensure that all smoke, odors, vapors and steam are exhausted from the Building.  Tenant shall be sure that such systems shall be maintained and repaired so as to avoid the likelihood that such smoke, odors, vapors and steam will migrate from the Building or any part of the Building.  No exhaust vents, flues, pipes or other outlets shall be installed through the walls, floor or ceiling of the Premises or the Improvements (including but not limited to the exterior walls or the roof of the Improvements) without the written consent of Landlord as to the location, construction and appearance thereof.   Notwithstanding any herein contained in this Lease to the contrary, Landlord shall not, by its approval of the location, construction or appearance of any of Tenant's exhaust system or facilities in the premises or elsewhere in the Premises, be deemed to have represented that such systems are adequate or that the same comply with any applicable Laws and the Permitted Encumbrances, nor shall such approval be deemed a waiver by Landlord of the right to require that Tenant modify such systems or facilities or add other or additional such systems or facilities in order to prevent the discharge of smoke, odors, vapors and steam from the Building.  Tenant's exhaust or venting systems shall include fire prevention and/or extinguishment facilities or systems as may be reasonably required from time to time in view of Tenant's methods and volume of cooking and other food and beverage preparation.  This shall be in addition to any sprinkler or other fire protection facilities installed in the Premises.  Tenant shall maintain in good working order and condition and in accordance with the rules and regulations of all appropriate insurers, all fire extinguishing systems in the Premises.  Tenant shall regularly and adequately clean or provide for the cleaning of all exhaust and venting systems serving the Premises. This cleaning shall include degreasing of all hoods, fans, vents, pipes, flues, grease traps and other areas of such systems subject to grease buildup. Tenant shall provide to Landlord, upon demand, reasonable proof that Tenant is doing such cleaning and degreasing or causing it to be done.  In the event that Tenant shall refuse or fail to clean and degrease such systems or to arrange for the cleaning and degreasing of such systems within forty-eight (48) hours after oral notice from Landlord, then Landlord may arrange for the cleaning and degreasing thereof, and Tenant shall pay the entire cost thereof or reimburse Landlord for its actual costs incurred in connection therewith. Landlord shall not be liable to Tenant for any loss or damage that may accrue to tenant's stock in trade or business by reason thereof, including but not limited to any loss of revenues resulting from any required limitation or cessation of Tenant's business while such cleaning is performed or as a result thereof. All contractors used by Tenant for such cleaning must be approved by Landlord. Landlord's performance of such cleaning and degreasing work shall not release Tenant of Tenant's obligations hereunder nor shall the same be deemed to be a waiver by Landlord of Tenant's default for the failure to perform such cleaning, provided that if Tenant fully reimburses Landlord as provided hereunder then such default shall be deemed cured.  In the event that Tenant's exhaust or venting system(s) connect to pipes, stacks, vents or other facilities located outside the Premises and used by Tenant, Tenant shall, in accordance with the Laws and the Permitted Encumbrances, provide

130305777v1 2715

for the regular cleaning and degreasing thereof as necessary and the cost thereof shall be paid by Tenant. In the event that Tenant shall refuse or fail to clean and degrease such pipes, stacks, vents or other facilities within forty-eight (48) hours after oral notice from Landlord, then Landlord may arrange for the cleaning and degreasing thereof, and Tenant shall reimburse Landlord for its actual costs incurred in connection therewith. Landlord shall not be liable to Tenant for any loss or damage to Tenant's stock in trade or business by reason thereof, including but not limited to any loss of revenues resulting from any required limitation or cessation of Tenant's business while such cleaning is performed or as a result thereof. Landlord's performance of such cleaning and degreasing shall not release Tenant from Tenant's obligations hereunder nor shall the same be deemed to be a waiver by Landlord of Tenant's default for the failure to perform such cleaning and degreasing, provided that if tenant fully reimburses Landlord as provided hereunder then such default shall be deemed cured.

40.02.  Pest Control.  Tenant shall keep the Premises free from insects, rodents and all vermin. Without limiting the generality of the foregoing, Tenant shall, at its sole cost and expense, engage professional reputable exterminators to service the Premises, including but not limited to all food preparation and food storage areas, on a monthly basis (or at such greater frequency as may be reasonably necessary), and to the extent necessary to keep the Premises free of insects, rodents, vermin and other pests. Tenant shall provide to Landlord, upon demand, reasonable proof that Tenant is causing such exterminating to be regularly performed. In the event that Tenant shall refuse or fail to have such exterminating regularly performed within forty-eight (48) hours after Landlord's oral notice, then Landlord may arrange for such work to be done, and Tenant shall pay the entire cost thereof. Landlord shall not be liable to Tenant for any loss or damage that may accrue to Tenant's stock in trade or business by reason thereof, including but not limited to any loss of revenues resulting from any required limitation or cessation of Tenant's business while such extermination is performed or as a result thereof. Landlord's arranging for such extermination shall not release Tenant from Tenant's obligations hereunder nor shall the same be deemed to be a waiver by Landlord of Tenant's default for the failure to have such extermination performed, provided that if Tenant fully reimburses Landlord as provided hereunder then such default shall be deemed cured.

40.03.  Sewer and Catch Basin.  Tenant shall, at its sole cost and expense, prior to opening the Premises for business and at all times thereafter during the Term, maintain and repair the necessary piping, connections, grease traps, catch basins and other facilities for the removal of all waste liquids from the Premises in compliance with all Governmental Authorities and Laws, and as is necessary to prevent the backing up or discharge of any such waste liquids into the Premises. Tenant shall not dispose of waste grease, oil or other materials which tend to cause clogging or blockage of pipes and drains (hereinafter collectively referred to as "grease") by pouring or permitting the same to flow into any drains or pipes. In the event that Tenant shall do so, Tenant shall reimburse Landlord for the entire cost of cleaning of all drains, pipes, sewers or other waste liquid disposal facilities damaged thereby. For this purpose, the term "cleaning" shall be deemed to include the replacement of all or any portion of the waste liquid disposal facilities necessitated by Tenant's improper disposal of grease.  Landlord may require that Tenant's waste liquid removal equipment include ejector pumps.  Such facilities shall be connected to the sewers and mains and shall be maintained so as to prevent the backing up or discharge of any such waste liquids into the Premises.  Landlord shall not, by its approval of the location or construction of any of Tenant's waste liquid disposal facilities in the Premises, be deemed to have represented that such facilities are adequate or that the same comply with any applicable Laws, nor shall such approval be deemed a waiver by Landlord of the right to require that Tenant modify such facilities or add other or additional facilities to provide adequate waste liquid removal capacity for Tenant's use of the Premises or in order to prevent the discharge of such waste liquids or odors therefrom into the Premises.  Tenant shall regularly and adequately clean or provide for the cleaning of all grease traps, catch basins, plumbing waste lines and similar facilities serving the Premises. Tenant shall not use any chemicals or other cleaning methods which could damage the drain pipes or other

51

portions of the drainage and/or sewer system in the Premises or serving the Premises. Tenant shall provide to Landlord, upon demand, reasonable proof that Tenant is regularly doing such cleaning or causing it to be done. In the event that Tenant shall refuse or fail to regularly clean or arrange for the regular cleaning of such facilities within forty-eight (48) hours after Landlord's oral notice, then Landlord may arrange for the cleaning thereof, and Tenant shall pay the entire cost thereof or reimburse Landlord for its actual costs incurred in connection therewith. Landlord shall not be liable to Tenant for any loss or damage that may accrue to Tenant's stock in trade or business by reason thereof, including but not limited to any loss of revenues resulting from any required limitation or cessation of Tenant's business while such cleaning is performed or as a result thereof. Landlord's performance of such cleaning work shall not release Tenant from Tenant's obligations hereunder nor shall the same be deemed to be a waiver by Landlord of Tenant's default for the failure to perform such cleaning, provided that if Tenant fully reimburses Landlord as provided hereunder then such default shall be deemed cured. In the event that Tenant's waste liquid disposal facilities connect to pipes, grease traps, catch basins or other facilities located outside the Premises, Tenant shall provide for the cleaning thereof at Tenant's cost.  In the event that Tenant shall refuse or fail to clean such pipes or other facilities within forty-eight (48) hours after notice from Landlord, then Landlord may arrange for such cleaning, and Tenant shall pay, or reimburse Landlord for its actual costs incurred in connection with such cleaning of such pipes or other facilities. Landlord shall not be liable to Tenant for any loss or damage that may accrue to Tenant's stock in trade or business by reason thereof, including but not limited to any loss of revenues resulting from any required limitation or cessation of Tenant's business while such cleaning is performed or as a result thereof. Landlord's performance of such cleaning shall not release Tenant of Tenant's obligations hereunder nor shall the same be deemed to be a waiver by Landlord of Tenant's default for the failure to perform such cleaning, provided that if Tenant fully reimburses Landlord as provided hereunder then such default shall be deemed cured.

40.04.    Equipment. All equipment installed or used by Tenant in the Premises shall be properly installed and, where necessary, with adequate electrical wiring in conformity with the recommendations of the manufacturers thereof and with all applicable codes and ordinances. All electrical equipment shall have been tested and approved by the Underwriter's Laboratory or similar safety testing organization. No equipment shall be used by Tenant in the Premises unless and until such equipment and the installation thereof has been inspected and approved by all Governmental Authorities and unless, until and only for so long as all necessary permits and authorizations for the use and/or operation thereof have been obtained by Tenant from such authorities at Tenant's sole cost and expense. Tenant shall not serve any food or beverages outside of the Building without the prior written approval of Landlord.

40.05.    Deliveries and Waste Removal.  Tenant shall provide all dumpsters and arrange for the related waste removal service. The costs of waste removal associated therewith shall be paid by Tenant. Tenant further agrees that: (i) it will not permit any deliveries of goods or merchandise at any time when Tenant's employees are not available to receive them; (ii) it will not permit any goods or merchandise to remain in, on or near any doorways, loading docks, receiving areas or other portions of the Premises; any goods or merchandise remaining in such areas shall be reasonably deemed to be trash and may be disposed of by Landlord in such manner as Landlord may deem advisable and without liability to Tenant; (iii) if any leaking or spilling shall occur or if any goods and merchandise shall fall out of any containers or packages, Tenant shall be responsible for and shall immediately cause the same to be cleaned and removed and restore any damage to the common areas that may result; (iv) it will immediately transfer all goods and merchandise received to the Premises and properly store the same in the Premises so as to retard any spoilage thereof, to prevent any odors emanating therefrom and to prevent the infestation thereof; and (v) it shall store all garbage, trash and other waste within the Premises in leak, odor and vermin proof containers, such containers to be kept in temperature controlled areas of the Premises not visible to members of the public. Tenant shall, at

130305777v1 2715

Tenant's expense, attend to the frequent disposal of such materials, as provided below. Trash removal must be done by Tenant using containers approved by Landlord at such times and in such manner as Landlord may direct and subject to such rules and regulations in respect thereto as Landlord may, from time to time, adopt. Unless required more frequently by the Governmental Authorities, Tenant shall be responsible, at Tenant's sole cost and expense, for the daily removal from the Premises of all garbage and refuse generated by operation of Tenant's business, which removal shall be conducted in a clean and sanitary manner. In no event at any time shall Tenant leave or store any such refuse in the Premises or outside the Premises. Landlord shall have the right to specify the times and manner in which Tenant removes such garbage. If, in Landlord's sole judgment, Tenant is not adequately complying with this subsection within forty-eight (48) hours after notice to comply, Landlord shall have the right, but not the obligation, to remove such garbage and charge Tenant for any and all expenses incurred in so doing. All contractors hired by Tenant to remove such garbage must be approved by Landlord. Tenant shall be responsible for repairing and paying for any damage to walls or other parts of the Premises caused in transporting any of Tenant's garbage, trash or other waste and shall promptly clean up any spilled refuse.

### ARTICLE 41
### MISCELLANEOUS

41.01. The captions of this Lease are for convenience of reference only and in no way define, limit or describe the scope or intent of this Lease or in any way affect this Lease.

41.02. The Table of Contents is for the purpose of convenience of reference only and is not to be deemed or construed in any way as part of this Lease or as supplemental thereto or amendatory thereof.

41.03. The use herein of the neuter pronoun in any reference to Landlord or Tenant shall be deemed to include any individual Landlord or Tenant, and the use herein of the words "successors and assigns" or "successors and assigns" of Landlord or Tenant shall be deemed to include the heirs, legal representative and permitted assigns of any individual Landlord or Tenant.

41.04. Intentionally omitted.

41.05. If more than one entity is named as or becomes Tenant hereunder, Landlord may require the signatures of all such entities in connection with any notice to be given or action to be taken by Tenant hereunder. Each entity constituting Tenant shall be fully jointly and severally liable for all of that party's obligations hereunder.

41.06. Landlord (which for purposes of this Section 41.06 shall be deemed to include Landlord's affiliates, parents, and subsidiaries and Landlord's managers, members, agents, beneficiaries, directors, employees, officers, partners, shareholders and trustees) shall have no personal liability with respect to any provisions of this Lease. The liability of Landlord shall be limited to Landlord's interest in the Premises and any judgment against Landlord shall be satisfied solely out of the proceeds of sale of Landlord's interest in the Premises received by Landlord. Tenant shall look solely to the equity of the Landlord in the Premises for the satisfaction of any remedies of the Tenant in the event of a breach by Landlord of any of its obligations hereunder and no other property or assets of Landlord shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies.

41.07. All of the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors and assigns, but this

53

provision shall not operate to permit any transfer, assignment, mortgage, encumbrance, lien, charge or subletting contrary to the provisions of this Lease. The foregoing sentence of this Section 41.07 shall be subject to Article 10 hereof. No third party, other than such heirs, legal representatives, successors and assigns (and the Indemnified Parties), shall be entitled to enforce any or all of the provisions of this Lease or shall have any rights hereunder whatsoever.

41.08. The Rules and Regulations attached to this Lease as Exhibit G are hereby made a part hereof, and Tenant agrees to comply with and observe said Rules and Regulations. Tenant's failure to keep and observe said Rules and Regulations shall constitute a breach of the terms of this Lease in the same manner as if said Rules and Regulations were contained herein as covenants. Landlord reserves the right, from time to time, upon prior written notice to Tenant, to amend or supplement said Rules and Regulations and to adopt and promulgate additional Rules and Regulations applicable to the Premises.

41.09. Except as otherwise expressly provided in this Lease, there shall be no merger of this Lease or the leasehold estate created hereby with the fee estate in the Premises or any part thereof by reason of the same person acquiring or holding, directly or indirectly, this Lease or the leasehold estate created hereby or any interest in this Lease or in such leasehold estate as well as the fee estate in the Premises.

41.10. Tenant warrants that it has had no dealings with any broker or agent in connection with this Lease other than _____ ("Landlord's Broker"). Landlord shall be responsible for paying all commissions to Landlord's Broker pursuant to a separate agreement between Landlord and Landlord's Broker. Tenant hereby agrees to indemnify, protect, defend and hold the Landlord and/or the Indemnified Parties, their beneficiaries and lenders, harmless from and against any and all claims, causes of action, damages, costs, expenses (including, but not limited to, attorneys' fees of counsel selected by Landlord) or liabilities for any compensation, commissions, fees, and charges claimed by any broker acting on behalf of Tenant with respect to this Lease or the negotiation thereof or otherwise. If any claim is made by any broker who shall claim to have acted on behalf of Tenant, or dealt with Tenant, in connection with this transaction, Tenant will pay the brokerage commission, fee or other compensation to which such broker is entitled.

41.11. Upon written request of Landlord, Tenant shall furnish to Landlord a written statement (the "Gross Sales Report"), certified by the Chief Financial Officer or Chief Operating Officer of Tenant to be correct and prepared in accordance with generally accepted accounting principles consistently applied, setting forth (i) the total Gross Sales made during the annual period designated by Landlord in its written request, (ii) the total sales tax collected by Tenant and paid to the appropriate depository during the annual period designated by Landlord, and (iii) the net worth of Tenant. Together with the foregoing items, Tenant, shall also provide Landlord with a current financial statement and such other information as Landlord may reasonably request in order to create a "business profile" of Tenant and determine Tenant's ability to fulfill its obligations under this Lease. The term "Gross Sales" shall be defined to include the dollar aggregate of the entire amount of all cash and charges from all business of Tenant conducted at or from the Premises and of all licensees, concessionaires and sub-tenants of Tenant, whether such business be evidenced by check, credit card charge, charge account, exchange or otherwise.

41.12. Landlord may from time to time elect to designate a lock box collection agent (independent agent, bank or other financial institution) to act as Landlord's agent for the collection of amounts due Landlord. In such event the date of payment of rent or other sums paid Landlord through such agent shall be the date of agent's receipt of such payment (or the date of collection of any such sum if payment is made in the form of a negotiable instrument thereafter dishonored upon

54

presentment); however, for purposes of this Lease, no such payment or collection shall be deemed "accepted" by Landlord if the Landlord returns a dishonored instrument within twenty-one (21) days of its dishonor. Return of any such sum to Tenant by so sending a dishonored instrument to the Tenant shall be deemed to be rejection of Tenant's tender of such payment for all purposes.

41.13. This Lease may not be changed, modified or terminated orally, but only by a written instrument of change, modification or termination executed by the party against whom enforcement of any change, modification or termination is sought.

41.14. This Lease shall be governed by and construed in accordance with the laws of the State of Illinois.

41.15. The agreements, terms, covenants and conditions herein shall be binding upon, and shall inure to the benefit of, Landlord and Tenant and their respective successors and (except as otherwise provided herein) assigns.

41.16. All references in this Lease to "Articles" or "Sections" shall refer to the designated Article(s) or Section(s), as the case may be, of this Lease.

41.17. All references in this Lease to "licensed professional engineer" or "registered architect" shall mean a professional engineer or architect who is licensed or registered, as the case may be, by the State of Illinois.

41.18. Unless specifically provided otherwise herein, any undertaking either required or permitted hereunder by Tenant shall include the obligation to pay for such undertaking.

41.19. This Lease shall not be construed to create a partnership or joint venture between the parties, it being the intention of the parties only to create a landlord and tenant relationship.

41.20. Time is hereby expressly declared to be of the essence of this Lease and of each and every term, covenant, agreement, condition and provision hereof.

41.21. Tenant shall pay all of Landlord's costs, charges and expenses, including court costs and attorneys' fees, incurred in enforcing Tenant's obligations under this Lease, incurred by Landlord in any action brought by Tenant in which Landlord is the prevailing party, or incurred by Landlord in any litigation, negotiation or transaction in which Tenant causes Landlord, without Landlord's fault, to become involved or concerned.

41.22. TO THE FULL EXTENT PERMITTED BY LAW, LANDLORD AND TENANT HEREBY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY CLAIM, ACTION, PROCEEDING OR COUNTERCLAIM BY EITHER LANDLORD OR TENANT AGAINST EACH OTHER AND ANY MATTER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS LEASE, THE RELATIONSHIP OF LANDLORD AND TENANT, OR TENANT'S USE AND OCCUPANCY OF THE PREMISES AND/OR ANY EMERGENCY OR STATUTORY REMEDY.

41.23. Any provision of this Lease which shall prove to be invalid, void, or illegal shall in no way affect, impair or invalidate any other provision hereof and such other provision shall remain in full force and effect.

41.24. In the event of any sale of the Premises or any portion thereof by Landlord or any assignment of this Lease by Landlord, Landlord shall be and is hereby entirely freed and relieved of all

130305777v1 2715

liability under any and all of its warranties, representations, covenants and obligations contained in or derived from this Lease arising or accruing at any time (before, on or after the consummation of such sale or assignment); and the purchaser or assignee, at such sale or assignment, or any subsequent sale of the Premises or subsequent assignment, shall be deemed, without any further agreement between the parties or their successors in interest or between the parties and any such purchaser, to have assumed and agreed to carry out any and all of the covenants and obligations of the Landlord under this Lease arising from and after the date of the sale of the Premises (or the effective date of the assignment of this Lease by Landlord). Tenant agrees to attorn to the purchaser, grantee or assignee.

41.25.  Any action or proceeding brought by either party against the other for any matter arising out of or in any way relating to this Lease or the Premises, shall be heard in Cook County, Illinois.

41.26.  The waiver by Landlord of any term, covenant or condition herein contained must be in writing and shall not be deemed to be a waiver of any subsequent breach of the same or any other term, covenant or condition herein contained.  The subsequent acceptance of rent hereunder by Landlord shall not be deemed to be a waiver of any preceding Default or Event of Default by Tenant of any term, covenant or condition of this Lease, other than the failure of the Tenant to pay the particular rental so accepted, regardless of Landlord's knowledge of such preceding Default or Event of Default at the time of the acceptance of such rent.  No waiver of any condition expressed in this Lease shall be implied by any neglect of Landlord to enforce any remedy on account of the violation of such condition whether or not such violation is continued or repeated subsequently, and no express waiver shall affect any condition other than the one specified in such waiver and that one only for the time and in the manner specifically stated. It is agreed that no receipt of moneys by Landlord from Tenant after the termination in any way of the Term or of Tenant's right of possession hereunder or after the giving of any notice shall reinstate, continue or extend the Term or affect any notice given to Tenant prior to the receipt of such moneys. It is also agreed that after the service of notice or the commencement of a suit or after final judgment for possession of the Premises, Landlord may receive and collect any moneys due, and the payment of said moneys shall not waive or affect said notice, suit or judgment.

41.27.    Landlord hereby reserves the right, at any time and from time to time, to make changes, alterations or additions to, or subdivisions of, the Premises, including, but not limited to, construction of additional buildings and improvements, or to change the size, shape or dimensions of the Premises.  Landlord also reserves the right, from time to time, to construct other buildings (or to make additions to existing buildings or improvements), structures, kiosks or improvements in, under, on or upon the Premises, including, but not limited to, surface, elevated or double-deck parking facilities and temporary scaffolds and other aids to construction.  All of the foregoing construction or expansion set forth in this Section 41.27 is specifically consented to by Tenant.

*[Signature Page Follows]*

130305777v1 2715

IN WITNESS WHEREOF, Landlord and Tenant have executed this Lease as of the day and year first written above.

LANDLORD:                                    TENANT:

CHAMPAIGN NEIL LLC, an Illinois limited      MEATHEADS CHAMPAIGN, LLC, an
liability company                            Illinois limited liability company

By: _____               By: _____
    Doug Reichl, its Manager                     Thomas Jednorowicz, its Manager

130305777v1 2715

EXHIBIT A
DESCRIPTION OF THE LAND

Lot 18 in Buena Vista Subdivision in Replat of Lots 1, 2, 7 and 8 in Chas. Ells Subdivision and Lots 24, 25, 29, 30, 31, 32 and 44 of Highland Place Subdivision in Section 13, Township 19 North, Range 8 East of the Third Principal Meridian, except that part described as follows:  Beginning at the Southeast corner of said Lot 18; thence North 89 degrees 43 minutes 56 seconds West 12.53 feet along the South line of said Lot 18; thence North 6 degrees 54 minutes 45 seconds East 140.27 feet to a point on the North line of said Lot 18; thence South 89 degrees 43 minutes 56 seconds East 12.25 feet to the Northeast corner of said Lot 18; thence South 6 degrees 48 minutes 00 seconds West 140.24 feet to the point of beginning; all situated in the City of Champaign, in Champaign County, Illinois.

COMMON ADDRESS: 1305 SOUTH NEIL STREET, CHAMPAIGN, CHAMPAIGN COUNTY, ILLINOIS

PINS: 43-20-13-414-017

130305777v1 2715

EXHIBIT B
PERMITTED ENCUMBRANCES

A.    One or more agreements or other documents affecting the Premises which may or may not be recorded against the Premises, including, without limitation, any easements, covenants, conditions, restrictions, ordinances, annexation agreements, pre-annexation agreements, memoranda, reciprocal easements operating agreements or declarations, including all amendments, renewals, replacements, supplements, modifications and extensions thereof.

B.    Any and all existing or future matters affecting title to the Premises including, without limitation, all liens, encumbrances, security interests, declarations, covenants, conditions, restrictions, notices of pendency, charges, easements, zoning laws, ordinances and regulations, annexation agreements, pre-annexation agreements, planned unit developments, memoranda, building codes, regulations and rules and other governmental laws, regulations, rules and orders affecting the Premises, including all amendments, renewals, replacements, supplements, modifications and extensions thereof.

C.    Revocable nature of the right, if any, to maintain vaults, vault space, basement and sub-basement spaces, areas of signs beyond building lines.

D.    Any state of facts an accurate survey or visual inspection of the Premises would allow.

E.    Consents by Landlord or any former owner of the Premises for the erection of any structure or structures on, under or above any street or streets on which the Premises abut.

F.    Encroachments of any stoops, areas, cellar steps, trims or corners, if any, upon any street.

G.    Variations between fences, retaining walls, steps, hedges, shrubs and trees, if any, and record lines of title.

B-1

130305777v1 2715

EXHIBIT C
BASE RENT

Commencing on the Commencement Date and continuing thereafter throughout the initial Term, Tenant shall pay to Landlord, without offset or deduction and without notice or demand, the annual sums set forth below:

| Lease Years | PSF Base Rent | Annual Base Rent | Monthly Base Rent |
|---|---|---|---|
| Lease Years 1 thru 5 | $43.00 | $128,140.00 | $10,678.33 |
| Lease Years 5 thru 10 | $47.30 | $140,954.00 | $11,746.17 |

(collectively, "Base Rent"), payable in advance on the first (1st) day of each calendar month of the Term in equal monthly installments as specified herein (unless any such date is not a Business Day, in which case payment shall be due on the next succeeding Business Day).

Upon Tenant's exercise of an Option, all of the terms, conditions and rental contained in this Lease shall be renewed and shall remain in effect for each applicable Extension Period, except that, the Base Rent paid by Tenant to Landlord shall be adjusted for each five (5) year Extension Period thereafter as set forth below:

| Option Lease Years | PSF Base Rent | Annual Base Rent | Monthly Base Rent |
|---|---|---|---|
| Lease Years 10 thru 15 | $52.03 | $155,049.40 | $12,920.78 |
| Lease Years 15 thru 20 | $57.23 | $170,545.40 | $14,212.12 |

Landlord shall have the absolute right, exercisable from time to time, to enter the Premises and Building for purposes of measuring the Premises, or any portion thereof, including, without limitation, the Building. The Base Rent set forth herein is based on the Building containing 2,980 square feet of Floor Area. Notwithstanding anything contained in this Lease to the contrary, Landlord shall have the absolute right to determine the Floor Area of the Building. If the actual square footage of Floor Area of the Building is more than 2,980 square feet (as determined by Landlord in Landlord's sole discretion), then the Base Rent set forth in this Exhibit C of the Lease shall be increased accordingly. In no event shall the Base Rent decrease based on actual square footage of the Floor Area of the Building. The Base Rent currently set forth in this Exhibit C shall be deemed guaranteed minimum Base Rent. "Floor Area" shall be determined in Landlord's sole discretion and shall mean the actual number of square feet of space contained on the floors within the Building.

130305777v1 2715

## EXHIBIT D
## MAINTENANCE ITEMS

(i)     maintaining, cleaning and replacing all paved surfaces and curbs in a smooth and evenly covered condition, including, without limitation, replacement of base, skin patching, sweeping, restriping, resealing and resurfacing (for the purpose of this Exhibit, an overlay of the drive and parking areas shall be considered a maintenance item);

(ii)     periodic removal of all papers, debris, filth, refuse, ice and snow, including sweeping to the extent necessary to keep the Premises in a first-class, clean and orderly condition;

(iii)     placing, cleaning, keeping in repair, replacing and repainting any appropriate directional signs or markers, including any handicapped parking signs;

(iv)     operating, maintaining, cleaning and replacing lighting facilities, including lamps, ballasts, bulbs, and lenses, in the parking lot and otherwise;

(v)     maintaining all landscaped areas, including landscaping and planters, in an attractive and thriving condition, and replacing shrubs and other landscaping as necessary and operating, maintaining and repairing the irrigation system servicing the Premises;

(vi)     maintaining, cleaning, replacing and repairing any and all utility lines or facilities, including without limitation, any on-site and off-site detention systems, ponds and easements benefiting the Premises;

(vii)     keeping the areas outside the Building comprising a porion of the Improvements free from any obstruction including those caused by the sale or display of merchandise;

(viii)     providing professional supervisory personnel for the Premises, including but not limited to, security and fire protection;

(ix)     supervision of traffic at entrances and exits to the Land as conditions reasonably require in order to maintain an orderly and proper traffic flow;

(x)     maintaining and operating any sign, monument or otherwise, for the Premises;

(xi)     maintaining insurance required under, and carried pursuant to any Permitted Encumbrance;

(xii)     maintenance of permits, occupancy certificates, licenses and all other approvals applicable to the Premises;

(xiii)     utility services and lighting;

(xiv)     maintaining, repairing and replacing machinery, systems and equipment used in connection with the Premises; and

(xv)     waste removal.

D-1

EXHIBIT E
LANDLORD PLANS


See Attached

130305777v1  2715

13030577v1 2715

E-6

EXHIBIT F
TENANT'S WORK

Tenant, at Tenant's sole cost and expense, shall perform all work, and provide all materials, other than Landlord's Work to put the Premises in condition to permit Tenant to conduct the Permitted Use in the Premises. Notwithstanding anything contained herein to the contrary, Tenant's Work shall be performed solely with respect to the exterior and the interior of the Building and in strict accordance with the provisions of the attached Lease, Exhibit F, all applicable Laws and the provisions of the Permitted Encumbrances.

1.  Store Design Drawings and Working Drawings, Specifications and Calculations:

    (a)  Criteria - The criteria and outline specifications set forth in this Exhibit F represent minimum standards for design, construction, finish and operation of the Premises by Tenant. Landlord reserves the right from time to time to revise these criteria and outline specifications as Landlord in its sole discretion deems fit.

    (b)  All design and construction work shall comply with all applicable Laws and the Permitted Encumbrances.

2.  Permits and Approvals - Prior to commencement of construction by Tenant, Tenant shall obtain, at Tenant's sole cost and expense, the Permits (including any approvals for Tenant's signage) and post same upon the Premises as required thereby.

3.  Approval of Tenant's Plans and Specifications - Tenant shall within twenty-eight (28) days from the date of the Effective Date, at Tenant's expense, prepare and deliver to Landlord, for Landlord's approval, four (4) sets of complete plans and specifications (including all engineering, mechanical, plumbing and electrical work if applicable) covering all of Tenant's Work concerning the Premises, in such detail as Landlord may require, in full compliance with this Lease and the Exhibits attached to the Lease, certified by a licensed and registered architect and, if applicable, a licensed and registered professional engineer (the "Plans and Specifications"). Landlord shall approve or disapprove Plans and Specifications within fifteen (15) days after receipt thereof. If Landlord fails to approve or disapprove the Plans and Specifications within the timeframe set forth in the foregoing sentence, Tenant shall deliver written notice of the same to Landlord. If Landlord thereafter fails to approve or disapprove the Plans and Specifications within fifteen (15) days, the Plans and Specifications shall be deemed approved. In the event Landlord shall notify Tenant that the Plans and Specifications are not approved, Tenant shall have fifteen (15) days from the date of Landlord's disapproval to revise the Plans and Specifications and resubmit them to Landlord for Landlord's approval and the parties shall thereafter reasonably cooperate to create acceptable Plans and Specifications. Landlord's written approval shall be obtained by Tenant prior to the undertaking of any construction work which deviates from or modifies in any way Tenant's approved Plans and Specifications or any other work not explicitly shown on said Plans and Specifications. Landlord's approval of Tenant's Plans and Specifications or any changes or additions thereto shall not constitute the assumption of any liability, responsibility or obligation on the part of Landlord. Tenant shall be solely responsible

F-1

for such Plans and Specifications meeting the requirements of any statutes, ordinances, rules, regulations, and codes and the Permitted Encumbrances or for their fitness as to their intended use or purpose. Tenant shall not commence Tenant's Work until Tenant has received full and final approval from Landlord.

4.   Standard Project Details - Standard Project Details, as issued from time to time by Landlord's Architect and as they pertain to Tenant's Work, shall govern with respect to such work; provided, however, that such Standard Project Details shall not materially affect the layout or design of the Premises. Such details shall be incorporated into the working drawings and specifications for the Premises.

5.   Materials - Only new materials which are in compliance with applicable Laws and the Permitted Encumbrances shall be used in the performance of Tenant's Work.

6.   Settlement of Disputes - It is understood and agreed that any disagreement or dispute which may arise between Landlord and Tenant with respect to Tenant's Work shall be resolved by the mutual decision of Landlord's and Tenant's Architects or representatives.

7.   Architectural Work and Finishes to be Provided by Tenant (except as otherwise specifically provided in Exhibit E):

(a)   Floors - Tenant shall finish floor elevations at all store entrances to the same elevation as adjacent areas.

(b)   Walls, Partitions, Doors and Ceilings - Tenant shall perform all work on walls, partitions and doors other than that to be performed by Landlord under Landlord's Work, subject to the following standards:

(i)   All interior partitions shall be metal stud construction, shall not exceed ceiling height, and shall have 5/8 inch gypsum board on all sides with taped and sanded joints. Any combustible materials applied to partitions shall be covered with a fire retardant coating.

(ii)   Tenant shall perform all interior painting, decorating, paneling, wallpapering, peg boarding, etc., on all walls and partitions.

(iii)   Commercial grade finish hardware, labeled where required, shall be used throughout. All doors shall have one and one half pair of butts, wall or floor stops, kick plates and/or lock sets and push pull plates, and other hardware as required by applicable code.

(c)   Structural - In performance of Tenant's Work it is understood that:

(i)   Any alterations, additions or reinforcements to Landlord's structure to accommodate Tenant's Work shall not be performed without, in each instance, the written approval of the Landlord's Architect. Tenant shall leave Landlord's structure as strong or stronger than the original construction and with the finish unimpaired.

F-2

(ii) Roof penetrations required by Tenant and approved in writing by Landlord (cutting of roof deck material and the repair of same) shall be performed, repaired and maintained by Landlord's roofing contractor at Tenant's expense. No roof penetrations shall be made without Landlord's prior written approval, which approval may be withheld in Landlord's reasonable discretion; provided, however, Landlord shall have sole discretion over roof penetrations which would invalidate any roof warranties.

8.   <u>Heating, Ventilating and Air Conditioning</u> –If required by applicable governmental laws and building codes, Tenant shall provide separate exhaust systems and "make-up air systems" if odors, excessive heat, moisture, smoke or other air contaminants, including, but not limited to those produced by food service facilities,, emanate from the Premises. All exhaust systems installed by Tenant shall comply with NFPA standards, applicable codes and Landlord's Design Criteria.

9.   <u>Fire Protection</u>:

(d) Except if included in Landlord's Work, Tenant shall install all sprinkler systems and pay for any and all damage caused by Tenant, its contractors, agents or employees to the sprinkler systems. Alternatively, damage to the sprinkler system will be repaired by Landlord at Tenant's expense.

(e) Landlord's sprinkler main, if any, will become active on a schedule established by Landlord. Should Tenant require that the Landlord's sprinkler mains be modified or changed, such work will be performed by Landlord's contractor at Tenant's reasonable expense.

(f) Landlord's fire insurance carrier shall from time to time during the term of this Lease have the right to inspect the fire protection system and its component parts installed by Tenant. Said system shall at all times comply with requirements of said carrier, and shall meet the conditions of its approval, and any alterations, improvements, repairs, or maintenance required by any such carrier shall be Tenant's sole responsibility and shall be performed promptly at Tenant's reasonable expense upon notice.

10.   <u>Electrical</u> –Where process power is required, Landlord may elect to require that Tenant make direct arrangements with the local power company for this and the miscellaneous power portion of Tenant's total requirements.

Tenant shall:

(g) Provide all telephone system panels, outlets, and conduits (if required) for the Premises. All wire in ceiling must be in conduit except for low voltage wiring required for such items as telephones and sound systems and shall otherwise conform to applicable code requirements.

(h) Provide all other electrical systems in the Premises that may be required by Tenant such as: security system, sound system, intercom system, etc.

130305777v1 2715

(i)     Provide all electrical work and lighting other than that included in Landlord's Work.

11.     <u>Plumbing</u> - Provide all plumbing work other than that included in Landlord's Work.

12.     <u>Protection</u> - At all times during the construction of Tenant's Work, it shall be the Tenant's responsibility to cause each of Tenant's contractors and subcontractors to maintain continuous protection of the Premises in such a manner as to prevent any damage to Landlord's or Tenant's Work, or to adjacent property and improvements by reason of the performance of Tenant's Work. Tenant's contractor and subcontractors shall properly secure the Premises, including the furnishing of temporary guard rails and barricades, as may be necessary or otherwise required to conform with applicable code.

13.     <u>Coordination of Tenant's Work</u> - Tenant shall coordinate its work with all work being performed or to be performed by Landlord, its architects, engineers or contractors to such extent that Tenant's Work shall not interfere with or delay the completion of any such work in the project. Tenant's contractors, or subcontractors shall not at any time damage, injure, interfere with or delay the completion of the Landlord's Work, and they and each of them shall comply with all procedures and regulations prescribed by Landlord, for integration of Tenant's Work with the Landlord's Work.

14.     Notwithstanding anything to the contrary contained in the Lease, or in this <u>Exhibit F</u>, Tenant shall, and hereby does, protect, indemnify, defend, and hold harmless Landlord, Tenant shall, and hereby does, protect, indemnify, defend, and hold harmless Landlord, Landlord's beneficiary, and Landlord's lenders (including, but not limited to Fee Mortgagees) from and against any and all claims, damages, liabilities, losses, causes of action, liabilities, obligations, judgments, costs and expenses (including, but not limited to, attorneys' fees and court costs), suffered or incurred by any or all of the indemnified parties as a result of, or due to, or arising from, any actions or omissions by Tenant, its contractor, subcontractors, agents, and employees occurring in the course of, or as a part of, or in preparation for, the performance of the Tenant's Work, as contemplated and required under the Lease and this <u>Exhibit F</u>.

15.     <u>General Provisions</u>

        (a)     If, as a result of the design and layout of the Premises by Tenant, any changes, additions and/or increases in capacity have to be made in the Landlord's Work, such changes, additions and/or increases in capacity if approved by Landlord, shall be performed by Landlord's Contractor at Tenant's expense. Landlord shall advise Tenant as to the cost of such additional work. In the event Tenant fails to approve the cost for such additional work within five (5) days after notice from Landlord stating such cost, or fails to pay such cost prior to Landlord's commencement of such additional work, then Landlord shall have no obligation to perform the same and may proceed to complete Landlord's Work.

        (b)     Tenant shall hold Landlord harmless from payment of any claim either by way of damages or liens on account of bills for labor or material in connection with Tenant's Work.

130305777v1 2715

(c)      It is understood and agreed between Landlord and Tenant that costs incurred by Landlord, if any, as a result of Tenant's failure or delay in providing the information as required in this Exhibit F and in the Lease, shall be the sole responsibility of Tenant and Tenant will pay such costs, if any, promptly upon Landlord's demand.

(d)      Tenant shall submit to Landlord at least ten (10) days prior to the commencement of Tenant's Work the following:

       (i)      The name and address of Tenant's general contractor and subcontractors and the general contract for Landlord's approval.

       (ii)      The actual commencement date of Tenant's Work, the estimated completion date of Tenant's Work, and the estimated store opening date.

       (iii)      Certificates of insurance as set forth below. Tenant shall not permit its contractor(s) to commence any work until all required insurance has been obtained and certified copies of the policies have been delivered to Landlord and Landlord has approved same.

(e)      All contractors engaged by Tenant shall be licensed and bonded contractors. All such contractors shall work in harmony with all contractors engaged by Landlord.

(f)      Tenant's Work shall be subject to the inspection of Landlord, Landlord's architect and Landlord's general contractor from time to time during the period in which Tenant's Work is being performed.

(g)      Tenant shall apply and pay for all utility connection fees as required.

(h)      On the completion of the Tenant's Work, all Tenant's facilities shall be fully operable.

(i)      All work performed by Tenant shall be completed in a workmanlike manner and performed so as not to cause any interference with the Landlord's Work or with parcels adjacent to the Premises. Tenant will take all precautionary steps to protect its facilities and the facilities of others affected by Tenant's Work and police the same properly. Construction equipment and materials are to be located only on the Premises in confined areas and truck traffic is to be routed to and from the site as directed by Landlord so as not to burden adjacent parcels or to adversely affect the Landlord's Work. Landlord shall have the right to order Tenant, or Tenant's general contractor, or any subcontractor who willfully violates the above requirements to cease work, and to remove himself, his equipment, materials and his employees from the Premises. Tenant shall keep the Premises clean and free of dirt and debris emanating from the Tenant's Work and all construction materials and equipment shall be located and stored in the Building and not on any other portion of the Premises. Tenant shall take all action necessary to prevent or avoid any work stoppages on any portion of the Premises and in the event of a work stoppage related to any act of or construction by Tenant, Tenant shall immediately cease such act or practice. During the construction of the Building on the Land, Tenant agrees as follows: (i) all

F-5

equipment used in clearing, excavating or construction that is not rubber tired shall be loaded or unloaded only within the boundary lines of the Premises; (ii) Tenant shall use reasonable efforts to cause its construction workers to remain in or near the Building, excluding ingress to and egress from the Premises; (iii) Tenant shall keep the access roads reasonably clean and free of dirt and debris emanating from the Premises; (v) all construction materials, equipment, excavated soils, dumpsters and debris shall be located and stored on the Premises near the Building; and (vi) Tenant shall secure the construction site and shall keep it in a safe condition.

(j) No approval by Landlord shall be valid unless in writing and signed by Landlord or Landlord's architect.

(k) Tenant shall provide at its expense temporary heat during construction if necessary.

(l) Tenant at its expense shall remove trash as Landlord may reasonably direct.

16. <u>Architect's Certification of Acceptance</u> - Upon completion of Tenant's Work, Landlord's architect shall inspect the Premises, and if same is acceptable and Tenant's has been completed in accordance with the Plans and Specifications, shall issue an "Architect's Certificate of Acceptance" certifying to the same for the Premises. The issuing of such a Certificate shall be contingent upon all of the following:

(a) Tenant shall have satisfactorily completed the work to be performed by Tenant as set forth in the attached Lease and Exhibits to the Lease, in accordance with the approved Plans and Specifications.

(b) Tenant shall have furnished Landlord with waivers of liens and contractor's affidavits, in such form as may be required by Landlord or Landlord's lender (including, but not limited to, any Fee Mortgagee) , from all parties performing labor or supplying materials in connection with such work showing that all of said parties have been compensated in full. Tenant shall have furnished Landlord with Tenant's sworn statement and long form affidavit which shall include equipment and fixtures, and architect, engineers, and contractor(s) with waivers in full. In addition, Tenant's contractor shall have furnished a long form affidavit with waivers for all subcontractors.

(c) Tenant shall have submitted to Landlord a detailed breakdown of Tenant's final and total construction costs, together with receipted invoices showing payment thereof, or such evidence of payment as is satisfactory to Landlord.

(d) Tenant shall have reimbursed Landlord for the cost of any of Tenant's Work done for Tenant by Landlord and the cost of temporary power and trash removal.

(e) Tenant, at its expense, shall have secured and delivered to Landlord's architect an occupancy permit and all other necessary permits, licenses, and approvals to open for business; and a written statement from Tenant's architect that all of Tenant's Work fully complies with the approved plans and specifications and all applicable statutes, ordinances, rules regulations and codes.

130305777v1 2715

(f)     Tenant shall furnish Landlord with a true copy of the temporary or permanent Certificates of Occupancy for the Building.

16.    Tenant shall not open for business until it has received Landlord's Architect's Certificate of Acceptance.

17.    <u>Disclaimer</u> - Landlord or Landlord's architect's approval of Tenant's Plans and Specifications or to any changes, modifications or additions thereto, and any inspections made by Landlord or Landlord's architect, and the issuance of an Architect's Certificate of Acceptance by Landlord's architect shall not constitute the assumption of any liability, obligation or responsibility on the part of Landlord or Landlord's architect. Tenant and Tenant's architect shall be solely responsible for such plans and specifications meeting the requirements of any statutes, ordinances, rules, regulations and codes and for their fitness and suitability for their intended use and purpose; and Tenant does hereby release Landlord and Landlord's architect from any loss, cost, claim or damage arising in any manner whatsoever from Tenant's Plans and Specifications and Tenant's Work.

130305777v1 2715

EXHIBIT G
RULES AND REGULATIONS

1.      **Deliveries.** Furniture, inventory and all other deliveries may be brought into the Premises only at times and in the manner designated by Landlord, in compliance with all Laws and the Permitted Encumbrances, and always at Tenant's sole risk. Tenant shall move all inventory, supplies, furniture, equipment and other items as soon as received directly to the Premises.

2.      **Trash, Pest Control and Fire Protection.** All garbage, refuse, trash and other waste shall be kept in the kind of container, placed in the areas, and prepared for collection in the manner and at the times and places specified by Landlord. If Landlord designates a service to pick up such items, Tenant shall also use the same at Tenant's cost. Tenant, at Tenant's sole cost and expense, shall arrange for the pick up of such garbage, refuse, trash, and other waste. Tenant shall use, at Tenant's cost, such pest and rodent extermination contractor as Landlord may direct and at such intervals as Landlord may require; Tenant shall provide Landlord with evidence of Tenant's compliance with this provision within five (5) days after Landlord's written request.

3.      **Signs and Display Windows.** Tenant shall not place any sign or other thing of any kind outside the Premises (including without limitation, exterior walls and roof), or on the interior or exterior surfaces of glass panes or doors, except such signs as Landlord shall expressly approve in writing for or in connection with Tenant's storefront. Within the Premises, Tenant shall not: (i) install any sign that advertises any product; (ii) install any sign within 24 inches of any window; or (iii) install any sign that is visible from outside the Premises or that is illuminated, without Landlord's prior written approval. If Landlord approves or requires illuminated signs, Tenant shall keep the same illuminated each day of the Lease Term during the hours designated by Landlord from time to time. All Tenant's signs shall be professionally designed, prepared and installed and in good taste so as not to detract from the general appearance of the Premises and shall comply with Landlord's sign criteria, as may be established from time to time. After the initial installation of Tenant's storefront sign as approved in writing by Landlord in accordance with these provisions, Landlord reserves the right to require from time to time that Tenant change or replace such sign in order to comply with any new sign criteria developed by Landlord, at Landlord's expense. The term "sign" in this Rule shall mean any sign, placard, picture, name, direction, lettering, insignia or trademark, advertising material, advertising display, awning or other such item, except that Tenant's storefront sign shall be an actual sign. Blinds, shades, drapes or other such items shall not be placed in or about the windows in the Premises except to the extent, if any, that the character, shape, design, color, material and make thereof is first approved by Landlord in writing.

4.      **Display of Merchandise.** Tenant shall not place or maintain any permanent or temporary fixture or item or display any merchandise: (i) outside the Premises; or (ii) anywhere inside the Premises within six (6) feet of any entrance to the Premises (except that for any recessed entry of the Premises, Tenant shall not so place or maintain fixtures within three (3) feet of such entrance). All displays of merchandise shall be tasteful and professional.

5.      **Plumbing Equipment.** The toilet rooms, urinals, wash bowls, drains and sewers and other plumbing fixtures, equipment and lines shall not be misused or used for any purpose other than that for which they were constructed and no foreign substance of any kind whatsoever shall be thrown therein, and Tenant shall properly install, maintain, clean, repair and replace adequate grease traps.

2.      **Roof; Awnings and Projections.** Tenant shall not install any advertising balloons, aerial, antennae, satellite dish or any other device on the roof of the Improvements or at the Premises.

G-1

3.      **Locks and Keys.** Upon termination of the Lease or Tenant's right to possession, Tenant shall: (i) return to Landlord all keys, parking stickers or cards, and in the event of loss of any such items shall pay Landlord therefore; and (ii) advise Landlord as to the combination of any vaults or locks that Landlord permits to remain in the Premises.

4.      **Unattended Premises.** Before leaving the Premises unattended, Tenant shall close and securely lock all doors or other means of entry to the Premises and shut off all lights (except signs required to be illuminated hereunder), water faucets and other utilities in the Premises (except heat to the extent necessary to prevent the freezing or bursting of pipes). This provision shall not imply that Tenant may leave the Premises unattended in violation of the operating requirements set forth elsewhere in this Lease.

5.      **Energy Conservation.** Tenant shall not waste electricity, water, heat or air conditioning, or other utilities or services, and agrees to cooperate fully with Landlord and comply with any Laws to assure the most effective and energy efficient operation of the Premises.

6.      **Going-Out-Of-Business Sales and Auctions.** Tenant shall not use, or permit any other party to use, the Premises for any distress, fire, bankruptcy, closeout, "lost our lease" or going-out-of-business sale or auction. Tenant shall not display any signs advertising the foregoing anywhere in or about the Premises. This prohibition shall also apply to Tenant's creditors.

7.      **Labor Relations.** Tenant shall conduct its labor relations and relations with employees so as to avoid strikes, picketing, and boycotts of, on or about the Premises or Shopping Center. If any employees strike, or if picket lines or boycotts or other visible activities objectionable to Landlord are established, conducted or carried out against Tenant, its employees, agents, contractors, or subcontractors in or about the Premises or Shopping Center, Tenant shall immediately close the Premises and remove or cause to be removed all such employees, agents, contractors, and subcontractors until the dispute has been settled.

8.      **Prohibited Activities.** Tenant shall not: (i) use strobe or flashing lights on the in or on the Premises or in any signs therefor; (ii) use, sell or distribute any leaflets, handbills, bumper stickers, other stickers or decals, balloons or other such articles on the Premises; (iii) operate any loudspeaker, television set, phonograph, radio, CD player or other musical or sound producing instrument or device so as to be heard outside the Premises; (iv) operate any electrical or other device which interferes with or impairs radio, television, microwave, or other broadcasting or reception from or in the Shopping Center or elsewhere; (v) bring or permit any bicycle or other vehicle, or dog (except in the company of a blind party) or other animal, fish or bird in the Premises; (vi) make or permit objectionable noise, vibration or odor to emanate from the Premises or any equipment serving the same; (vii) do or permit anything in or about the Premises that is unlawful, immoral, obscene, pornographic, or which tends to create or maintain a nuisance or do any act tending to injure the reputation of the Premises; (viii) use or permit upon the Premises anything that violates (a) the Permitted Encumbrances or any documents of record or (b) the certificates of occupancy issued for the Premises, or causes a cancellation of insurance policies or increases insurance premiums (and Tenant shall comply with all requirements of its insurance carriers, the American Insurance Association, and any board of fire underwriters); (ix) use the Premises for any purpose, or permit upon the Premises anything, that may be dangerous to parties or property (including but not limited to flammable oils, fluids, paints, chemicals, firearms or any explosive articles or materials); (x) permit any of its employees or customers to loiter in the Premises; nor (xi) do or permit anything to be done upon the Premises in any way tending to disturb, bother or annoy any other tenant at the Shopping Center or the occupants of neighboring property.

9.      **Parking.** Tenant and Tenant's employees shall park their cars only in those portions of the parking area located on the Premises designated by Landlord, in Landlord's reasonable discretion, for tenant and employee parking and shall use such areas only for parking cars. Landlord reserves the right

to: (i) adopt additional requirements pertaining to parking, including, without limitation, posting and enforcing time limits, and establishing a parking system with charges favoring carpooling for tenants and their employees, and any other parking system by validation, metering or otherwise; (ii) assign specific spaces, and reserve spaces for small cars, handicapped individuals, and other tenants, customers of tenants or other parties (and Tenant and its employees and visitors shall not park in any such assigned or reserved spaces); and (iii) restrict or prohibit full size vans and other large vehicles. In case of any violation of these provisions or any applicable laws, statutes or ordinances, Landlord may: (a) refuse to permit the violator to park, and remove the vehicle owned or driven by the violator from the Premises without liability whatsoever, at such violator's risk and expense; and/or (b) charge Tenant such reasonable rates as Landlord may from time to time establish for such violations, which shall be at least $50.00 per day for each vehicle that is parked in violation of these Rules. These provisions shall be in addition to any other remedies available to Landlord under this Lease or otherwise.

10.     **Responsibility for Compliance.** Tenant shall be responsible for ensuring compliance with these Rules, as they may be amended, by Tenant's employees and as applicable, by Tenant's agents, invitees, contractors, subcontractors, and suppliers.

130305777v1 2715

# TABLE OF CONTENTS

ARTICLE 1 DEFINITIONS ...........................................................................................1
ARTICLE 2 PREMISES; TERM OF LEASE; OPTION TO EXTEND...........................5
ARTICLE 3 RENT ........................................................................................................6
ARTICLE 4 IMPOSITIONS ..........................................................................................7
ARTICLE 5 DEPOSITS FOR IMPOSITIONS................................................................10
ARTICLE 6 LATE CHARGES ......................................................................................11
ARTICLE 7 INSURANCE .............................................................................................11
ARTICLE 8 USE OF CASUALTY INSURANCE PROCEEDS ......................................15
ARTICLE 9 CONDEMNATION.....................................................................................17
ARTICLE 10 ASSIGNMENT, SUBLETTING AND MORTGAGES..............................18
ARTICLE 11 LANDLORD'S WORK AND TENANT'S WORK .....................................23
ARTICLE 12 REPAIRS; SERVICES; PARKING LOT CONTROL; UTILITIES.............26
ARTICLE 13 CHANGES, ALTERATIONS AND ADDITIONS.......................................27
ARTICLE 14 REQUIREMENTS OF PUBLIC AUTHORITIES AND OF INSURANCE
          UNDERWRITERS AND POLICIES...............................................................28
ARTICLE 15 EQUIPMENT ...........................................................................................29
ARTICLE 16 DISCHARGE OF LIENS; BONDS ...........................................................29
ARTICLE 17 REPRESENTATIONS BY TENANT; AS-IS...............................................30
ARTICLE 18 LANDLORD NOT LIABLE FOR INJURY OR DAMAGE, ETC. ..............32
ARTICLE 19 INDEMNIFICATION OF LANDLORD .....................................................33
ARTICLE 20 RIGHT OF INSPECTION.........................................................................34
ARTICLE 21 LANDLORD'S RIGHT TO PERFORM TENANT'S COVENANTS ............34
ARTICLE 22 NO ABATEMENT OF RENTAL ...............................................................35
ARTICLE 23 PERMITTED USE: NO UNLAWFUL OCCUPANCY; OPERATION OF THE
          PREMISES ..................................................................................................35
ARTICLE 24 EVENTS OF DEFAULT AND REMEDIES ...............................................36
ARTICLE 25 NOTICES .................................................................................................40
ARTICLE 26 STREET WIDENING ...............................................................................40
ARTICLE 27 SUBORDINATION; ATTORNMENT ........................................................41
ARTICLE 28 HAZARDOUS SUBSTANCES .................................................................43
ARTICLE 29 EXCAVATIONS AND SHORING..............................................................45
ARTICLE 30 CERTIFICATES BY TENANT ..................................................................46
ARTICLE 31 Intentionally Omitted................................................................................46
ARTICLE 32 SURRENDER AT END OF TERM ...........................................................46
ARTICLE 33 ENTIRE AGREEMENT ...........................................................................48
ARTICLE 34 QUIET ENJOYMENT ..............................................................................48
ARTICLE 35 Intentionally Omitted................................................................................48
ARTICLE 36 SEVERABILITY .......................................................................................48
ARTICLE 37 RECORDING OF MEMORANDUM .........................................................48
ARTICLE 38 COVENANT TO OPERATE .....................................................................48
ARTICLE 39 SIGNAGE ................................................................................................49
ARTICLE 40 FOOD SERVICE OPERATION COVENANTS ........................................50
ARTICLE 41 MISCELLANEOUS ..................................................................................53

## ASSIGNMENT OF LEASE

TENANT:   MEATHEADS CHAMPAIGN, LLC

1.     **Assignment**.   In consideration of $10.00 and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, Champaign Neil LLC ("Assignor"), as owner of the property commonly known as 1305 South Neil Street, Champaign, Illinois ("the Property") hereby assigns to DTAT ENTERPRISES, INC., an Illinois corporation, ("Assignee") all of Assignor's rights, titles, and interests in and to the lease ("the Lease") (including any security deposit) between Assignor, as Landlord, and the Tenant named above.  The Lease is attached hereto as Exhibit A.

2.     **Acceptance and Assumption**.   Assignee hereby accepts the foregoing assignment.  Subject to the representations and warranties of Assignor in Paragraph 3 hereof and the indemnifications in Paragraph 4 hereof, Assignee hereby assumes and agrees to be bound by all duties, obligations, and liabilities of the landlord under the Lease arising upon and subsequent to the effective date and time of this Assignment.

3.     **Assignor's Representations and Warranties**.  Assignor represents and warrants to Assignee as follows:

A.     The document attached hereto constitutes the entire agreement between Assignor and the Tenant, and Assignor has no obligation to, and has made no promise to or agreement with, the Tenant except as stated in the Lease.

B.     With the exception of Assignor and the Tenants, no person or entity is entitled to use, possession, or occupancy of the Property and, subject only to the Purchase Agreement to which Assignee is a party, no contracts, leases, options, listing agreements, or other agreements granting or giving a right, or which may cause Assignor to become obligated to grant or give a right, to use, occupy, be possessed of, or manage the Premises or any part or parts thereof are executed or under negotiation.

4.     **Indemnifications**.

A.     Assignor hereby indemnifies Assignee against, agrees to hold Assignee harmless from, and agrees to protect Assignee and to defend Assignee (by counsel designated by Assignee) against any and all manner of suits, actions, claims, causes, causes of action, judgments, fines, debts, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, executions, claims, or demands whatsoever, in law or in equity, including without limiting the generality of the foregoing attorney's fees (individually a "Liability" and collectively "Liabilities") which Assignee may suffer or to which Assignee may be exposed as a result of the (i) the falsity or inaccuracy of any representation or warranty by Assignor herein, (ii) any breach by Assignor of or default by Assignor under the Lease occurring prior to the date of this Assignment, or (iii) any obligation of the Landlord under the Lease occurring prior to the date of this Assignment.

      B.    Assignee hereby indemnifies Assignor against, agrees to hold Assignor harmless from, and agrees to protect Assignor and to defend Assignor (by counsel designated by Assignor) against any and all manner of Liabilities which Assignor may suffer or to which Assignor may be exposed as a result of any breach by Assignee of or default by Assignee under the Lease occurring upon or subsequent to the date of this Assignment.

**5.**    **Joint and Several Undertakings**.  If Assignor consists of more than one person or entity, then the representations, warranties, covenants, and agreements made by Assignor herein shall be deemed made by each such person and entity and the obligations imposed upon Assignor shall be joint and several obligations of each such person and entity.  If Assignee consists of more than one person or entity, then the covenants and agreements made by Assignee herein shall be deemed made by each such person and entity and the obligations imposed upon Assignee shall be joint and several obligations of each such person and entity.

**6.**    **Interpretation; Partial Invalidity; Binding on Successors and Assigns**.  This Assignment shall be interpreted and enforced in accordance with the laws of the State of Illinois.  The use of paragraph headings and of singular or plural, masculine, feminine, or neuter nouns and pronouns is for convenience only and shall be liberally interpreted.  The invalidity or unenforceability of any provision hereof will not affect, modify, or impair the validity and enforceability of all other provisions hereof.  This assignment shall be binding on and shall inure to the benefit of the parties hereto and their representatives, heirs, legatees, successors, and assigns.

      **IN WITNESS WHEREOF**, Assignor and Assignee have executed this Assignment on April 12, 2018.

Assignor:                           Assignee:

**CHAMPAIGN NEIL LLC**          **DTAT ENTERPRISES, INC.**

By: _____      By: _____
Its:    A Manager                Its: _____

# FIRST AMENDMENT TO LEASE

**THIS FIRST AMENDMENT TO LEASE ("Amendment")** is made and entered into this 12th day of April, 2018, by and between DTAT ENTERPRISES, INC., an Illinois corporation, as successor-in-interest to Champaign Neil, LLC (**"Landlord"**) and MEATHEADS CHAMPAIGN, LLC, an Illinois limited liability company ("Tenant").

## WITNESSETH:

**WHEREAS**, Landlord, or its predecessor in interest, and Tenant have heretofore entered into that certain lease dated _____, 2011 (the **"Lease"**), for the Premises (as defined in the Lease) located at 1305 South Neil Street, Champaign, Illinois, for a Term expiring December 31, 2021; and

**WHEREAS**, the parties desire to amend the Lease as hereinafter set forth.

**NOW, THEREFORE**, in consideration of the above recitations (which are hereby acknowledged to be true and correct) and of the Premises and the mutual covenants and agreements herein contained, the Lease is hereby amended as follows:

1. The initial Term of the Lease is hereby extended for an additional period of ten (10) years, commencing on January 1, 2022, and expiring on December 31, 2031 (the **"Extended Term"**), so extending the Term upon all of the terms, covenants and conditions thereof, except as provided herein.

2. Notwithstanding anything to the contrary contained in the Lease, Base Rent during the Extended Term shall remain One Hundred Forty Thousand Nine Hundred Fifty Four and No/100 Dollars ($140,954.00) per annum, payable in equal monthly installments of Eleven Thousand Seven Hundred Forty Six and 17/100 Dollars ($11,746.17).

3. The Options set forth in Article 2.03 of the Lease shall remain in full force and effect. Base Rent during the Extension Periods shall be as set forth in Exhibit "C" attached to the Lease.

4. As utilized in this Amendment, all terms not specifically defined herein shall have the same meaning ascribed to them in the Lease.

5. Except as specifically modified hereby, the Lease shall remain in full force and effect and unmodified.

6. This amendment may be executed in any number of counterparts, each of which shall be deemed an original.

## (SIGNATURE PAGE FOLLOWS)

**IN WITNESS WHEREOF**, Landlord and Tenant have caused this First Amendment to Lease to be executed as of the date first above written.

TENANT:                                          LANDLORD:

MEATHEADS CHAMPAIGN, LLC,                         DTAT ENTERPRISES, INC., an Illinois
An Illinois limited liability company             corporation

By:_____               By:_____
Name Printed:  Doug Reichl                        Name Printed:_____
Title:  Manager                                   Title:_____